## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

               Plaintiff,

v.

BRIAN RAYMOND CALLAHAN, HORIZON
GLOBAL ADVISORS LTD., HORIZON
GLOBAL ADVISORS LLC, DIVERSIFIED
GLOBAL INVESTMENTS (BVI), L.P., THE
MASTERS GLOBAL FUND, L.P., FIDUCIARY
SELECT INCOME FUND, L.P., HORIZON
MILLENNIUM INVESTMENTS, L.P., PANGEA
OFFSHOREHIGH YIELD PORTFOLIO, LLC,
ADAM MANSON, DISTINCTIVE
INVESTMENTS LLC, and DISTINCTIVE
VENTURES LLC,

               Defendants.

SHERI MANSON CALLAHAN,

               Relief Defendant.

-------------------------------------------------------------x

Civil Case No. 12-CV-1065 (ADS)(ETB)

Assigned to:
      Hon. Arthur D. Spatt, U.S.D.J.
      Hon. E. Thomas Boyle

## RECEIVER'S INITIAL REPORT AND PLAN

      Steven Weinberg, as the Court appointed Receiver (the "Receiver") for Horizon Global

Advisors Ltd. ("HGA LTD"), Horizon Global Advisors LLC ("HGA LLC"), Diversified Global

Investments (BVI), L.P. ("Diversified Global") f/k/a Horizon Global Investments, L.P.

("Horizon Global"), The Masters Global Fund, L.P. ("Masters Global"), Fiduciary Select Income

Fund, L.P. ("Fiduciary Select") f/k/a Pangea Bridge Investment, L.P. ("Pangea Bridge"),

Horizon Millennium Investments, L.P. ("Horizon Millennium") and Pangea Offshore High Yield

Portfolio, LLC ("Pangea Offshore") respectfully submits this as his initial report of his

investigation and plan for the fair, reasonable, and efficient recovery and liquidation of all

remaining, received and recoverable Receivership Assets and Receivership Property (as those

terms are defined in the Receivership Orders).

## I.    INTRODUCTION AND LEGAL PROCEEDINGS.

This Receivership arises from an enforcement proceeding commenced on March 5, 2012

by the U.S. Securities and Exchange Commission against Brian Raymond Callahan ("Callahan"),

HGA LTD and HGA LLC in the U.S. District Court for the Eastern District of New York (the

"Receivership Court") – Case No. 12-CV-1065 (the "SEC/Receivership Action") for

misappropriation of  investors' assets and violations of Securities Laws §17(a)(1)(2) and (3) of

the Securities Act; §10(b) of the Exchange Act and §206(1) (2) and (4) of the Advisors Act..  In

the Amended Complaint filed in the SEC/Receivership Action on May 31, 2012 (ECF Doc. 28),

the SEC asserts that from 2005 to 2012, Defendant Callahan raised over $90 million (the

"Investor Funds") from at least 45 investors (the "Investors") for at least five offshore funds,

namely, Diversified Global, Masters Global, Fiduciary Select, Horizon Millennium and Pangea

Offshore (collectively, the "Callahan Funds"), which he operated and controlled, directly or

indirectly through HGA Ltd. and HGA LLC.  Among other relief, the SEC is seeking

disgorgement, prejudgment interest and civil monetary penalties against the Defendants in the

SEC/Receivership Action.

Defendant Callahan represented that the Investor Funds would be invested with New

York-based hedge funds and would be liquid.  However, according the Amended Complaint, the

vast majority of the Investor Funds were misappropriated and diverted to: (i) paying other

investors seeking redemptions and other "Ponzi" like hallmarks; (ii) financing the purchase of

Defendant Callahan's primary residence and Montauk coop, (iii) financing the purchase and

supporting the real estate acquisitions and ventures of Defendant Callahan's brother-in-law,

Adam Manson ("Manson") and his various companies, including Distinctive Investments, LLC

("Distinctive Investments") and Distinctive Ventures, LLC ("Distinctive Ventures"), and (iv)

supporting a storage facility and the real property where it is situated which are owned by

Defendant Callahan.  Defendant Callahan failed to disclosed to investors and potential investors

that in 2009, following an investigation and proceeding by the Financial Industry Regulatory

Authority ("FINRA"), Defendant Callahan consented to being permanently barred from

associating with any FINRA member.  It is also alleged that Callahan had commingled and

pooled assets and funds of Investors, deliberately moving the Investor Funds from various

accounts, off-shore accounts, insurance products and attorney escrow accounts, to disguise the

source and origin of each asset and fund.

On March 27, 2012, on the motion made by the SEC, this Court signed an Order placing

HGA LTD and HGA LLC (collectively, "HGA Fund Managers") into Receivership (the "Initial

Receivership Order").  Pursuant to a Stipulation entered into by the SEC and Defendant

Callahan, and "So Ordered" on June 4, 2012 (the "Fund Receivership Order"), the Receivership

Court also placed the Callahan Funds into receivership with Steven Weinberg being the Receiver

for both HGA Fund Managers and Callahan Funds (collectively, the "Receivership Entities").

The Initial Receivership Order and the Fund Receivership Order (collectively, the "Receivership

Orders") enjoin and bar the defendants in the SEC/Receivership Action and certain other people

and entities from engaging in any activity to offer or sell securities, and from transferring or

otherwise disposing of Receivership Assets and Receivership Property.

Immediately upon the Receiver's appointment and during the first 90 days of the Receivership, the Receiver:

- Immediately gave notices to all Defendants, interested persons and entities, of the Receivership and the injunctive provisions of the Receivership Orders, including the order and direction to preserve and turn over all Receivership Property.

- Immediately demanded all Defendants, interested persons and entities, to repatriate and deposit any and all funds or assets of the Receivership that presently may be located outside of the United States.

- Immediately asserted interest and control over all Receivership Assets and Receivership Property.

- Immediately demanded all Defendants, interested persons and entities, to produce all personal property, including the books and records, of the HGA Fund Managers.

- Issued investigatory Subpoenas concerning properties owned by the Defendants, properties benefited by Investor Funds, bank records of the Callahan Funds, bank records of entities controlled or owned by Defendant Callahan.

- Communicated with the majority of the Investors and complied information concerning their investments with Callahan and the Callahan Funds.

- Conducted investigation into the properties owned by the Defendants and identified any mortgages and liens thereon, including inspecting the Montauk Property.

- Engaged in multiple discussions with certain Defendants or their attorneys as to assets and property for the use for recovery of Investor Funds.

- Demanded the repayment of promissory notes containing Distinctive Investments' obligations to repay to Pangea Offshore, Diversified Global and Fiduciary Select an excess of $58 million in principal plus approximately another $14 million in interest.

The Receiver's investigation to date, although still preliminary and on-going, has already uncovered improprieties which include but are not limited to :

- Disregard of corporate formalities among the Receivership Entities and commingling of assets among the Receivership Entities and Defendants;

- Misappropriation of millions of dollars of the Receivership Entities' assets for personal use and for payments related to real property owned or controlled by the Defendants;

- Improper investment or non-existent documentation of the transactions executed through or on behalf of the Receivership Entities;

- Falsification of documents regarding substantial transactions;

- Preparation of misleading account statements for the Callahan Funds;

- Use of Investor Funds that were contrary to the offering memoranda and fund documents of the Callahan Funds, and contrary to representations made by Callahan to Investors;

- Failure to segregate and maintain records of each Investor's investment

- Use of Investor Funds to pay different investors;

- Transfer of assets of the Receivership Entities into entities owned or controlled by Defendant Callahan and/or Defendant Manson;

- The transfer of tens of millions of dollars of Investor Funds for the benefit of Defendant Manson and his real estate venture, the Panoramic View, a real property located in Montauk, New York; and

- The transfer of investor funds in excess of $250,000 to Cromwell AAA Self Storage for the benefit of the business and the real property owned by Callahan.

Separately, and in addition to the subject SEC/Receivership Proceeding, the office of the United States Attorney for the Eastern District of New York ("USAO") commenced a civil forfeiture action on April 17, 2012 in the United States District Court for the Eastern District of New York – Civil Case No. 12 CV 1880 (the "Forfeiture Action").  The action seeks the forfeiture and condemnation of: (a) the real property located at 272 Old Montauk Highway, Montauk, New York 11954 (the "Montauk Property"), (b) all the shares of 93 Old Montauk Owners, Inc., a New York cooperative corporation (the "Panoramic View Coop"), held in the name of Defendant Distinctive Ventures and all proceeds traceable thereto (the "Distinctive Coop Shares"), (c) all the shares of Panoramic View Coop held in the name of Defendant Callahan, and his wife, Defendant Sheri Callahan (the "Callahan Coop Shares"), together with the proprietary lease appurtenant to the Callahan Coop Shares (the "Callahan Coop Unit"), and all proceeds traceable thereto; and (d) the real property located at 47 Clock Tower Lane, Old Westbury, New York 11568 (the "Westbury Property").  According to the Forfeiture Action's Complaint, Investors Funds were used for the acquisition and/or finance of the Montauk Property, the Distinctive Coop Shares, the Callahan Coop Shares and the Old Westbury Property.

## II.   RECEIVERSHIP ENTITIES.

The Callahan Funds are foreign entities registered in the British Virgin Islands, the Cayman Islands or Nevis.  Defendant Callahan controlled and operated the Callahan Funds either through the HGA Fund Managers, who is supposed to "manage" the funds who Defendant Callahan also owns and controls, or through the Callahan Funds' general partner, who would either be Callahan or Diversified Global Partners, Ltd. ("Diversified GP") f/k/a Horizon Global Partners, Ltd., an entity also formed under the laws of the British Virgin Islands and also owned and controlled by Defendant Callahan.  Prior to their receivership, Diversified GP served as the general partner for Diversified Global, Fiduciary Select and Horizon Millennium, and Defendant Callahan serves as the general partner for Pangea Offshore.  Each of the Callahan Funds also had fund administrators who included Ogier Fund Administration (BVI) Limited ("Ogier"), Drake Fund Advisors Ltd. ("Drake"), and Conifer Fund Services Ltd. ("Conifer").  Ogier, Drake and Conifer (the "Fund Administrators") were also foreign entities registered in the BVI.

A.     Horizon Global Advisors Ltd. is a Cayman Islands Limited Partnership that was established in 2009 and registered in the Cayman Islands, and supposedly with an office at located at Queensgate House, South Church Street, P.O. Box 1234, Grand Cayman, KY1 1108, Cayman Islands.  The purported purpose of HGA LTD was to invest and manage equity investments for the Fiduciary Select, Diversified Global, and Horizon Millennium beginning in 2009.  Defendant Callahan was its principal executive and manager at all relevant times.   HGA LTD was formed to replace and supercede HGA LLC as the manager for certain Callahan Funds.

B.     Horizon Global Advisors  LLC is a Connecticut Limited Liability Company that was established in 2007 and registered in the State of Connecticut, and supposedly having its office at the Westbury Property.  Defendant Callahan was the managing and sole member at all

relevant times.  HGA LLC was established to invest and manage private equity investments for the Masters Global, Horizon Global (before its name changed to Diversified Global) and Pangea Bridge (before its name changed to Fiduciary Select).

      C.      Diversified Global Partners, Ltd. f/k/a Horizon Global Partners, L.P. is a BVI Limited Partnership established in 2006 and is registered in the BVI.  Diversified GP is the General Partner of Diversified Global, Fiduciary Select and Horizon Millennium.   Defendant Callahan is a director of Diversified GP.

      D.      Diversified Global Investments (BVI) L.P. f/k/a Horizon Global Investments, L.P. is a BVI Limited Partnership established in 2006 and is registered in the BVI.  Diversified Global's General Partner is Diversified GP.  The purported business purpose of Diversified Global was to be a private equity fund.

      E.      The Masters Global Fund, L.P. is a BVI Limited Partnership established in 2007 and is registered in the BVI.  Master Global's General Partner is also Diversified GP.  The purported purpose of Masters Global was to be a private equity fund

      F.      Fiduciary Select Income Fund, L.P. f/k/a Pangea Bridge Investments, L.P. is a BVI Limited Partnership established in 2008 and is registered in the BVI.  Fiduciary Select's General Partner is also Diversified GP.  The purported purpose of Fiduciary Select was to be a private equity fund.

      G.      Horizon Millennium Investments, L.P.  is a BVI Limited Partnership established in 2008 and is registered in the BVI.  Horizon Millennium's General Partner is also Diversified GP.  The purported purpose of Horizon was to be a private equity fund.

      H.      Pangea Off Shore High Yield Portfolio, LLC is a BVI Limited Partnership established in 2005 and is registered in Nevis.  Pangea Offshore's Managing Member is

Defendant Brian Callahan.  The purported purpose of Pangea Offshore was to be a private equity fund.

The Callahan Funds received investor money from United States citizens who were principals of trusts, limited liability companies or limited partnerships who invested as members or partners of the Callahan Funds.  Defendant Callahan purportedly represented that the Callahan Funds will invest in private New York equity funds and/or for the purchase of insurance policies, and lead investors to believe that the investments were in safe, segregated offshore accounts that could be allegedly liquidated upon request.

III.     **OPERATIONS AND INVESTIGATIONS**

The Receivership Order directs the Receiver to identify, locate, pursue claims, recover and preserve all Receivership Assets and Receivership Property for liquidation and distribution.  Specifically, Paragraphs 4 through 7 of the Receivership Order set forth the powers and duties of the Receiver.  Since his appointment, the Receiver has been active in:

- Establishing and Operating the Receivership Estate;
- Investigating the Receivership Entities and Defendants;
- Evaluating and Preserving Receivership Assets and Receivership Property;
- Investigating and Evaluating Receivership Fund Investments;
- Commencing the Investigation and Analysis of third party claims.

A.     **ESTABLISHING THE RECEIVERSHIP ESTATE**.

1.     The Receiver pursuant to the Court's direction gave notice of the Receivership Orders, gave notice of the Receivership Orders' injunctive relief provisions and made demand for certified statements and information as provided for in the Initial

Receivership Order to the banks, financial advisors, administrators, accountants, and other parties who had direct or indirect control of Receivership Assets or Receivership Property and/or who have appeared to have conducted business with the Receivership Defendants.  Copies of the Initial Receivership Order and the Fund Receivership Order were included with the notice given by the Receiver.  A sample of the Notices given by the Receiver is annexed as Exhibit A.

2.      Pursuant to 28 U.S.C. §754, 959 and 1692, the Receiver filed copies of the Initial Receivership Order and the Complaint from this SEC/Receivership Action, and separately filed copies of the Fund Receivership Order and the Amended Complaint, to obtain jurisdiction and control over Receivership Assets and Receivership Property in twelve (12) U.S. District Courts covering judicial districts where the Receiver believes Receivership Assets and/or claims may be located.

3.      The Receiver as directed by the Receivership Order gave notice to the United Postal Service and to the Postal Service in the BVI, Cayman Islands and Nevis to change the address for the Receivership Defendants to the address for Receiver.

4.      The Receiver did not seize and take custody HGA Fund Managers' office. Based upon the Receiver's investigation to date, HGA Fund Managers did not maintain formal physical offices, did not maintain a staff of employees and did not own real property.  Only one bank account has been located to date for the HGA Fund Managers and the Receiver confirmed that a "hold" has been placed on the account, initially pursuant to the Temporary Restraining Order issued by this Receivership Court on March 5, 2012 (ECF Doc. 4), and subsequently by reason of the Initial Receivership Order (ECF Doc. 22.)  The HGA Fund Managers' bank account has a negative balance.

5.      By a letter demand dated April 3, 2012, the Receiver demanded Defendant Callahan to produce and turnover all assets and property of the HGA Fund Managers, including their books and records.  The letter demand also refers Defendant Callahan to Paragraphs 8, 9, 10, and 11 of the Initial Receivership Order which directed Defendant Callahan to produce and turnover HGA Fund Managers' books and records, a sworn statement and accounting of all assets and property of HGA Fund Manager, the tax returns for HGA Fund Manager.  Copies of such notices and demands are annexed here as EXHIBIT A.  To date, Defendant Callahan has failed to produce such items and has claimed, through his attorney's letter, that he has no assets of HGA Fund Managers.

and has been ignoring this Court's Receivership Orders.

6.      The Receiver has given notices and demands to the banks, financial institutions, administrators, and accountants located in the BVI and Bermuda.  None of them have voluntarily responded to the Receiver's notices and demands for information as set forth in the Receivership Orders.  The Receiver will continue its investigation by the service of subpoenas pursuant to the Hague Convention upon the entities located in the BVI, Bermuda, the Cayman Islands and Nevis in order to attempt to obtain the books, records, ledgers and information for all of the Receivership Entities.

7.      The Receiver has made inquiry to and confirmed with certain New York based hedge-funds where a small portion of Investors Funds were located as to the sums on hold at those hedge funds.

8.      Demand has been made for turnover to the Receiver of the funds of the Receivership Entities from the accounts restrained by Receivership Orders and said

account holders are in the process of transferring those funds to one or more custodial accounts at a federal insured bank.

**B.      INVESTIGATING THE RECEIVERSHIP
         FINANCIAL CONDITION**

As part of the Receiver's investigation, the Receiver reviewed certified statements furnished by the financial institutions who were in possession of a balance of the Investor Funds.  The Receiver confirmed that the financial institutions have a "hold" in place pursuant to the Temporary Restraining Order (ECF Doc. 4) and the Initial Receivership Order (ECF Doc. 22), and confirmed that the sums in their possession for the Receivership Entities are as follows:

**Masters Global**

- Morgan Stanley Smith Barney:          $597,263.04
- HedgeForum/Citibank:                      $109,166.82

                                   Total:      $706,429.86

Morgan Stanley Smith Barney and Citibank's HedgeForum have informed the Receiver that, in addition to the $706,429.86 balance, there are also "side pocket" investments, which according to them, are non-liquid investments with an estimated value of $27,263.00.  The Receiver has requested additional information to ascertain the nature of the "side pocket", to confirm the non-liquid status of the investments, and to monitor the side pocket investments.

**Diversified Global:**

- Horizon Kinetics LLC
  /Kinetics Institutional Partners, L.P.:    $697,131.00

**Horizon Millennium:**

- Millennium USA, L.P.:                    $4,723,783.00

Millennium USA has informed the Receiver that $4,723,783.00 balance is liquidated and ready to be turned over to the Receiver.  This balance, however, excludes: (i) $472,994.00 which Millennium USA claims will be withheld subject to a general audit holdback, and (ii) 51,871.00 which Millennium USA claims will be withheld subject to a holdback for Lehman Brothers claims and expenses. The total held by Millennium USA, including the sums subject to a holdback, is $5,248,648.00.

**Pangea Offshore:**

- Bank of America:                    $882.58

                                                    $25.00

                              Total:        $907.80

Based upon the Callahan Funds being added as Receivership Entities, the Receiver has made demand for transfer of the funds in order to maintain the funds in Receivership Estate accounts as directed by the Receivership Order.  The Receiver is in the process of marshalling approximately $6.4 million in cash which corresponds to the approximate $6,456,188 total liquid assets set forth in Paragraph 104 of the SEC's Amended Complaint in this SEC/Receivership Action, and which is based upon the certified statements and information furnished to the Receiver from the account holders. The cash accounts include redemptions that were previously made by Millennium USA and by Morgan Stanley Smith Barney/Citibank's Hedgeforum due to the Callahan Funds failing to adhere to the criteria for membership and/or private equity investment in each

of the private equity fund.  To date, Callahan has not repatriated any funds to the Court and has not caused the repatriation of any Receivership Assets or Receivership Property located offshore over which Callahan has direct or indirect control.

The Receiver is continuing to subpoena financial information to trace the flow of Investor Funds and to determine the ultimate recipient to demand the return of Investor Funds.  This analysis has included tracing funds through subpoenaed and other available bank records and included reviewing substantial wire transfers, account transfers, checks and withdrawals.  The Receiver is also continuing its review of all other documents which the Receiver obtains by means other than a subpoena, or which has been furnished to the Receiver, to determine other possible Receivership Assets and claims.

Based upon the allegations of the SEC's Amended Complaint, in excess of $33,000,000.00 of investor funds were utilized for the purchase and development of Montauk Property and improved the value of Distinctive Coop Shares and the Callahan Coop Shares.  The Callahan Funds' available liquid assets are extremely limited and therefore severely hamper its ability to operate.  The bulk of the Callahan Funds were allegedly invested or loaned to Distinctive Investments, which investments or loans are purportedly evidenced by promissory notes made by Distinctive Investments, payable to Pangea Offshore, Fiduciary Select or Diversified Global, and total to the approximate principal sum of $58,000,000 plus interest.  These promissory notes represent a "non liquid investment" that was part of the fraud perpetrated by the defendants.  The promissory notes represent an unsecured investment in real property that severely restricts and impairs the Callahan Funds ability to operate.  The Callahan Funds are not financially viable and should be liquidated to reduce costs and unprofitable operations.

The Receiver determined that the HGA Fund Managers did not file separate tax returns.  Rather the HGA Fund Managers' income and expenses appear to have been reported on Schedule C of Defendant Callahan's U.S. Individual Income Tax Returns for the tax years 2008 and 2009.  The Receiver is not in possession of Defendant Callahan's tax returns for any other year.  Defendant Callahan's 2008 and 2009 U.S. Individual Income Tax Return was part of a subpoena response received by the Receiver.

C.   **EVALUATING AND PRESERVING RECEIVERSHIP ASSETS**

As previously reported, the Receiver confirmed that there is a hold based upon the Temporary Restraining Order (ECF Doc. 4) and the Initial Receivership Order (ECF Doc. 22) issued by this Court with respect to the accounts of the Receivership Entities.  As previously reported, the cash investments are in the process of being liquidated and transferred to Receivership Estate accounts pursuant to the Receivership Order.  As previously reported the Receiver has confirmed that there is a lis pendens filed with respect to the Civil Forfeiture Action for the Montauk Property; for the Distinctive Coop Shares which includes proprietary leases to cooperative units within the Panoramic Coop; for the Callahan Coop Shares which includes a proprietary lease for the Callahan Coop Unit within the Panoramic Coop located on the Montauk Property; and for the Old Westbury Property which is the Callahan's primary residence.  These real properties and/or cooperative shares and proprietary leases are subject to a claim for recovery of the Investor Funds that were utilized for the purchase and/or development of the real property and/or for the payment of the mortgage with respect to the real property and/or loan for the cooperative unit.

**D.      UNDERSTANDING, EVALUATING AND ADVISING
UPON THE PRIVATE INVESTMENTS**

The Receiver has investigated and verified the organization of the Receivership

Entities to understand the business organization of each entity, their inter-relationship and

their relationship with third party vendors.  However, the organization and relationship,

as well as the business operation itself, are very difficult to sort out because of the

multiple transfers of funds from one account to another, including to accounts not in the

name of the Receivership Entities, commingling of investor funds, lack of adherence to

corporate formalities, and lack of production and/or existence of books and records.

The Receiver has been in regular communication with interested parties and has

received regular calls and emails from investors, their counsel or creditors.  The Receiver

has been organizing information about the investment of each investor.  The Receiver

will establish an file drop box to provide investors easier access to Receivership related

papers, and if necessary and if deemed cost effective, establish a website where investors

can obtain information and status of the Receivership.

The Receiver, at the suggestion of investors, requested whether other individual

investors would like to communicate with a self- organized group of investors (the

"Investor Group").  The Receiver has forwarded contact information of those investors

who indicated that they wish to be contacted to the Investor Group. The Receiver has

maintained email communications with investors, reviewed their suggestions for

marshaling and liquidating the assets and claims of the Receivership Estate, and

furnished to them, when possible, the information they requested.  The Receiver has also

conducted a conference call with investors to answer many of the investors' questions

about this Receivership proceeding and the Receivership Estate.  The Receiver has sent

letters to all known investors requesting that they identify and confirm their investments and redemptions.  This information will be utilized to establish and propose to the Receivership Court a Claims Determination procedure.  To date, the Receiver currently has a schedule of 24 investors whose investments were not redeemed and who may have potential claims totaling not less than the sum of $53,371,212.18.

**(i)      THE REAL PROPERTY
AND BUSINESS OPERATIONS THEREIN**

The Receiver has caused to be issued subpoenas with respect to real property that is a Receivership Asset or in which the Receiver has a claim or interest in order to confirm the claim or interest, evaluate the equity in the real property, and/or to understand the income and expenses for the operation of any business that is conducted on the real property.  The Receiver has confirmed that there is an equity position in the Montauk Property, the Distinctive Coop Shares, the Callahan Coop Shares and the Callahan Coop Unit, the Old Westbury Property, and in the real property owned by 10 Hillside Drive, LLC where the Cromwell AAA Storage Units are operating, and such equity warrants continued investigation, evaluation of proposals, negotiation of consensual resolutions, and/or alternatively, pursuit of legal remedies.

**(a)      THE PANORAMIC VIEW COOP/MONTAUK PROPERTY**

The Receiver has reviewed documents and evidence of transfer of Investor Funds to entities controlled by Defendant Manson and/or for the benefit of the Panoramic View real property, as well as the promissory notes made by Distinctive Investments and the schedules of the notes. The Receiver has also made demand for repayment of the promissory

notes made by Distinctive Investments and payable to Pangea Offshore, Diversified Global, and Fiduciary Select which notes have aggregate principal sum in excess of $58,000,000; confirmed the outstanding balance of the loan made by Crexus in an amount not less than $12.9 million; and reviewed appraisals, and a profit / loss statement submitted by Distinctive.

The Forfeiture Complaint sets forth that approximately $12.1 million of Investor Funds was used for the purchase of the shares and stockholder interest in 93 Old Montauk Owners, Inc., an entity formed under the laws of New York to be a cooperative corporation. Approximately $17,000,000.00 of Investor funds according to the Forfeiture Complaint went to the servicer of the loan for Distinctive Ventures and the Panoramic View Coop.

The Receiver has confirmed that the title and fee-simple ownership of the Montauk Property is in the name of 93 Old Montauk Owners, Inc. As of January 8, 2007, Distinctive Ventures acquired all of the sold and unsold shares of 93 Old Montauk Owners, Inc. allocated to all one hundred-seventeen (117) units in the Panoramic View Coop, and became the new "Sponsor" for the Panoramic View Coop offering.  Distinctive Ventures is either wholly own and operated directly by Defendant Manson as its managing member, or through Distinctive Investments, which is wholly owned and operated by Defendant Manson as its managing member.

18

There has been substantial discussion with the investors about the possibility of maximizing the return based upon the sale of the remaining unsold renovated units and/or based upon any additional renovation and sale of units in the remaining buildings currently operating as a hotel located at the Montauk Property (the "Panoramic View Hotel").  Any such plan, disposition or liquation of the Montauk Property will be subject to the consent by USAO and the other parties in the Forfeiture Action and subject to approval of this Court pursuant to 28 USC §2001. The requirement for investment for renovation of the remaining buildings currently consists of undocumented estimates ranging up to $15,000,000.00 requiring further analysis and review with real estate professionals.

Based upon the pending Forfeiture Action, both the USAO and the Receiver have requested an audit of the books and records for the Panoramic View Coop and the Panoramic View Hotel (collectively referred as the "Panoramic View").  The Receiver did visit the Panoramic View with Defendant Manson and Manson's attorney, Andrew J. Frisch, Esq.  The inspection confirmed that there are twelve (12) renovated unsold units (which 12 units included the Callahan Coop Unit) in the Hilltop and Salt Sea buildings and confirmed the operation of the remaining buildings and cottages as a hotel.  The Receiver reviewed with Defendant Manson the improvements to the real property.  During that visit, Defendant Manson informed the Receiver that the Town of East Hampton, which the

Montauk Property and the Panoramic View is part of, did not have any objections if future application is made to the New York State Attorney General to convert the Panoramic View from a cooperative ownership to a condominium ownership.   The Receiver has confirmed that there is no pending application with the New York State Attorney General to convert Panoramic View to condominium.  The Receiver is continuing its investigation by subpoena to obtain and determine the operating income and expenses of the Panoramic View and will continue to review proposals for the development and sale of the Panoramic View.

**(b)**      **THE CALLAHAN COOP UNIT**

The Receiver's investigation has confirmed that the use of Investor Funds of not less than the amount of approximately $450,000.00 for the down payment for the purchase of the Callahan Coop Unit at the Panoramic View.  The Callahan coop unit was appraised at $3,125,000.00 on or around February 24, 2011.  The Callahan Coop Unit is presently encumbered by security interested granted to Gibraltar Private Bank and Trust Company to secure a coop loan in the principal sum of $2,278,000.00, having an approximate remaining balance of $2.2 million. The Callahan Coop Unit is the subject of the Forfeiture Action.

**(c)**      **THE CALLAHAN RESIDENCE**

The Callahan residence according to the SEC's amended complaint and according to the Civil Forfeiture Action, received the benefit of over

$560,000.00 of Investor Funds which were used to pay the mortgage for the Callahan residence.  Callahan's Old Westbury Property was appraised at $2,300,000.00 on or around January 12, 2006, but is now appraised at $1,869,600.00 for tax assessment purposes.  The Old Westbury Property is encumbered by a mortgage lien granted to IndyMac to secure a loan in the principal sum of $990,000 and having an approximate remaining balance of $907,000.  Callahan's Old Westbury Property is subject to the Civil Forfeiture Action.

      **(d)**      **THE CROMWELL STORAGE UNITS**

Defendant Callahan indirectly owns a storage facility located at 10 Hillside Road, Cromwell, Connecticut (the "Cromwell Property") through Cromwell AAA Self Storage LLC ("Cromwell LLC"), a Connecticut limited liability company which Defendant Callahan is the Managing Member and owns a majority interest.  The real property where the storage facility is located is own by Ten Hillside Drive, LLC ("Ten Hillside LLC"), a Connecticut limited liability company which Defendant Callahan is the Managing Member and wholly owns.  Cromwell LLC has been collecting rent from storage unit leases in the approximate amount of $325,000 per annum.  Cromwell has been paying rents in the approximate amount of $275,000.00 per annum to Ten Hillside LLC.  Ten Hillside LLC's income and expenses were reported on Schedule E of Defendant Callahan's U.S. Individual Income Tax Returns for the tax years of 2008 and 2009.  The Receiver is not in possession of Defendant Callahan's tax

returns for any other year.  Defendant Callahan's 2008 and 2009 U.S.

Individual Income Tax Return was part of a subpoena response received

by the Receiver.

The fair market value of the Cromwell Property is approximately

$2.5 million.  It is encumbered by mortgages given to Citizens Bank,

having an approximate remaining balance of $1.8 million.  The amount of

the current mortgage payments is not less than $12,300.00.

**(ii)     CREDITORS**

At this juncture, without any books, records, or payable / receivable

ledgers, it is impossible to identify, review or analyze known creditors of the

Receivership Entities.  Based upon initial communication, Deloitte advised that

allegedly $50,000.00 was still owed for preparing the 2010 financial statements

and tax returns for the Callahan Funds and that allegedly Deloitte was not retained

to prepare the 2011 tax returns.  The Receiver will be continuing its investigation

with respect to creditors as well as with respect to third party claims of the

Receivership Defendants.

**E     INVESTIGATING AND ORGANIZING CLAIMS
AGAINST THIRD PARTIES**

The Receiver is investigating and considering potential clawback claims for the

repayment of Investor Funds paid for redemptions which, according to the Receiver's

estimate, could be as much as $30,000,000.00.  Defendant Callahan failed to maintain

investor funds in liquid segregated accounts, and indiscriminately, used commingled

Investor Funds to satisfy redemption requests. The Receiver is also investigating the

22

transfer of funds for the benefit of third parties from Investor Funds or proceeds that were misappropriated from the Receivership Entities. The investors have outlined and made numerous suggestions of potential third party claims which the Receiver is continuing to review. The Receiver's investigation of third-party claims is in the early stages. The Receiver's continuing investigation will include the evaluation of the third party claims and the cost effectiveness of retaining special counsel and/or counsel in a foreign jurisdiction to pursue extra-territorial third party claims.

The Receiver is not in a position at this time to report on such claims or predict the likelihood or extent of any recovery. The Receiver will continue to investigate the claims, evaluate the legal merits of any such claims as well as the practical costs for pursuing such claims.

## IV.   **THE PROPOSED PLAN FOR THE RECEIVERSHIP ESTATE**

According to the SEC's Complaint and the SEC's Amended Complaint, over $90,000,000.00 was invested in the Callahan Funds. Over $30,000,000.00 was redeemed by investors. Promissory notes related to the Panoramic View total over $58,000,000.00 plus interest. The Receiver has begun the recovery of the $6.4 million dollars frozen by the Temporary Restraining Order and the Initial Receivership Order and for the transfer of said funds into the Receivership Estate Account.

A.   The Real Property:

(i)   The Panoramic View:        The Receiver has made demand upon the promissory notes made by Distinctive Investments and will pursue its legal remedies for recovery on the notes totaling in excess of $58,000,000.00 plus interest. The Receiver

will continue to monitor the Forfeiture Action and communicate with the USAO for the sale of the Panoramic View and whether the proceeds of any sale will be paid into the Receivership Estate account and/or paid to the USAO who will seek the establishment of a Victims Fund by the United States Department of Justice for the return of the proceeds to the investors.  The Receiver will continue to participate in the negotiation of proposals for the consensual sale of the Panoramic View if it is in the best interest of the Receivership Estate.  The Receiver while pursuing its legal remedies will continue the investigation of the operation of the Panoramic View.

(ii)    The Callahan Coop Unit and Residence:     The Receiver will continue to monitor the Forfeiture Action and will continue communicating with the USAO with respect to the Receiver's claim for the recovery of Investor Funds from the sale of the Callahan Coop Unit and/or from the sale of the Callahan residence, the Old Westbury Property, whether it is a payment to the Receivership Estate Account and/or payment to the USAO who will seek a determination by the United States Department of Justice to establish a Victims Fund for repayment of any recovery to the investors of the Funds. The Receiver is evaluating and considering the legal remedies it may have with respect to Callahan Coop Unit.  As reported earlier herein, there is equity in the Callahan Coop Unit, as well as in Panoramic View, the Old Westbury Property, the Cromwell Property and the Cromwell LLC's storage facility business to justify the continued expenditure of assets from the Receivership Estate Account in pursuit of recovery of Investor Funds from these properties.

(iii)   Cromwell:     The Receiver issued subpoenas to investigate the equity in the Cromwell Property owned by Ten Hillside LLC, and which is the location of the

24

operation of Cromwell LLC's storage facility, and which is owned by Callahan. The Receiver is seeking the books and records of the Cromwell LLC's storage facility business to assess its income and operating expenses and determine whether Investor Funds can be recovered from the storage facility or from the Cromwell Property, whether by consensual resolution or by pursuit of legal remedies against the storage facility or the real property.

(iv)    The Callahan Funds:   The Receiver will continue its investigation for the books and records of the Callahan Funds to determine the financial condition of the Receivership Entities by service of subpoenas pursuant to the Hague Convention upon the banks, financial institutions, administrators and accountants located in the British Virgin Islands, Bermuda, the Cayman Islands and/or Nevis.

(v)    Redemptions:        The Receiver is continuing its investigation of the use of Investor Funds for redemptions to determine clawback claims. The Receiver has sent a letter for proof of each investor's claim for investment and redemption.

(vi)    Summary:      The Receiver's preliminary investigation for the initial plan has revealed assets which may satisfy claims in part and for which there appears to be a likelihood of recovery for investors and creditors that is cost effective to pursue as outlined in the Receiver's Initial Plan. The Receiver is primarily focused on pursuing the claims for the recovery of Investor Funds that were utilized for purchase, development or maintenance of real property or real property interest. The Receiver's investigation as to other claims against third parties is in the preliminary stages. It is premature for the Receiver to report on such claims or predict the likelihood or extent of any recovery. The Receiver will continue to evaluate the legal merits of third party claims and make a

practical evaluation of the potential benefits to the Receivership Estate versus the costs of pursuing such claims.

## V.    CLAIMS PROCESS.

The Receiver will propose a claims determination procedure to the Receivership Court by which investors and creditors will receive formal notice to submit a claim to the Receiver for the Receiver to evaluate and make a recommendation for disposition of each claim.  The claims determination procedure will provide a process by which notice will be given to known investors and creditors as well as provide for public notice by publication in newspapers of general circulation where unknown investors/creditors are likely to be located.  The claims determination procedure will set forth a claims bar date by which all claims must be submitted to the Receiver.

Upon identifying the claimants and their respective claims, the Receiver by separate motion will establish a claims recommendation procedure by which process the Receiver will initially propose whether a claim of an investor or a creditor should be allowed or disallowed in whole or in part.  The proposed claims recommendation order will set forth a procedure by which an investor or creditor can object to the initial order of the Court approving or denying the recommendation of the Receiver.  The objection will be submitted on paper with the opportunity for the Receiver to respond.  The Receivership Court will have the option to conduct a hearing and/or to issue a decision with respect to a final allowance or rejection of a claim.  As part of the claims recommendation procedure, the Receiver will also recommend classes of claimants for the Court to review and approve on behalf of whom the Receiver can make an application for recommended distribution of Receivership Estate proceeds.

## VI.     ASSETS, LIQUIDATION AND DISTRIBUTION OF PROCEEDS

The Receiver's claims related to real property and real property interests represent a significant portion of the Receivership Assets.  The real property and interests at issue here are non-liquid assets that, while it may be subject to investigation, review and appraisal, is subject to a real estate market determination as to what is the fair market value based upon an actual sale between a bona-fide good faith purchaser and what a willing seller will pay for the real property in an arm's length transaction.  The Receiver will pursue and attempt a consensual resolution of the claims while at the same time the Receiver will pursue its legal remedies to judicially establish and liquidate its claims with respect to the misappropriation of Investor Funds for the benefit of the real property.  Any sale of real property will be subject to review and approval of the Receivership Court pursuant to 28 USC §2001.  The Receiver will be then be in a position to make application to the Court for a distribution of the proceeds for any such sale.

## VII.     CONCLUSION

The Receiver by the Initial Report has set forth a proposed plan to marshal and liquidate the Receivership Assets and Receivership Property.  Pursuant to the Receivership Court Orders, the Receiver will report to this Court quarterly to update and supplement the Report with the Receiver's continuing investigation; supplement the Proposed Plan; report on the activities of the Receiver taken since the last report to marshal and liquidate the Receivership Assets and Receivership Property; pursue the claims of the Receivership Estate; report on the administration of the Receivership Estate; and provide an accounting of the activities and disbursements of the Receiver including income received and disbursements made.

Dated: New York, New York
      July 3, 2012

RESPECTFULLY SUBMITTED,

_____

STEVEN WEINBERG
as RECEIVER for
Horizon Global Advisors, Ltd.,
Horizon Global Advisors, LLC,
Diversified Global Investments (BVI), L.P.,
The Masters Global Fund, L.P.,
Fiduciary Select Income Fund, L.P.,
Horizon Millennium Investments, L.P.
and Pangea Offshore High Yield Portfolio, LLC