UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,

        v.

BRIAN RAYMOND CALLAHAN, HORIZON
GLOBAL ADVISORS LTD. and HORIZON
GLOBAL ADVISORS, LLC, DIVERSIFIED
GLOBAL INVESTMENTS (BVI) L.P., THE
MASTERS GLOBAL FUND, L.P., FIDUCIARY
SELECT INCOME FUND, L.P., HORIZON
MILLENNIUM INVESTMENTS, L.P., PANGEA
OFFSHORE HIGH YIELD PORTFOLIO, LLC,
ADAM MANSON, DISTINCTIVE INVESTMENTS
LLC, AND DISTINCTIVE VENTURES LLC;

                    Defendants,

SHERI MANSON·CALLAHAN,

                    Relief Defendant.

-----------------------------------------------------------------x

Case No. 12-CV-1065 (ADS/ETB)

Assigned to:
  Hon. Arthur D. Spatt (USDJ)
  Hon. E. Thomas Boyle (USMJ)

**RECEIVER'S REPORT FOR THE 2012 THIRD QUARTER**
**COVERING THE PERIOD OF JULY 1, 2012 THROUGH SEPTEMBER 30, 2012**

GOTTESMAN, WOLGEL, MALAMY,
FLYNN & WEINBERG, P.C.

A PROFESSIONAL CORPORATION INCORPORATED IN THE STATE OF NEW YORK
ATTORNEYS FOR

RECEIVER

11 HANOVER SQUARE
NEW YORK, N.Y. 10005
TEL. NO. (212) 495-0100
FAX NO. (212) 480-9797

1

**TABLE OF CONTENTS**

Page

RECEIVER'S REPORT:                                                                     1

I.      Background and Legal Proceedings                                               2

II.     Operations and Investigation                                                   5
        A.      Establishing the Receivership Estate                                   6
        B.      The Receivership Financial Report and Condition                        8
        C.      Evaluating and Preserving Receivership Assets                          11
        D.      Understanding, Evaluating and Advising Upon                            11
                Private Investments
        E.      The Real Property and Business Operations Therein                      13
                (a)     The Panoramic View Coop/Montauk Property                       13
                (b)     The Callahan Coop Unit                                         15
                (c)     The Callahan Residence                                         15
                (d)     The Cromwell Storage Units                                     16
                (e)     Creditors                                                      17
        F.      Investigating and Organizing Claims Against Third Parties              18

III     The Status of the Proposed Plan For the Receivership Estate                    19
        A.      The Real Property                                                      19
                (i)     The Panoramic View                                            19
                (ii)    The Callahan Coop Unit and Residence                          20
                (iii)   Cromwell Property                                             20
        B.      Non-Real Property                                                      21
                (i)     The Callahan Funds                                            21
                (ii)    Redemptions                                                   21
        C.      Summary                                                                22

IV.     Claims Process                                                                 22

V.      Assets, Liquidation and Distribution of Proceeds                               23

VI.     Conclusion                                                                     24

EXHIBIT A       Standardized Fund Accounting Report

EXHIBIT B       List of Known Potential Claimants

### RECEIVER'S REPORT FOR THE 2012 THIRD QUARTER
### COVERING THE PERIOD OF JULY 1, 2012 THROUGH SEPTEMBER 30, 2012

Steven Weinberg, as the Court appointed Receiver (the "Receiver") for Horizon Global Advisors Ltd. ("HGA LTD"), Horizon Global Advisors LLC ("HGA LLC"), Diversified Global Investments (BVI), L.P. ("Diversified Global") f/k/a Horizon Global Investments, L.P. ("Horizon Global"), The Masters Global Fund, L.P. ("Masters Global"), Fiduciary Select Income Fund, L.P. ("Fiduciary Select") f/k/a Pangea Bridge Investment, L.P. ("Pangea Bridge"), Horizon Millennium Investments, L.P. ("Horizon Millennium") and Pangea Offshore High Yield Portfolio, LLC ("Pangea Offshore") respectfully submits this as his quarterly report (the "Report") for the period of July 1, 2012 through September 30, 2012 (the "Quarterly Period"). The Report states the Receivership activities, the Receivership Assets and Receivership Property (as those terms are defined in the Receivership Orders) during the Quarterly Period, and the following as required by Paragraph 55 of the Receivership Order:

A.      A summary of the operations of the Receiver;

B.      The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.      A schedule of all the Receiver's receipts and disbursements (attached as EXHIBIT A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.      A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.      A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources;

1

approximate valuations of claims; and anticipated or proposed methods of

enforcing such claims (including likelihood of success in: (i) reducing the claims

to judgment; and (ii) collecting such judgments);

F.      A list of all known creditors with their addresses and the amounts of their claims;

G.      The status of Creditor Claims Proceedings, after such proceedings have been

commenced; and,

H.      The Receiver's recommendations for a continuation or discontinuation of the

receivership and the reasons for the recommendations.

I.      **BACKGROUND AND LEGAL PROCEEDINGS.**

This Receivership arises from an enforcement proceeding commenced on March 5, 2012

by the U.S. Securities and Exchange Commission against Brian Raymond Callahan ("Callahan"),

HGA LTD and HGA LLC in the U.S. District Court for the Eastern District of New York (the

"Receivership Court") – Case No. 12-CV-1065 (the "SEC/Receivership Action") for

misappropriation of investors' assets and violations of Securities Laws, namely, §17(a)(1)(2) and

(3) of the Securities Act; §10(b) of the Exchange Act and §206(1) (2) and (4) of the Advisors

Act.  In the Amended Complaint filed in the SEC/Receivership Action on May 31, 2012 (ECF

Doc. 28), the SEC asserts that from 2005 to 2012, Defendant Callahan raised over $90 million

(the "Investor Funds") from at least 45 investors (the "Investors") for at least five offshore funds,

namely, Diversified Global, Masters Global, Fiduciary Select, Horizon Millennium and Pangea

Offshore (collectively, the "Callahan Funds"), which he operated and controlled, directly or

indirectly, through HGA LTD and HGA LLC (collectively, "HGA Fund Managers").  Among

other relief, the SEC is seeking disgorgement, prejudgment interest and civil monetary penalties

against the Defendants in the SEC/Receivership Action.  The Amended Complaint also added

Adam Manson, his companies, Distinctive Investments, LLC ("Distinctive Investments"),

Distinctive Ventures, LLC ("Distinctive Ventures") and Sheri Manson Callahan as Defendants in

the SEC/Receivership Action.

On March 27, 2012, on the motion made by the SEC (ECF Doc. 2), this Court signed an

Order (ECF Doc. 22) placing the HGA Fund Managers (HGA LTD and HGA LLC) into

Receivership (the "Initial Receivership Order").  Pursuant to a Stipulation (ECF Doc. 29)

entered into by the SEC and Defendant Callahan, and "So Ordered" (ECF Doc. 33) on June 4,

2012 (the "Fund Receivership Order"), the Receivership Court placed the Callahan Funds into

receivership with Steven Weinberg being the Receiver for both HGA Fund Managers and

Callahan Funds (collectively, the "Receivership Entities").

The Initial Receivership Order and the Fund Receivership Order (collectively, the

"Receivership Orders") enjoin and bar the defendants in the SEC/Receivership Action and

certain other people and entities from engaging in any activity to offer or sell securities, and

from transferring or otherwise disposing of Receivership Assets and Receivership Property.

The Receivership Order directs the Receiver to identify, locate, pursue claims, recover and

preserve all Receivership Assets and Receivership Property for liquidation and distribution.

Specifically, Paragraphs 4 through 7 of the Receivership Order set forth the powers and duties

of the Receiver.  Since his appointment, the Receiver has been active in:

- Establishing and Operating the Receivership Estate;

- Investigating the Receivership Entities and Defendants;

- Evaluating and Preserving Receivership Assets and Receivership Property;

- Investigating and Evaluating Receivership Fund Investments;

- Investigating and Analyzing Third Party Claims.

Separately, and in addition to the subject SEC/Receivership Proceeding, the office of the United States Attorney for the Eastern District of New York ("USAO") commenced a civil forfeiture action on April 17, 2012 in the United States District Court for the Eastern District of New York – Civil Case No. 12 CV 1880 (the "Forfeiture Action").  The action seeks the forfeiture and condemnation of: (a) the real property located at 272 Old Montauk Highway, Montauk, New York 11954 (the "Montauk Property"), (b) all the shares of 93 Old Montauk Owners, Inc., a New York cooperative corporation (the "Panoramic View Coop"), held in the name of Defendant Distinctive Ventures and all proceeds traceable thereto (the "Distinctive Coop Shares"), (c) all the shares of Panoramic View Coop held in the name of Defendant Callahan, and his wife, Defendant Sheri Callahan (the "Callahan Coop Shares"), together with the proprietary lease appurtenant to the Callahan Coop Shares (the "Callahan Coop Unit"), and all proceeds traceable thereto; and (d) the real property located at 47 Clock Tower Lane, Old Westbury, New York 11568 (the "Westbury Property").  According to the Forfeiture Action's Complaint, Investors Funds were used for the acquisition and/or finance of the Montauk Property, the Distinctive Coop Shares, the Callahan Coop Shares and the Old Westbury Property.

On July 6, 2012, the U.S. Attorney's Office for the Eastern District of New York made a motion (ECF Doc. 43) to intervene and to stay the SEC/Receivership Action and all discovery therein (the "USAO Stay") until the resolution of a related, ongoing criminal matter, by verdict, pretrial disposition, or until otherwise allowed by the Receivership Court (the "Intervention & Stay Motion").  Under the terms of the proposed Order, the USAO Stay shall not apply to the Receiver and specifically provides that the Receiver may continue to exercise each and all of the authority granted to him under the Receivership Orders.  The Receivership Court granted the Motion to Intervene and Stay by an Order (ECF Doc. 48) dated July 19, 2012 (the "Intervention

& Stay Order"). Subsequently, the Court issued an Order (ECF Doc. 57) on September 7, 2012 amending the Intervention and Stay Order to include a provision stating that "[n]othing herein shall be deemed to preclude defendant Callahan from filing an application with the Court for relief from the asset freeze … [and] nothing … shall prevent the SEC from challenging any application by defendant Callahan made pursuant to this paragraph."

## II.   OPERATIONS AND INVESTIGATIONS

During this Quarterly Period, July 1, 2012 through September 30, 2012, the Receiver:

- continued to give notices to interested persons and entities of the Receivership and the injunctive provisions of the Receivership Orders, including the order and direction to preserve and turn over all Receivership Property.

- continued to demand that the Defendants, and interested persons and entities, repatriate funds and assets of the Receivership back into the United States and recovered the balance of funds from the Waterstreet account.

- continued to assert interest and control over all Receivership Assets and Receivership Property.

- continued to demand that Defendants, and interested persons and entities, produce all personal property, including the books and records, of the HGA Fund Managers.

- continued to issue investigatory subpoenas and reviewed the responses concerning: (i) properties owned by the Defendants, (ii) properties benefited by Investor Funds, (iii) bank records of the Callahan Funds, and (iv) bank records of entities controlled or owned by Defendant Callahan.

- continued to communicate with the majority of the Investors.

- continued to compile and collect information concerning investments with and for Callahan and the Callahan Funds.

- continued to investigate properties owned by the Defendants and identify mortgages, liens, encumbrances and claims thereon.

- continued to engage in multiple discussions with certain Defendants or their attorneys as to assets and property for the use for recovery of Investor Funds.

- amended the demand for the repayment of promissory notes containing Distinctive Investments' obligations to repay to Pangea Offshore, Diversified Global and Fiduciary Select an excess of $58 million in principal plus approximately another $14 million in interest.

## A.  <u>ESTABLISHING THE RECEIVERSHIP ESTATE</u>.

1.     Immediately upon being appointed, the Receiver issued notices of the Receivership Orders and its injunctive provision, and demanded the production of certified statements and information from banks, financial advisors, administrators, accountants, and other parties who had direct or indirect control of Receivership Assets or Receivership Property and/or who have appeared to have conducted business with the Receivership Defendants.

2.     The Receiver demanded and continues to demand that Defendant Callahan turnover all assets and property of the HGA Fund Managers, repatriate assets, and comply with Paragraphs 8, 9, 10, and 11 of the Initial Receivership Order which includes turning over HGA Fund Managers' books and records, providing a sworn statement and accounting of all assets and property of HGA Fund Managers, and producing the tax returns for HGA Fund Manager.  To date, Defendant Callahan has failed to produce the demanded items and has claimed, through his attorney's letter and email, that: (a) he has no assets of HGA Fund Managers, (b) all documents

are in the possession of the US Attorney's Office or with the Offshore Administrator, and (c) he is invoking his Fifth Amendment privilege against self-incrimination for any meeting with or discovery demand from the Receiver.

3.     The Receiver lead discussions among the parties for exchange of the documents seized by the FBI pursuant to the related ongoing criminal matter (described above) to permit the Receiver to continue his investigation for the information and documents concerning Receivership Assets and Property.

4.     After HSBC Bermuda declined to voluntarily recognize the Receiver's authority and the Receivership Orders, the Receiver arranged for Defendant Callahan to sign a joint request demanding that Drake Fund Advisors, Ltd. as the Administrator of certain Callahan Funds held and deposited in the name of Waterstreet Corporate Services Limited at HSBC Bermuda, to redeem and wire to the Receiver such funds, and thereby repatriating those funds back into the United States without time consuming international legal proceedings.  The costs of any such international proceedings would not have been cost effective and would have significantly eroded the funds remaining in the Waterstreet Corporate Services Limited account.

5.     The Receiver has given notices and demands to the banks, financial institutions, administrators, and accountants located in the BVI and Bermuda.  As of the end of this Quarterly Period, none of them have voluntarily responded to the Receiver's notices and demands for information as set forth in the Receivership Orders.  The Receiver continues his investigation by the service of subpoenas pursuant to the Hague Convention upon the entities located in the BVI, Bermuda, the Cayman Islands and Nevis in order to attempt to obtain the books, records, ledgers and information for all of the Receivership Entities.  No responses to the document production have been received to date.  One objection has been made concerning the manner in how the

Receiver's Subpoena was served under the Hague Convention.  The Receiver is addressing the objection raised.

6.      The Receiver has recovered from certain New York based hedge-funds a small portion of Investors Funds that were located and on hold at those hedge funds.

7.      Recovery has been made by the Receiver of the funds of the Receivership Entities from the accounts restrained by Receivership Orders and said account holders transferred those funds to the Receiver's custodial accounts at a federal insured bank.

**B.**      **THE RECEIVERSHIP FINANCIAL REPORT AND CONDITION**

The Receiver recovered funds from the following financial institutions who were in possession of a balance of the Investor Funds:

**MASTERS GLOBAL:**

| | | |
|---|---|---|
| • | Hedge Forum – Morgan Stanley Smith Barney: | $597.268.70 |
| • | Hedge Forum – Citibank | $109,166.82 |
| | TOTAL: | **$706,435.52** |

Morgan Stanley Smith Barney/Citibank's Hedge Forum have informed the Receiver that, in addition to the $706,435.52, there are also "side pocket" investments, which according to them, are non-liquid investments with an estimated value of $27,263.00.  The Receiver requested and received additional information confirming the nature of the "side pocket", confirming the non-liquid status of the investments, and continues to monitor the side pocket investments.

**DIVERSIFIED GLOBAL:**

- Horizon Kinetics LLC
  /Kinetics Institutional Partners, L.P.:                           $697,131.21

                                                    TOTAL:      **$697,131.21**

**HORIZON MILLENNIUM:**

- Millennium USA, L.P.                                          $4,723,783.00

                                                    TOTAL:      **$4,723,783.00**

The $4,723,783.00 turned over to the Receiver excludes: (i) $472,994.00 which Millennium USA claims will be withheld subject to a general audit holdback, plus (ii) $51,871.00 which Millennium USA claims will be withheld subject to a holdback for Lehman Brothers claims and expenses.  The total held by Millennium USA of the sums subject to a holdback is $524,865.00.

**PANGEA OFFSHORE:**

- Bank of America:                                               $882.58
                                                                 $11.96
                                                    TOTAL:      **$894.54**

**WATERSTREET ACCOUNT:**

- HSBC Bermuda:                                                $43,773.40

                                                    TOTAL:      **$43.733.40**

At this juncture, it is believed that any further recovery of liquid assets of the Receivership will be found offshore, and any further recovery of assets and property in the United States will require a legal proceeding for diversion, conversion, fraud, fraudulent transfer, constructive trust and other legal claims.  The Receiver is continuing to subpoena financial

information to trace the flow of Investor Funds and to determine the ultimate recipient to demand the return of Investor Funds.  This analysis has included tracing funds through subpoenaed and other available bank records and included reviewing substantial wire transfers, account transfers, checks and withdrawals.  The Receiver is also continuing its review of all other documents which the Receiver obtains by means other than a subpoena, or which has been furnished to the Receiver to determine other possible Receivership Assets and claims.

The available liquid assets of the Callahan Funds are extremely limited.  The lack of liquidity severely hampers its ability to operate.  The bulk of the Callahan Funds were allegedly invested or loaned to Distinctive Investments, which investments or loans are purportedly evidenced by promissory notes made by Distinctive Investments, payable to Pangea Offshore, Fiduciary Select or Diversified Global.  The promissory notes total the approximate principal sum of $58,000,000 plus interest.

These promissory notes represent a "non liquid investment" that was part of the fraud perpetrated by the Defendants.  The promissory notes represent an unsecured investment in real property that severely restricts and impairs the Callahan Funds ability to operate, while temporarily keeping the Montauk Property afloat for the Defendants.  The lack of purchasers for the Distinctive Coop Shares and the Callahan Coop Shares directly placed the Callahan Funds in perilous financial condition, to a point where the Callahan Funds were not financially viable.

Both the Callahan Funds and HGA Funds Managers should be liquidated to reduce costs and unprofitable operations.  The HGA Fund Managers did not file their own US tax returns but reported income on schedules on Callahan's individual returns.  The Receiver has been investigating the procedures for dissolution and liquidation of the Receivership Entities.  The

Receiver is meeting with accountants who specialize in filings for offshore entities to evaluate the steps necessary for dissolution and/or liquidation.

**C.      EVALUATING AND PRESERVING RECEIVERSHIP ASSETS**

As previously reported, upon being appointed, the Receiver verified that domestic institutions who held accounts of the Receivership Entities had placed a hold on the funds in those accounts and are complying with the Temporary Restraining Order (ECF Doc. 4) and the Initial Receivership Order (ECF Doc. 22) issued by this Court.  The Receiver has since directed $6,128.244.27 of those funds, as previously reported, to be transferred to Receivership Estate account in accordance with the Receivership Orders.  The Receiver's receipts and disbursements are set forth in the Quarterly Statement Report annexed hereto.

There are also real property and properties tangible to real property that the Receiver is continuing to evaluate and which are subject to the Receivership Orders.  Some of those properties, such as the Montauk Property, the Distinctive Coop Shares together with the proprietary leases appurtenant thereto and all proceeds traceable thereto, the Callahan Coop Shares together with the proprietary lease appurtenant thereto and all proceeds traceable thereto, and the Old Westbury Property which was the Callahan's primary residence, are also the subject of the Civil Forfeiture Action and continues to be subject to a claim for recovery of the Investor Funds that were utilized for the purchase and/or development of the real property and/or for the payment of the mortgage with respect to the real property and/or loan for the cooperative unit.

**D.      UNDERSTANDING, EVALUATING AND ADVISING
         UPON THE PRIVATE INVESTMENTS**

The Receiver continues its investigation and verification of Receivership Entities, their corporate, managerial and administrative organization, to understand inter-relationship of each entity with each other, with the Defendants and with third-party peoples and entities.  This task is

unfortunately very time consuming and difficult because of the multiple transfers of funds from one account to another, including to accounts not in the name of the Receivership Entities, commingling of investor funds, lack of adherence to corporate formalities, and lack of production and/or existence of books and records.

The Receiver continues to be in regular communication with interested parties and has received and maintained telephone, e-mail and written communications with from investors, their counsel or creditors.  The Receiver also established a drop box to provide investors with easier access to Receivership related papers and documents filed in this proceeding for investors to obtain information and status of the Receivership.  The Receiver has continued to forward contact information of those investors who indicated that they wish to be contacted to the Investor Group.

The Receiver has received and reviewed suggestions and information from investors concerning the recovery of assets and pursuit of claims for the benefit of the Receivership Estate, and when possible, furnished the information they requested.  The Receiver has also conducted conference calls with self organized investor committee to answer many of the investors' questions about this Receivership proceeding and the Receivership Estate.

The Receiver has been compiling and organizing information about the investment of each investor.  To date, the Receiver has sent letters to all known investors requesting that they identify and confirm their investments and redemptions.  This information will be utilized to establish and propose to the Receivership Court a Claims Determination procedure.  To date, the Receiver currently has a list of 52 investors who may have potential claims totaling not less than the sum of $63,449,801.84.  A list of potential claimants, without their addresses because the

Receiver is continuing to obtain Investors' addresses and so as not to disclose principals' personal and confidential information, is annexed hereto as EXHIBIT B.

## E. THE REAL PROPERTY AND BUSINESS OPERATIONS THEREIN

The Receiver has issued subpoenas with respect to real property that are a Receivership Asset or in which the Receiver has a claim or interest. Those subpoenas seeks information and documents concerning the Receiver's claim or interest, the equity in the real property, and the income and expenses for the operation of any business that is conducted on the real property. The Receiver has confirmed that there is an equity position in the Montauk Property, the Distinctive Coop Shares, the Callahan Coop Shares and the Callahan Coop Unit, the Old Westbury Property, and in the real property owned by 10 Hillside Drive, LLC where the Cromwell AAA Storage Units are operating. Such equity warrants continued investigation, evaluation of proposals, negotiation and considerations of consensual resolutions and/or alternatively pursuit of legal remedies.

### (a) The Panoramic View Coop/Montauk Property

Substantial time has been devoted by the Receiver during this reporting period to pursue a consensual sale of the Panoramic View among 93 Old Montauk Owners, Inc., Distinctive Ventures, Distinctive Investment, Crexus Investment Corp. ("Crexus"), Gibraltar Private Bank and Trust ("Gibraltar"), the United States Attorney's Office, the Securities and Exchange Commission and the Receiver. The Receiver has met and communicated with multiple potential purchasers; responded to questions; outlined a proposed consensual plan for a sale; held numerous telephone conferences with sellers, purchasers and/or their attorney to review and outline the terms of a Letter of Intent and a

proposed contract of sale that may be reviewed for approval by the aforesaid parties.  A proposed sale for the Panoramic View presently includes the Callahan Coop Unit.

The Receiver has reviewed documents which appeared to evidence the transfer of Investor Funds to entities controlled by Defendant Manson and/or for the benefit of the Panoramic View real property, as well as reviewed the promissory notes made by Distinctive Investments and the schedules of the notes. The Receiver has also made demand for repayment of the promissory notes made by Distinctive Investments and payable to Pangea Offshore, Diversified Global, and Fiduciary Select which notes have in aggregate a principal sum in excess of $58,000,000; confirmed the outstanding balance of the loan made by Crexus in an amount not less than $12.9 million; confirmed the outstanding balance of the loan made by Gibraltar loan in an amount not less than $2.2 million and reviewed appraisals, and a profit/loss statement submitted by Distinctive for the Panoramic View.

The Forfeiture Complaint sets forth that approximately $12.1 million of Investor Funds was used for the purchase of the shares and stockholder interest in 93 Old Montauk Owners, Inc., an entity formed under the laws of New York to be a cooperative corporation.  Approximately $17,000,000.00 of Investor funds according to the Forfeiture Complaint went to the servicer of the loan for Distinctive Ventures and the Panoramic View Coop.

The Receiver has confirmed that the title and fee-simple ownership of the Montauk Property is in the name of 93 Old Montauk Owners, Inc.  As of January 8, 2007, Distinctive Ventures acquired all of the sold and unsold shares of 93 Old Montauk Owners, Inc. allocated to all one hundred-seventeen (117) units in the Panoramic View

14

Coop, and became the new "Sponsor" for the Panoramic View Coop offering. Distinctive Ventures is either wholly own and operated directly by Defendant Manson as its managing member, or through Distinctive Investments, which is wholly owned and operated by Defendant Manson as its managing member.

The Receiver has confirmed that there is no pending application with the New York State Attorney General to convert Panoramic View to condominium.

**(b)**    **The Callahan Coop Unit**

The Receiver's investigation has confirmed that the use of Investor Funds of not less than the amount of approximately $350,000.00 for the down payment for the purchase of the Callahan Coop Unit at the Panoramic View.  The Callahan coop unit was appraised at $3,125,000.00 on or around February 24, 2011.  The Callahan Coop Unit is presently encumbered by security interested granted to Gibraltar to secure a coop loan in the principal sum of $2,278,000.00, having an approximate remaining balance of $2.2 million.  The Callahan Coop Unit is the subject of the Forfeiture Action.

**(c)**    **The Callahan Residence**

The Callahan residence, according to the SEC's amended complaint and according to the Civil Forfeiture Action, received the benefit of over $560,000.00 of Investor Funds which were used to pay the mortgage for the Callahan residence. Callahan's Old Westbury Property was appraised at $2,300,000.00 on or around January 12, 2006, but is now appraised at $1,869,600.00 for tax assessment purposes.  The Old Westbury Property is encumbered by a mortgage lien granted to Indy Mac to secure a loan in the principal sum of $990,000 and having an approximate remaining balance of $907,000.  Callahan's Old Westbury Property is subject to the Civil Forfeiture Action.

**(d)**     <u>The Cromwell Storage Units</u>

Defendant Callahan indirectly owns a storage facility located at 10 Hillside Road, Cromwell, Connecticut (the "Cromwell Property") through Cromwell AAA Self Storage LLC ("Cromwell LLC"), a Connecticut limited liability company which Defendant Callahan is the Managing Member and owns a majority interest.  The real property where the storage facility is located is owned by Ten Hillside Drive, LLC ("Ten Hillside LLC"), a Connecticut limited liability company which Defendant Callahan is the Managing Member and wholly owns.  Cromwell LLC had been collecting rent from storage unit leases in the approximate amount of $325,000 per annum.  Cromwell had been paying rents in the approximate amount of $275,000.00 per annum to Ten Hillside LLC.  Ten Hillside LLC's income and expenses were reported on Schedule E of Defendant Callahan's U.S. Individual Income Tax Returns for the tax years of 2008 and 2009.  The Receiver is not in possession of Defendant Callahan's tax returns for any other year. Defendant Callahan's 2008 and 2009 U.S. Individual Income Tax Return was part of a subpoena response received by the Receiver.

The fair market value of the Cromwell Property is approximately $2.5 million.  It is encumbered by mortgages given to Citizens Bank, having an approximate remaining balance of $1.8 million.  The monthly mortgage payments are approximately $18,500.00 a month.

The Receiver has obtained documents concerning the income and expenses of Cromwell LLC's storage business, as well as past financial statements and an appraisal for the property itself.  Based on the documents reviewed, the Cromwell LLC's expenses exceed its income.  The bulk of its expenses are the mortgage payments and its real estate

taxes which are about $100,000 annually.  Its ability to generate more income is hampered by other storage facilities in the area.  The Receiver, Citizens Bank and Cromwell LLC have held multiple discussions on allowing the Receiver to be able to monitor and verify the monthly income and expenses of Cromwell LLC's storage business.  Those discussions also include Cromwell LLC using only its business operating account at Citizens Bank.  The parties have reached an agreement to the terms of such monitoring, verification and use of the Citizens Bank's operating account, and the parties are in the process of memorializing the terms of the agreement.  The Receiver will seek this Court's approval of such an agreement.

The Receiver continues to investigate and monitor this asset but to date the Cromwell LLC's storage business is not an income producing asset from which the Receivership Estate can draw upon.  There is a small amount of equity in the Cromwell Property and Cromwell LLC's storage business based upon an appraisal report from the summer.  No further action has been decided for Cromwell LLC and Cromwell Property at this present moment other than to continue to monitor and review.

**(e)      Creditors**

At this juncture, without any books, records, or accounts payable / receivable ledgers, it continues to remain impossible to identify, review or analyze known creditors of the Receivership Entities.  Based upon initial communication, Deloitte advised that allegedly $50,000.00 was still owed for preparing the 2010 financial statements and tax returns for the Callahan Funds and that allegedly Deloitte was not retained to prepare the 2011 tax returns.  The Receiver will be continuing its investigation with respect to creditors as well as with respect to third party claims of the Receivership Defendants.  To

date, no one other Deloitte has communicated to the Receiver about pre-receivership debts owed by any of the Receivership Entities.

**F.      INVESTIGATING AND ORGANIZING CLAIMS
         AGAINST THIRD PARTIES**

The Receiver continues its investigation of potential clawback claims for the repayment of Investor Funds paid for redemptions.  Defendant Callahan failed to maintain investor funds in liquid segregated accounts, and indiscriminately, used commingled Investor Funds to satisfy redemption requests.  The Receiver continues to investigate the transfer of Investor Funds to third parties as well as proceeds that were misappropriated from the Receivership Entities.  The investors have outlined and made numerous suggestions of potential third party claims which the Receiver has and is continuing to review.  The Receiver has and continues to investigate and evaluate third party claims and the cost effectiveness of retaining special counsel and/or counsel in a foreign jurisdiction to pursue extra-territorial third party claims.

Certain investors have communicated with the Receiver about claims against Castle Re, Fidelity Insurance and Pictet & Cie, among others.  The Receiver has informed these certain investors that he has no objections to any of them commencing their own private action against said third parties.  These claims appear to be unique to only a limited number of investors.  Any of such private actions by these certain investors will not be financed by the Receiver and will not deplete Receivership Estate assets, but a recovery in such private action may reduce the potential claim of certain investors.

Some of these investors have since commenced actions and/or proceedings against certain third-parties in various forums.  Such actions and/or proceedings are in the initial stages.  The Receiver is not in a position at this time to report further on such third-party claims, or predict the likelihood or extent of any recovery.  The Receiver will continue to investigate the

18

claims, evaluate the legal merits of any such claims, as well as the practical costs for pursuing such claims by the Receivership.

### III.  THE STATUS OF THE PROPOSED PLAN FOR THE RECEIVERSHIP ESTATE

The Receiver has recovered $6.1 million of the $6.4 million dollars frozen by the Temporary Restraining Order and the Initial Receivership Order and continues to monitor for the transfer of said funds into the Receivership Estate Account.

**A.      The Real Property:**

i.      **The Panoramic View**:      The Receiver has participated in the negotiation of proposals for the consensual sale of the Panoramic View and will continue to participate in such negotiations if it is in the best interest of the Receivership Estate.  At the same time, the Receiver has demanded that Distinctive Investments repay the monies and loans evidenced by the promissory notes, and will pursue its legal remedies for recovery on the notes totaling in excess of $58,000,000.00 plus interest if not repaid.  Adam Manson and the Distinctive Entities have acknowledged receipt of the demands, and while have not yet paid on the notes, have entered into discussions with the Receiver on how and when the notes can be repaid.  Adam Manson has taken the position that some notes have been satisfied or refinanced but has yet to provide any proof of either.

The Receiver is reviewing the account records of Distinctive entities, is considering all of its legal remedies, and continuing to investigate into the operation of Panoramic View.  The Receiver is also continuing to monitor the Forfeiture Action, communicating with the U.S. Attorney's Office about a potential consensual sale of the Panoramic View, and whether the proceeds of any such sales will be paid into the Receivership Estate account and/or paid to the U.S. Attorney's Office who will then seek the establishment of a Fair Fund by the U.S.

19

Department of Justice for the return of the proceeds to the investors.  In addition, the Receiver is following and investigating the claims and defenses asserted by lien holders in the Forfeiture Action, and how those claims or defenses, if any, may be affected by the actions or knowledge of the lien holders.

    ii.    **The Callahan Coop Unit and Residence**:  The Receiver has also participated in the negotiation of proposals for the consensual sale of the Callahan Unit and will continue to participate in such negotiations if it is in the best interest of the Receivership Estate.  At the same time, the Receiver is continuing to monitor the Forfeiture Action and communicating with the U.S. Attorney's Office with respect to the Receiver's claim for the recovery of Investor Funds from the sale of the Callahan Coop Unit and/or from the sale of the Callahan residence, the Old Westbury Property, whether it is a payment to the Receivership Estate Account and/or payment to the U.S. Attorney's Office via a Fair Fund.

    The Receiver is evaluating and considering the legal remedies it may have with respect to Callahan Coop Unit.  As reported earlier herein, there is equity in the Callahan Coop Unit, as well as in Panoramic View and the Old Westbury Property to justify the continued expenditure of assets from the Receivership Estate Account in pursuit of recovery of Investor Funds from these properties.  The Receiver is investigating into the claims and defenses asserted by the lien holder of the Callahan Coop Unit in the Forfeiture Action, and how those claims and defenses may be affected by the actions and knowledge of the lien holders.

    iii.    **Cromwell Property**: The Receiver obtained documents and information concerning Cromwell LLC, the storage facility business, the Cromwell Property and Ten Hillside LLC from the subpoenas it issued.  Though the subpoena has multiple investigative purposes, the primary one was whether the Cromwell Property or Cromwell LLC's storage facility business

can be a source of recovery for investors.  At the present time, the Cromwell Property has equity but not substantial equity to warrant a viable source of recovery.  However, it is premature at this stage of the Receiver's investigation for the Receiver to either report or determine whether the storage business can be a source of recovery for the investors.  The Receiver has negotiated a framework for a written agreement with Cromwell LLC to continue its investigation into Cromwell's books and records and monitor its business income and expenses.  The written agreement will preserve the Receiver's right to pursue its legal remedies against the storage facility, the property and all persons and entities who benefited from the receipt of Investor Funds.

**B.**     **Non-Real Property:**

     (i)     **The Callahan Funds**:     The Receiver is continuing its investigation for the books and records of the Callahan Funds to determine the financial condition of the Receivership Entities through investigatory subpoenas upon banks, financial institutions, administrators and accountants located in the British Virgin Islands, Bermuda, the Cayman Islands and/or Nevis.  As the these entities are outside the United States, the subpoena process will need to comport to the Hague Convention for requesting the production of documents and information abroad.  However, it should be noted, that the Receiver has notified the off-shore banks, financial institutions and accountants, as wells as administrators which the Receiver discovered, of the Receivership Orders and has invited them to voluntary comply with the Receivership Order.

     (ii)     **Redemptions:**     The Receiver is continuing its investigation of the use of Investor Funds for redemptions and is considering possible clawback claims.  The Receiver has sent a letter for proof of each investor's claim for investment and redemption.

C.    **Summary:**    The Receiver's Initial Plan (ECF Doc. 42) outlined what assets it seeks to investigate and possibly pursue for which the Receiver believes is cost-effective and which presents a likelihood of recovery for investors. During the Subject Quarterly Period, the Receiver primarily focused on pursuing the claims for the recovery of Investor Funds that were utilized for purchase, improvement or maintenance of real property or real property interest, including loan payments for such real property. The Receiver's investigation as to other claims against third parties continues in the preliminary stages. At this stage, it is premature for the Receiver to report on such claims or predict the likelihood or extent of any recovery. The Receiver will continue to evaluate the legal merits of third party claims and make a practical evaluation of the potential benefits to the Receivership Estate versus the costs of pursuing such claims. The Receiver continued his investigation during this reporting period of trails of monetary transfers originating and/or deriving from Investor Funds, as well as assets of defendants and third-parties against whom the Receiver may pursue claims based upon these transfers.

## IV.    CLAIMS PROCESS.

The Receiver anticipates on proposing a claims determination procedure to the Receivership Court during the 2013 calendar year. The claims determination procedure will provide a process by which a formal notice will be given to known investors and creditors, and a public public notice by publication in newspapers of general circulation to and for unknown investors/creditors, to submit a formal claim to the Receiver which the Receiver will then evaluate and make a recommendation for the disposition of each claim. The notices, as well as the claims determination procedure, will set forth a claims bar date by which all claims must be

submitted to the Receiver.  A list of creditors or potential creditors known to the Receiver is annexed hereto as EXHIBIT B.

Upon identifying the claimants and their respective claims, the Receiver by a separate and subsequent motion will propose to this Court a claims disposition procedure by which the Receiver will be able to recommend which claims of an investor or a creditor should be allowed or disallowed, in whole or in part.  The procedure will also provide the process by which any investor or creditor whose claim was disallowed in whole or in part can object and seek summary review and disposition of their objections within a certain time of the Court approving, adopting or disapproving the Receiver's recommended claim disposition.  The objection will be submitted on paper with the opportunity for the Receiver to respond.  The Receivership Court will have the option to conduct a hearing and/or to issue a decision with respect to a final allowance or rejection of a claim.  As part of the claims recommendation procedure, the Receiver will also recommend classes of claimants for the Court to review and approve on behalf of whom the Receiver can make an application for recommended distribution of Receivership Estate proceeds.

**V.     ASSETS, LIQUIDATION AND**
**DISTRIBUTION OF PROCEEDS**

The Receiver's claims which relate to real property and real property interests represent a significant portion of the Receivership Assets.  The real property and interests at issue are non-liquid assets.  Their fair market value are directly dependent and determined upon the real estate market and conditions from any given time to another, and which are anchored to the actual sale price a bona-fide good faith purchaser is willing to pay to a willing seller of real property in an arm's length transaction.

The Receiver is in negotiation with various parties and third-parties for a consensual resolution involving the sale of such real property and interest related thereto, which if a sale

23

materializes, it would serve to increase the liquidity of the Receivership and source of recovery for the Investors.  At the same time the Receiver will pursue its legal remedies to judicially establish and liquidate its claims with respect to the misappropriation of Investor Funds.  Any sale of real property will be subject to review and approval of the Receivership Court pursuant to 28 USC §2001.  A consensual resolution for the sale of real property and interest will improve the timing as to when Receiver will be in a position to make application to the Court for a distribution for the Investors whose claims have been approved by this Court.

## VI.   <u>CONCLUSION</u>

During this Quarterly Period, the Receiver continued to follow the proposed plan set forth in the Receiver's Initial Plan (ECF Doc. 42) to marshal and liquidate the Receivership Assets and Receivership Property.  Pursuant to the Receivership Court Orders, the Receiver will continue to report to this Court quarterly to update and supplement the Plan; report on the Receiver's continuing investigation; report on the activities of the Receiver taken since the last reporting period; to continue to marshal and liquidate the Receivership Assets and Receivership Property; to pursue the claims of the Receivership Estate; to report on the administration of the Receivership Estate; and to provide an accounting of the activities and disbursements of the Receiver including income received and disbursements made.  Please see the attached SFAR for the accounting for the reporting period of July 1, 2012 through September 30, 2012.

Dated: New York, New York
      November 20, 2012

RESPECTFULLY SUBMITTED,


STEVEN WEINBERG
as RECEIVER for
Horizon Global Advisors, Ltd.,
Horizon Global Advisors, LLC,

24

Diversified Global Investments (BVI), L.P.,
The Masters Global Fund, L.P.,
Fiduciary Select Income Fund, L.P.,
Horizon Millennium Investments, L.P.
and Pangea Offshore High Yield Portfolio, LLC