**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                              Plaintiff,

      -against-                                      **ORDER**
                                                            12-CV-1065 (ADS)(AKT)

BRIAN RAYMOND CALLAHAN, ADAM MANSON,
DISTINCTIVE INVESTMENTS LLC, and DISTINCTIVE
VENTURES LLC,

                              Defendants.

SHERI MANSON CALLAHAN,

                              Relief Defendant.
------------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                              Plaintiff,

     -against-                                   12-CV-1880 (ADS)(AKT)

THE REAL PROPERTY LOCATED AT 272 OLD MONTAUK
HIGHWAY, MONTAUK, NEW YORK, 11954, AND ALL
PROCEEDS TRACEABLE THERETO,

ANY AND ALL SHARES OF 93 OLD MONTAUK OWNERS,
INC. HELD IN THE NAME OF DISTINCTIVE VENTURES,
LLC, AND ALL PROCEEDS TRACEABLE THERETO,

ANY AND ALL SHARES OF 93 OLD MONTAUK OWNERS,
INC. HELD IN THE NAME OF BRIAN CALLAHAN AND
SHERI CALLAHAN, TOGETHER WITH THE PROPRIETARY
LEASE FOR COOPERATIVE UNIT SALT SEA #4 AT THE
REAL PROPERTY LOCATED AT 272 OLD MONTAUK
HIGHWAY, MONTAUK, NEW YORK, 11954, AND ALL
PROCEEDS TRACEABLE THERETO, AND

THE REAL PROPERTY LOCATED AT 47 CLOCK TOWER
LANE, OLD WESTBURY, NEW YORK 11568, AND ALL
PROCEEDS TRACEABLE THERETO,

                              Defendants <u>In Rem</u>.
------------------------------------------------------------------------X

**APPEARANCES:**

**Gottesman, Wolgel, Secunda, Malamy & Flynn, P.C.**
*Attorneys for the Receiver Steven Weinberg*
11 Hanover Square, 4th Floor
New York, NY 10005
   By:   Steven Weinberg, Esq.
         Stewart W. Lee, Esq.
         Richard B. Demas, Esq., Of Counsel

**United States Securities and Exchange Commission**
*Attorneys for the Securities and Exchange Commission*
100 F. Street, NE
Washington, DC 20549
   By:   Dean M. Conway, Assistant Chief Litigation Counsel

**Sher Tremonte LLP**
*Attorneys for Brian Raymond Callahan and Sheri Manson-Callahan*
80 Broad Street, Suite 1301
New York, NY 10004
   By:   Michael Tremonte, Esq.
         Robert Knuts, Esq., Of Counsel

**Law Offices of Andrew J. Frisch**
*Attorneys for Adam Judd Manson, Distinctive Investments LLC and Distinctive Ventures LLC*
40 Fulton Street, 23rd Floor
New York, NY 10038
   By:   Andrew J. Frisch, Esq., Of Counsel

**Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer**
*Attorneys for the Defendant Adam Judd Manson, Distinctive Investments LLC and Distinctive Ventures LLC*
565 Fifth Avenue
New York, NY 10017
   By:   Robert J. Anello, Esq.
         Gates Salyers Hurand, Esq.
         Judith L. Mogul, Esq., Of Counsel

**Brian Spears LLC**
*Attorneys for Brian F. Callahan*
2425 Post Road, Suite 203
Southport, CT 06890
   By:   Brian Edward Spears, Esq., Of Counsel

**United States Attorney's Office**
*Attorneys for the United States of America*
271 Cadman Plaza East
Brooklyn, NY 11201
    By:   Brian D. Morris, AUSA
           Laura D. Mantell, AUSA
           Karin K. Orenstein, AUSA
           David C. Woll, Jr., AUSA, Of Counsel

**LeClair Ryan, PC**
*Attorneys for RBS Citizens, National Association*
830 Third Avenue, 5th Floor
New York, NY 10022
    By:   Michael Terrance Conway, Esq., Of Counsel

**K & L Gates LLP**
*Attorneys for CreXus S. Holdings, LLC*
599 Lexington Avenue
New York, NY 10022
    By:   Alyssa B. Cohen, Esq.
           John H. Culver, Esq.
           Joanna A. Diakos, Esq., of Counsel

**Morrison Cohen LLP**
*Attorneys for Gibraltar Private Bank and Trust*
909 Third Avenue
New York, NY 10022
    By:   Evan Scott Lupion, Esq.
           Yehuda David Scharf, Esq., of Counsel

**Greenberg Traurig LLP**
*Attorneys for OneWest Bank, F.S.B.*
MetLife Building
200 Park Avenue
New York, NY 10166
    By:   Eric Nevins Whitney, Esq.
           Rachel Lois Izower-Fadde, Esq.
           Steven M. Nadel, Esq., of Counsel

**Katten Muchin Rosenman LLP**
*Attorneys for Latus Partners LLC*
575 Madison Avenue
New York, NY 10022
    By:   Michael Max Rosensaft, Esq., of Counsel

Presently before the Court is the request by the United States of America that (1) the contract entered into by the Receiver and HFZ Capital, LLC in the above-captioned SEC enforcement action to sell a set of unsecured notes made by Distinctive Investments, LLC to entities held within the Receivership Estate be set aside; (2) these notes be removed from the Receivership Estate; and (3) the Receiver's authority to sell these notes be withdrawn. For the reasons that follow, the Court grants all three requests.

## I. BACKGROUND

### A. Procedural History

On March 5, 2012, the United States Securities Exchange Commission (the "SEC") commenced an action, SEC v. Callahan, et al., Case No. 12-CV-1065 (the "SEC Action"), against Brian Raymond Callahan ("Callahan"), Horizon Global Advisors Ltd. ("HGA Ltd.") and Horizon Global Advisors, LLC ("HGA LLC"). The SEC alleged that, in violation of § 17(a)(1), (2) and (3) of the Securities Act; § 10(b) of the Exchange Act; and §§ 206(1), (2) and (4) of the Advisers Act, Callahan, HGA Ltd. and HGA LLC "engaged in a long-running fraud in which investors were routinely misled about the nature of their investments and also were unaware of [Callahan, HGA Ltd. and HGA LLC's] frequent misuse and misappropriation of their money." (SEC Action, Orig. Compl., ¶ 1.)

On March 27, 2012, the Court issued a preliminary injunction (the "March 27, 2012 Order") in which it placed HGA Ltd. and HGA LLC into Receivership and appointed Steven Weinberg ("Weinberg" or the "Receiver") as their Receiver. The March 27, 2012 Order empowered the Receiver to administer, marshal, manage and liquidate the assets and property of the Receivership Estate.

On May 31, 2012, the SEC filed an Amended Complaint and added the following parties as defendants in this action: Diversified Global Investments, L.P. ("Diversified"), The Masters Global Fund, L.P. ("Masters"), Fiduciary Select Income Fund, L.P. ("Fiduciary"), Horizon Millennium Investments, L.P. ("Horizon Millennium"), Pangea Offshore High Yield Portfolio, LLC ("Pangea High Yield"), Adam Judd Manson ("Manson"), Distinctive Investments, LLC ("Distinctive Investments"), and Distinctive Ventures LLC ("Distinctive Ventures"). In addition, Callahan's wife and Manson's sister, Sheri Manson-Callahan ("Manson-Callahan"), was added as a relief defendant.

Similar to the Original Complaint, the Amended Complaint alleges that in violation of § 17(a)(1), (2) and (3) of the Securities Act; § 10(b) of the Exchange Act; and §§ 206(1), (2) and (4) of the Advisers Act, Callahan, HGA LLC, HGA Ltd., Diversified, Masters, Fiduciary, Horizon Millennium, and Pangea High Yield "engaged in a long-running fraudulent Ponzi scheme in which investors were routinely misled about the nature of their investments and also were unaware of [the] frequent misuse and misappropriation of their money." (SEC Action, Amend. Compl., ¶ 1.) In this regard, from some point in 2005 to January of 2012, Callahan allegedly raised more than $90 million from at least forty-five investors (the "Investors") for five offshore funds, which were the defendants Diversified, Masters, Fiduciary, Horizon Millennium and Pangea High Yield (the "Callahan Funds"). According to the SEC, Callahan operated the Callahan Funds directly or through HGA Ltd. and HGA LLC.

The Amended Complaint further alleges that Manson and his two entities, Distinctive Investments and Distinctive Ventures (collectively, "Distinctive") "aided and abetted Callahan's fraudulent scheme." (SEC Action, Amend. Compl, ¶ 1.) Allegedly, Manson and Distinctive received millions of dollars in loans from the Callahan Funds in order to purchase and renovate a

5

real estate project in Montauk, New York (the "Montauk Property"), as well as to pay off debts and obligations which were owed by Distinctive, and guaranteed by Manson.

Also on May 31, 2012, the SEC and the Callahan Funds entered into a stipulation which placed the Callahan Funds into Receivership with Weinberg being their Receiver. The stipulation fully incorporated the terms of the March 27, 2012 Order. The Court "so ordered" this stipulation on June 4, 2012 (the "June 4, 2012 Order").

On March 9, 2013, the Court approved a consent judgment against HGA Ltd.; HGA LLC; Diversified; Masters; Fiduciary; Horizon Millennium; and Pagea High Yield. As a result, the only remaining Defendants in the SEC Action are Callahan, Manson, Distinctive Investments and Distinctive Ventures (the "Defendants"). Manson-Callahan remains the relief defendant.

On February 22, 2014, the Court issued an order in the related civil forfeiture proceeding <u>United States v. The Real Property Located at 272 Old Montauk Highway, Montauk, New York 11954, and All Proceeds Traceable Thereto, et al.</u>, Case No. 12-CV-1880 (E.D.N.Y.) (the "Civil Forfeiture Action"), which held that the interlocutory sale of the Montauk Property was both necessary and appropriate under 18 U.S.C. § 981(g)(6) and Rule G(7) of the Supplemental Rules of Certain Admiralty and Maritime Claims and Asset Forfeiture Actions (the "February 22, 2014 Order"). However, the Court also determined that the interlocutory sale proposed by the United States of America (the "Government") in conjunction with HFZ Capital, LLC ("HFZ"), who sought to purchase the Montauk Property, was commercially unreasonable. The Court permitted the Government and HFZ to submit a revised proposal for a sale of the Montauk Property within thirty days of the date of the Order.

On March 7, 2014, the Government filed a letter requesting a pre-motion conference. In this regard, the Government wished to bring a motion to prevent the Receiver from entering into

6

a contract with HFZ to sell a set of fifty-eight unsecured promissory notes made by Distinctive Investments to Receivership Entities Fiduciary and Diversified (the "Notes"). The Notes are currently in default and represent an indebtedness owed to the Receivership Estate in the sum of $47,645,726, plus interest which, as of June 30, 2013, was $10,131,964, for a total debt of $57,777,690. Allegedly, the Notes reflect the millions of dollars in funds from the Investors that were unlawfully diverted to the Montauk Property, first for its acquisition and then to pay principal and interest owed on secured loans that presently encumber the Montauk Property.

According to the Government, the Receiver's sale of the Notes to HFZ would interfere with the interlocutory sale of the Montauk Property as directed by the February 22, 2014 Order. In this regard, the Government explained that "[w]hile the Notes are not secured debt, the ultimate purpose of [selling them] is to effect a consensual acquisition of . . . the Montauk Property." (March 7, 2014 Government Letter, pg. 2.) As such, any sale of the Notes "was [ ] subject to and dependent on the [G]overnment's approval, resolution of the outstanding secured lienholders' claims in the [Civil Forfeiture Action], and the cooperation of Manson and Distinctive," who are claimants in the Civil Forfeiture Action. (March 7, 2014 Government Letter, pg. 2.)

In addition, the Government alerted the Court that counsel for Manson and Distinctive had been cooperating with the Government and that all of these parties had determined that a sealed multiple bidding process would be the best way to satisfy the Court's February 22, 2014 Order and to maximize the value of the Montauk Property.

On March 8, 2014, the Court granted the Government's request for a pre-motion conference. The conference was set for March 13, 2014.

7

On March 11, 2013, the Receiver filed a letter in reply to the Government's March 7, 2014 letter. In the letter, the Receiver expressed the thought that entering into a contract with HRZ for the sale of the Notes for the purchase price of $41.5 million (the "Contract") was in the best interest of the Receivership Estate and the Investors. The Receiver also did not believe that the Contract would negatively affect the Government's efforts in the Civil Forfeiture Action or undermine the Court's February 22, 2014 Order.

**B. The March 13, 2014 Pre-Motion Conference**

At the pre-motion conference on March 13, 2014, it was revealed that the Receiver had already signed the Contract to sell the Notes to HFZ on March 7, 2014. The closing date for the Contract was June 3, 2014, which was ninety days after the Contract was executed. Nevertheless, despite entering into the Contract, the Receiver insisted that any new sale proposal by the Government would not be impacted and that the Government was merely speculating that the Contract could not proceed forward at the same time as the interlocutory sale for the Montauk Property.

The Receiver also informed the Court that due to a Letter of Intent ("LOI") that he had previously entered into with HFZ, he was bound to exclusively negotiate with HFZ for the sale of the Notes. He further advised the Court that if the deal to sell the Notes to HFZ was not closed on June 3, 2014, the Contract would terminate. In this regard, the Contract required the approval of the Government and the claimants in the Civil Forfeiture Action, as well as the approval of the Court, in order for the deal to close.

The Government countered that the February 22, 2014 Order mandated that an interlocutory sale was necessary and directed the parties to prepare a proposal that would maximize the value received for the Montauk Property. The Government claimed that the best

8

way to comply with the February 22, 2014 Order was by having a closed bidding process with a bid package and preset contract, therefore avoiding broker's fees, breakup fees and lengthy contract negotiations (the "Proposal"). In this regard, apparently, since moving forward with this new Proposal, the Government had already received a $60 million bid for the Montauk Property and more bids were expected. However, the Government argued that should the Receiver be permitted to proceed forward with the Contract, it would interfere with the Proposal because potential bidders would be leery of purchasing the Montauk Property knowing that HFZ had purchased the Notes, which HFZ could potentially use in litigation for the Montauk Property.

In addition, the Government explained that because the Notes were unsecured, the Receiver was not able to file a claim in the Civil Forfeiture Action. It is the Government's theory that the Notes were simply designed to cover up the alleged fraudulent scheme between Callahan, Manson and Distinctive to use the Investors' monies to fund the acquisition and the development of the Montauk Property. As such, the Government contends that the Notes only have value if the Government allows for a conveyance of the Montauk Property. In this regard, apparently HFZ has entered into the Contract to purchase the Notes in order to obtain the Montauk Property. Put another way, HFZ would attempt to acquire Distinctive Investments' only asset – the Montauk Property – as a way to satisfy the debt owed on the Notes. Thus, HFZ will ultimately refuse to buy the Notes if the Government determines that the Notes are invalid, thereby preventing HFZ from using them to obtain the Montauk Property. The Court notes that counsel for Manson and Distinctive were largely in agreement with the Government, except that she alleged that the Notes were valid, even if they were unsecured.

Although not a party in either the SEC Action or the Civil Forfeiture Action, an attorney for HFZ also spoke at the March 13, 2014 pre-motion conference. For its part, HFZ admitted

9

that it was seeking to purchase the Notes with the intent of then convincing the Government to convey to HFZ clear title to the Montauk Property, which means that HFZ would acquire the Montauk Property free from all encumbrances. It appears that HFZ would be willing to satisfy the outstanding debt owed to the secured lenders.

According to HFZ, the Court's February 22, 2014 Order did not eliminate the exclusivity agreement contained in the LOI that had been entered into between the Government and HFZ for the sale of the Montauk Property. The Court notes that the LOI entered into between the Government and HFZ for the sale of the Montauk Property is separate from the LOI entered into between the Receiver and HFZ for the sale of the Notes. HFZ expressed that it wanted to be permitted to submit a further bid for the Montauk Property within thirty days. The Government maintained that the exclusivity agreement ended with the February 22, 2014 Order finding that the proposed interlocutory sale to HFZ was commercially unreasonable.

The SEC stated that it did not believe that having the Contract and the Proposal continuing at the same time was efficient. Therefore, the SEC opined that moving forward with the Government's Proposal was the best option. The SEC also noted that the Receiver was compensated by the hour from the Receivership Estate for his services, including his efforts to sell the Notes. Therefore, if permitted to proceed forward with the Contract even though it potentially will not receive the necessary approvals, the Receiver will needlessly deplete funds from the Receivership Estate that would have otherwise been available to the Investors.

In addition, CreXus S. Holdings LLC ("CreXuS"), one of the claimants in the Civil Forfeiture Action with a lien on the Montauk Property, asserted that it wanted the Montauk Property sold as quickly as possible. CreXus believes that the Government's Proposal represented the best solution to the problem.

In light of fact that the Contract had already been signed by the Receiver, the Government modified its request for relief and asked the Court to set aside the Contract; remove the Notes from the Receivership Estate; and withdraw the Receiver's authority to sell the Notes. The Court reserved decision.

## II. THE COURT'S RULING

In order to facilitate the most efficient sale of the Montauk Property and to maximize value for the Investors, the Court finds that the Government should be permitted to proceed forward with the Proposal without interference. In the Court's view, the Contract entered into by HFZ and the Receiver will undermine the Government's efforts. Indeed, HFZ's purpose in purchasing the Notes is to obtain the Montauk Property and the Notes have no value other than their connection to the Montauk Property. Clearly, the existence of this Contract will prevent bidders from coming forward, because HFZ's potential acquisition of the Notes on June 3, 2014 could result in litigation concerning the Montauk Property.

For these reasons and given that the Contract is subject to the Court's approval, the Court declines to approve the Contract entered into by HFZ and the Receiver and orders that it is set aside. In addition, the Court modifies the June 4, 2012 Order as follows: (1) the Court removes the Notes from the Receivership Estate; and (2) the Court withdraws the Receiver's authority to sell the Notes. The Government is directed to proceed forward with the Proposal and to provide the Court with a status report within thirty days of the date of this Order.

**SO ORDERED.**
Dated: Central Islip, New York
       March 27, 2014

                                                ____/s/ Arthur D. Spatt_____
                                                  ARTHUR D. SPATT
                                            United States District Judge