# GOTTESMAN, WOLGEL, MALAMY, FLYNN & WEINBERG, P.C.

A Professional Corporation Incorporated in the State of New York

SAMUEL GOTTESMAN (1905-1974)
HAROLD H. WOLGEL (1920-2010)
LAWRENCE L. FLYNN
STEVEN WEINBERG
STEWART W. LEE

RICHARD B. DEMAS
SUSANNA REQUETS
KELSEY BILODEAU
CHARLOTTE LICKER ∆

 Also Admitted in New Jersey
∆ Admitted in New Jersey Only

ATTORNEYS AT LAW
11 HANOVER SQUARE
NEW YORK, N.Y. 10005-2870
———
TELEPHONE (212) 495-0100
FACSIMILE (212) 480-9797

WRITERS E-MAIL:
slee@gottesmanlaw.com

IN REPLY REFER TO
14750

April 9, 2014

***VIA ELECTRONIC CASE FILING***
***and FIRST-CLASS MAIL***

The Honorable Arthur D. Spatt
United States District Court
For the Eastern District of New York
100 Federal Plaza
P.O. Box 9014
Central Islip, New York 11722

>   Re:   Securities and Exchange Commission v. Brian R. Callahan, et al.
>            Civil Docket No. 12-CV-1065

Dear Judge Spatt:

We are the attorneys for Steven Weinberg, the court appointed receiver (the "Receiver") in the above referenced action (the "Receivership Action") pursuant to Your Honor's Preliminary Injunction Freezing Assets and Granting Other Relief Orders dated March 27, 2012 and the Stipulation and Preliminary Injunction Order dated June 4, 2012 (separately, the "Initial Receivership Order" and the "Expanded Receivership Order", and collectively, the "Receivership Orders").

On behalf of the Receiver, we respectfully submits this letter as the Receiver's status report on Ten Hillside Road, LLC ("Ten Hillside"), Cromwell AAA Self Storage, LLC ("Cromwell AAA") and all related assets pursuant to Your Honor's Order of March 5, 2014 (ECF Doc. 190). In addition to Ten Hillside and Cromwell AAA, the report includes matters relating to the storage business operated by Cromwell AAA (the "Storage Business"), the loans and mortgages affecting Ten Hillside, and the property itself, 10 Hillside Road, Cromwell, Connecticut 06416 (the "Cromwell Real Property").

A.   **The Receivership Orders & Asset Freeze**:

By the Receivership Orders, this Receivership Court placed Horizon Global Advisors, Ltd. ("HGA Ltd."), Horizon Global Advisors, LLC ("HGA LLC"), Diversified Global Investments (BVI), L.P. ("Diversified Global") f/k/a Horizon Global Investments,

The Honorable Arthur D. Spatt
United States District Court
for the Eastern District of New York
April 9, 2014
Page 2

L.P. ("Horizon Global"), The Master Global Fund, L.P. ("Master Global"), Fiduciary Select Income Fund, L.P. ("Fiduciary Select") f/k/a Pangea Bridge Investment, L.P. ("Pangea Bridge"), Horizon Millennium Investments, L.P. ("Horizon Millennium"), and Pangea Offshore High Yield Portfolio, LLC ("Pangea Offshore") into receivership and appointed the Receiver. Pursuant to those Receivership Orders, this Receivership Court froze "all Receivership Assets and all of the funds and other assets of the Defendants presently held by them, for their direct or indirect benefit, under their direct or indirect control or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located, including but not limited to those assets identified in ... Exhibit A [of the Initial Receivership Order]". *Initial Receivership Order*, p. 6. Among the assets identified in Exhibit A were: (i) the assets of the Cromwell AAA and Ten Hillside, (ii) the Cromwell Real Property, and (iii) a certain Cromwell AAA bank account (the "Citizens' Bank Account") held and deposited with RBS Citizens, N.A. ("Citizens Bank").

B.   **Ten Hillside and Cromwell AAA**

Ten Hillside is the record fee owner of the Cromwell Real Property. It is a domestic limited liability company formed under the laws of the State of Connecticut on or about September 20, 2002. Ten Hillside was formed to, and its primary purpose is to, "acquire, manage, own, hold, sell assign, transfer, operate, lease, mortgage, pledge, develop as a self-storage facility consisting of 49,675 square feet, restore, improve and otherwise deal with the certain parcel of real property and improvements located .... [on Cromwell Real Property]'. *See Ten Hillside's LLC Operating Agreement. See Ten Hillside's Article of Amendment* dated March 17, 2003. Defendant Brian R. Callahan is the sole member and manager of Ten Hillside.

Cromwell AAA is the owner of the Storage Business operating on the Cromwell Real Property. It is a domestic limited liability company formed under the laws of the State of Connecticut on or about July 31, 2002. Cromwell AAA was formed to, and its primary purpose is to "operate the [Cromwell Real Property] for the purpose of operating a self service storage facility ...". *See Cromwell AAA's LLC Operating Agreement*. Defendant Brian R. Callahan, and his father, non-party Brian F. Callahan, are the owners of the Cromwell AAA. Non-party Brian F. Callahan manages and oversees the day to day operations of the Storage Business.

C.   **Citizens Bank:**

By a letter dated September 4, 2003 to Defendant Brian R. Callahan, Citizens Bank made a commitment to lend a commercial loan up to $2,450,000.00 to refinance a 378 unit self-storage facility. On or about December 16, 2003, Ten Hillside borrowed two commercial loans from Citizens Bank, one in the principal sum of $2,170,000.00 and the other in the principal sum of $280,000.00 (respectively, the "$2.17 Million Loan" and

Case 2:12-cv-01065-JMA-AYS   Document 223   Filed 04/09/14   Page 3 of 10 PageID #: 7566

The Honorable Arthur D. Spatt
United States District Court
for the Eastern District of New York
April 9, 2014
Page 3

the "$280K Loan", and collectively, the "Citizens Loans"). The Citizens Loans are each evidenced by their own separate Commercial Term Promissory Note, each dated December 16, 2003, and each made by Ten Hillside to Citizens Bank (respectively, the "$2.17 Million Note" and the "$280K Note", and collectively, the "Citizens Notes"). *See Citizens Notes.* As a condition for and as component of the $2.17 Million Loan, Ten Hillside also entered into and executed an International Swap Dealers Association, Inc.'s Master Agreement dated December 8, 2003 (the "Master Agreement") which is a ten (10) year agreement for interest rate swaps, interest rate caps and interest rate collars designed to hedge against fluctuations in interest rates and currency exchange rates. *See Master Agreement. See also $2.17 Million Note*, p. 7.

The Citizens Notes are secured by a mortgage (the "Mortgage") granted by Ten Hillside on the Cromwell Property pursuant to the Mortgage Deed and Financing Statement dated December 16, 2003. *See Mortgage.* The Citizens Loans, as evidenced by the Citizens Notes, are guaranteed by Cromwell AAA and Defendant Brian R. Callahan pursuant to a Guaranty dated December 16, 2003 (the "Guaranty").

Both the $2.17 Million Loan and the $280K Loan were a ten (10) year term loan with a maturity date of January 1, 2014. Each has matured. The Master Agreement has also expired.

The outstanding principal balance of the $2.17 Million Loan is $1,554,555.00. During the term of the $2.17 Million Loan, interest accrued on the outstanding principal balance at the per annum rate equal to Libor plus 2.00%. *See $2.17 Million Note*, p. 1. The Libor used by Citizens Bank is the Libor rate fixed by the British Bankers' Association (and now by Intercontinental Exchange) as its average interbank interest rate at which a selection of banks on the London money market are prepared to lend to one another on a one month term/basis (the "ICE Libor One Month Rate"). According to http://www.bloomberg.com, the current ICE Libor One Month Rate as of April 7, 2014 is 0.15% per annum. Upon an event of default, the interest rate becomes the rate of interest announced by Citizens Bank from time to time as its "Prime Rate". *See $2.17 Million Note*, p. 3-4. According to Citizens Bank, the Prime Rate is presently 6.25% per annum. Interest is calculated on a 360 day year based on the actual days elapsed.

In addition to the interest set forth in the $2.17 Million Note, there is also a swap interest component pursuant to the Master Agreement. *See Master Agreement. See also $2.17 Million Note*, p. 7. By a letter dated December 9, 2003, Citizens Bank and Ten Hillside agreed to fix the swap interest rate to 4.78% per annum (the "Fix Swap Rate"). Pursuant to the terms of the Master Agreement, the Fix Swap Rate is then reduced by the ICE Libor One Month Rate then in effect for the period the monthly payment is due (the "Net Swap Rate"). In addition to the interest provided for under the $2.17 Million Note, Ten Hillside is also obligated to pay Citizens Bank each month a sum equal to: [(the then

The Honorable Arthur D. Spatt
United States District Court
for the Eastern District of New York
April 9, 2014
Page 4

outstanding principal balance x the Net Swap Rate) / 360] x the number of days for the applicable monthly period (the "Swap Rate Monthly Payment").  The outstanding principal balance of the $280K Loan is $192,048.51.  During the term of the $280K Loan, interest accrued on the outstanding principal balance at the per annum rate equal to the average weekly yield on United States Treasury Securities adjusted to a constant maturity of five (5) years as published from time to time (the "USTS 5 Year Index") plus 2.5%, but in no event less than 6.00% per annum.  *See $280K Note*, p. 2.  According to the http://www.treasury.gov, the USTS 5 Year Index as of April 4, 2014 is 1.71% per annum.  Upon an event of default or maturity, the interest rate becomes 3.0% per annum higher than the rate of interest otherwise payable under the $280K Note.  *See $280K Note*, p. 2.  According to Citizens Bank, the rate of interest after maturity is 9% per annum.  Interest is calculated on a 360 day year based on the actual days elapsed.

Ten Hillside is identified as the Borrower of the Citizens Loans.  However, it appears that Cromwell AAA, one of the two guarantors, have been the primary party making the monthly payments on the Citizens Loan.  On the average, Cromwell AAA, pays approximately $18,750.00 each month – approximately, $10,500.00 toward the $2.17 Million Loan, $1,988.87 toward the $280K Loan, and $6,500.00 for the Swap Monthly Payment.

D.  **The Receivership Assets:**

As previously reported, the Receiver's investigation has revealed that at least $228,000.00 of Investors Funds have been diverted for the use or benefit of Ten Hillside, Cromwell AAA, and the Storage Business.  It appears that some funds have been used to pay the Citizens Bank loan and other funds were used to pay the real estate taxes on Cromwell Property.

E.  **The Cromwell Property:**

The Cromwell Property consists of 4.80 acres (or 209,088 square feet) located in an industrial area of the Town of Cromwell.  *See Citizens Bank's Appraisal Report*.  It is located approximately 15 miles south of Hartford, Connecticut, 30 miles north of New Haven, Connecticut, and 30 miles east of Waterbury, Connecticut.  The Town of Cromwell has a population of approximately 14,000 and 5,200 households, according to a 2010 U.S. Census.

According to the appraisal report commissioned by Citizens Bank in 2012 and prepared by Italia Lemp (the "Citizens Bank's Appraisal Report"):

The subject site is improved with five single-story self-storage buildings and a 600 square foot office.  The buildings were

The Honorable Arthur D. Spatt
United States District Court
for the Eastern District of New York
April 9, 2014
Page 5

constructed in 2004 and contained an estimated gross building area of 49,675 square feet and a rentable building area of 48,400 square feet. Presently, the subject contains a total of 382 storage units, 72 (18.9%) of which are climate controlled and an occupancy of approximately 76% based on square footage.

*See Citizens Bank's Appraisal Report.* The storage units range from a size of 5 x 10 to 10 x 30. Specifically, there are:

| Non-Climate Control Unit Size | # of Units |
|---|---|
| 5 x 10 | 49 |
| 5 x 15 | 15 |
| 10 x 10 | 75 |
| 10 x 15 | 91 |
| 10 x 20 | 58 |
| 10 x 25 | 9 |
| 10 x 30 | 13 |

| Climate Controlled Unit Size | |
|---|---|
| 5 x 5 | 7 |
| 5 x 10 | 33 |
| 10 x 10 | 19 |
| 10 x 15 | 8 |
| 10 x 20 | 5 |

Based on the market conditions as of August 8, 2012, the Cromwell Property was appraised to have an "As Is Value Estimate" of $2,025,000.00, "Prospective Valuation Upon Stabilization" of $2,375,000.00, and a "Liquidation Value" of $1,600,000.00. *See Citizens Bank's Appraisal Report.* Ten Hillside purchased the Cromwell Property on or about September 26, 2002 for the sum of $340,000.00, which, upon information and belief, was at that time an unimproved tract of land.

F.  **The Storage Business:**

The Storage Business is presently generating approximately $30,750.00 of monthly income from the rental of its storage units. This sum accounts for renting approximately 81.4% of its total 47,200 square feet of rental unit space. In 2013, its rental revenue was approximately $362,000.00 according to Cromwell AAA's Income Statement for 2013. Cromwell AAA's rental revenue from the Storage Business has

The Honorable Arthur D. Spatt
United States District Court
for the Eastern District of New York
April 9, 2014
Page 6

fluctuated in the range from approximately $322,000 to $362,000.00 over the past years. The income from the storage unit rentals is the primary source of revenue for the Storage Business. The following is rental revenue for the prior years based on Cromwell AAA's Income Statements:

| Year | Rental Revenue |
|---|---|
| 2013 | $361,620.45 |
| 2012 | $350,203.74 |
| 2011 | $323,156.53 |
| 2010 | $321,900.80 |
| 2009 | $348,887.54 |
| 2008 | $353,759.84 |
| 2007 | $352,255.64 |
| 2006 | $335,003.14 |

The bulk of the Storage Business' revenue is expended on the payments of the Citizens Loan. Payment of the Citizens Loan accounts for approximately 62% of the 2013 revenue expenditures. The remaining portion of the Storage Business' revenue is expended on the payments of real estate taxes, office and administrative expenses (i.e., telephones, postage, etc.) and maintenance of the Cromwell Property. Payment of the real estate taxes accounts for approximately 27% of the 2013 revenue expenditures. In 2013, approximately 4% of the 2013 revenue expenditures were for repairs and maintenance, 2.4% for telephone and utilities, 2% for insurance, 1.65% for bank and credit card fees, and 1.3% for advertising.

G. **Consensual Sale and Monitoring Agreement**

On March 13, 2014, Non-Party Brian F. Callahan, as the part owner of Cromwell and manager of the Storage Business, Citizens Bank, as the originator and holder of the Mortgage and the Citizens Loans, and the Receiver agreed upon the terms for the consensual sale of the Cromwell Property and the monitoring of the income, revenue and expenditures of Cromwell AAA and the Storage Business. It was represented to the Receiver that Defendant Brian R. Callahan, as the sole owner of the Ten Hillside, the owner of the Cromwell Property will cooperate and agree to the consensual sale.

A consensual sale of the Cromwell Property and the Storage Business will yield a higher return than a foreclosure sale, and increase the chances of a full recovery for Citizens Bank and the Receiver, and equity residue for Non-Party Brian F. Callahan. To reach an agreement for a consensual sale, there were several compromises. Citizens Bank agreed to waive any right it may have to pursue default interest on the Citizens Loans, to limit its right to repayment on the Citizens Loan to just principal and interest, to extend the Citizens Loan but at modified reduced interest rates during the period the

The Honorable Arthur D. Spatt
United States District Court
for the Eastern District of New York
April 9, 2014
Page 7

Cromwell Property and the Storage Business is being marketed, and to absorb the costs of the loan extension and modification. Both Citizens Bank and Non-Party Brian F. Callahan have acknowledged the Receiver's right to recover the sum of $228,000.00 from the Cromwell Property, and have agreed to allow the Receiver to recover $100,000 of the $228,000 before Citizens Bank and Non-Party Brian F. Callahan.  The Receiver has agreed to defer the collection and recovery of the $128,000 balance of the $228,000 sum until after Citizens Bank recovers it principal and interest, with the possibility that the sales proceeds from the sale of the Cromwell Property and the Storage Business ("Sales Proceeds") may be insufficient thereafter to recover the $128,000 balance.  Non-Party Brian F. Callahan agrees to continue to manage and operate the Cromwell Property and the Storage Business while they are being marketed for sale for a fee of $50,000.00, which is only recoverable if there are sufficient Sales Proceeds to pay same.

The terms for the consensual sale and the monitoring agreement, which will be memorialized in a written agreement to be executed, will include the following and will be subject to this Court's approval:

1. Marketing of the Cromwell Property and the Storage Business:

    a. Non-Party Brian F. Callahan will have the right to try to market and sell the Cromwell Property and the Storage Business without a broker for the first four initial months following the execution of the Consensual Sale Agreement, for a minimum asking price of $2.1 million dollars;

    b. If there are no offers to purchase Cromwell Property (with or without the Storage Business) during those four initial months, Non-Party Brian F. Callahan will contract with a third party broker to sell the Cromwell Property and the Storage Business for a minimum listing price of $2.7 Million dollars;

    c. The Broker must be approved by Citizens Bank and the Receiver;

    d. All purchase agreements must be approved by Citizens Bank and the Receiver; and

    e. Non-Party Brian F. Callahan will continue to manage the Storage Business while the Cromwell Property and Storage Business is being marketed for sale.

2. Sale Proceeds will be disbursed in the following order and priority:

    a. Payment of typical closing costs/taxes/brokerage fees;

The Honorable Arthur D. Spatt
United States District Court
for the Eastern District of New York
April 9, 2014
Page 8

   b.  Payment of $100,000.00 to the Receiver;

   c.  Payment of the outstanding Principal and (regular) Interest of the Citizens Loan, as extended and modified, from Sales Proceeds, and if the Sales Proceeds is insufficient then from the Citizens account (to be described below);

   d.  Then:

      i.  If the Sale Proceeds are sufficient to pay both Non-Party Brian F. Callahan's $50,000.00 Management Fee and the Receiver's $128,000.00 balance, then payment of said sums from and through the Sale Proceeds.

      ii.  If the Sale Proceeds are insufficient to cover both Non-Party Brian F. Callahan's $50,000.00 and the Receiver's $128,000.00 balance, then, (A) the Receiver takes first from the Citizens Bank account balance; and (B) Brian F. Callahan takes up to $50,000.00 from the Sale Proceeds first, and if there is any Sales Proceed remaining, the Receiver then takes up to $128,000.00 from the Sale Proceeds less the amount the Receiver has taken from the Citizens Bank account in part (A).

   e.  Payment of the balance of Sale Proceeds and Citizens Bank Account, if any, to Non-Party Brian F. Callahan and Defendant Brian R. Callahan, however, Defendant Brian R. Callahan's portion of Sales Proceeds and Citizens Bank Account are subject to approval and claims by the U.S. Securities and Exchange Commission, the U.S. Attorney's Office, the Asset Freeze in the Receivership Orders, and the Receivership Court.

3. Extension of the Citizens Loans:

   a.  Citizens Bank will extend the Citizens Loans for 12 months (with an option to extend it for an additional six month);

   b.  Citizens Bank will reduce the existing interest rate to Libor + 4.50% per annum;

   c.  The Bank waives any right or claim to be paid default interest from the Sales Proceeds;

   d.  Monthly payments to the Bank will resume based on the new interest rate terms; and

The Honorable Arthur D. Spatt
United States District Court
for the Eastern District of New York
April 9, 2014
Page 9

    e.    The Bank will absorb all refinance closing costs, including the Banks attorney fees.

4.    Cash Management and Monitoring Agreement:

    a.    The Cash Management and Monitoring Agreement will be signed at the same time as the Consensual Sale Agreement;

    b.    All cash receipts and expenses of the business will run through the Citizens Bank Account – under the control of the Receiver and the Bank as described in the Cash Management Agreement to be executed;

    c.    Regular reports will be made to the Receiver as described in the Cash Management Agreement;

    d.    A yearly and monthly budget will be completed as described in the Cash Management Agreement circulated on Wednesday, March 12, 2014;

    e.    Cromwell AAA will only use the Citizens Bank account and no other account as its operating account;

    f.    Cromwell AAA will close all its other bank accounts, including those accounts maintained at Bank of America and Liberty Bank.

    g.    The Receiver will request that the Receivership Court modify the Receivership Stay and Asset Freeze to unfreeze the Citizens Bank Account, which shall serve as the sole depository of all of Cromwell AAA and the Storage Business accounts receivable, revenues and income.

### Conclusion and Nunc Pro Tune Relief

The Receiver anticipates that the agreements for the consensual sale and the monitoring will be executed shortly after this report. Upon the execution of same, the Receiver will present the agreements to this Court for its approval.

On behalf of the Receiver, we also respectfully request that Your Honor extend, *nunc pro tunc*, the deadline, as provided in Your Honor's March 5, 2014 Order for the Receiver to submit this report, from April 4, 2014 to April 9, 2014. The extension is requested because the Receiver and his counsel were interrupted last week, and continue to be interrupted this week with issues with the office server and network.

The Honorable Arthur D. Spatt
United States District Court
for the Eastern District of New York
April 9, 2014
Page 10

The Receiver and his counsel are available to answer any inquiry this Court may have, and provide any additional information this Court may seek.

Thank you.

Respectfully yours,

Stewart W. Lee