UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

BRIAN RAYMOND CALLAHAN, ADAM MANSON, DISTINCTIVE INVESTMENTS LLC, and DISTINCTIVE VENTURES LLC;

Defendants,

SHERI MANSON CALLAHAN,

Relief Defendant

Case No. 12-CV-1065(ADS/AKT)

**DEFENDANT BRIAN R. CALLAHAN'S REPLY MEMORNADUM IN FURTHER SUPPORT OF HIS MOTION TO MODIFY THE PRELIMINARY INJUNCTIONS TO ORDER THE RECEIVER TO RELEASE FUNDS TO PAY ATTORNEY'S FEES AND DISBURSEMENTS**

Robert Knuts
Mark Cuccaro
SHER TREMONTE LLP
80 Broad St., Suite 1301
New York, New York 10004
Tel: 212.202.2600
Fax: 212.202.4156
E-mail: rknuts@shertremonte.com

*Attorneys for Defendant Brian R. Callahan*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................... ii

PRELIMINARY STATEMENT .................... 1

ARGUMENT .................... 3

I. CALLAHAN IS ENTITLED TO INDEMNIFICATION FROM DIVERSITY GLOBAL AND HORIZON MILLENNIUM .................... 3

II. NO SHOWING HAS BEEN MADE THAT THE FUNDS SOUGHT ARE TRACEABLE TO FRAUD .................... 5

III. THE AMOUNT OF FUNDS AVAILABLE FOR DISGORGEMENT IS NOT A FACTOR AND HAS BEEN GROSSLY UNDERSTATED BY THE SEC .................... 7

CONCLUSION .................... 8

# TABLE OF AUTHORITIES

Page

**Cases**

*Am. Brake Shoe & Foundry Co. v New York Rys. Co.*, 291 F 112, 126 (S.D.N.Y. 1922)....................4

*Eberhard v Marcu*, 530 F3d 122, 131 (2d Cir. 2008)....................4

*S.E.C. v. Coates*, No. 94-Civ.-5361, 1994 WL 455558 (S.D.N.Y. August 23, 1994)....................5

*S.E.C. v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 429 (S.D.N.Y. 2001)....................5

*S.E.C. v. FTC Capital Markets, Inc.*, No. 09-civ-4755, 2010 WL 2652405 (S.D.N.Y. Jun. 30, 2010)....................passim

*S.E.C. v. Schiffer*, No. 97-civ-5853, 1998 WL 307375 (S.D.N.Y. Jun. 11, 1998)....................6

*Xu Hong Bin v Heckmann Corp.*, CIV.A. 4802-CC, 2010 WL 187018 (Del Ch. Jan. 8, 2010)....................4

## PRELIMINARY STATEMENT

Defendant Brian Raymond Callahan ("Callahan"), submits this reply brief in response to opposition papers submitted by plaintiff Securities and Exchange Commission ("SEC") and Steven Weinberg, as Receiver (the "Receiver"), and in further support of his motion (the "Motion") for an Order directing the Receiver to release certain frozen assets for the payment of past and future legal fees and expenses incurred by Callahan in both this action (the "SEC Action") and the Related Criminal Action.

In his initial memorandum of law, Callahan made a showing that the Court should exercise its equitable authority to order the release of specified funds for Callahan's legal defense because (1) Callahan lacks unrestrained funds to pay his civil and criminal defense attorneys; (2) the fees sought are reasonable and necessary; and (3) the amounts sought represent only a small percentage of the funds that subject to the Preliminary Injunction and the Receivership.

In their opposition briefs, neither the SEC nor the Receiver refutes any of these points. Instead, the SEC and the Receiver present the following parallel arguments against Callahan's Motion: (1) that the funds in question do not belong to Callahan; (2) that no funds can be released for attorneys' fees because they are all tainted by fraud; (3) that no funds should be released because the assets available are allegedly inadequate to pay any possible disgorgement. None of these arguments has merit.

First, Callahan's request for an order directing the release of funds is not based on the premise that such funds "belong" to him, but rather that both Horizon Millennium Investments, L.P. ("Horizon Millennium") and Diversified Global Partners Ltd. ("Diversified Global") have a clearly documented obligation to indemnify him for legal matters such as the SEC Action and the Related Criminal Action. As a factual matter, the amount sought by the Motion is less than

the amount of the General Partner's ownership interests in certain BVI Funds and Callahan is the sole owner of that General Partner.

Second, the SEC incorrectly maintains that its allegation of fraud is sufficient to shift the burden of proof to Callahan to somehow prove his innocence before the Court can order Horizon Millennium and Diversified Global to make payments so that Callahan can obtain access to the means necessary to mount a proper defense. This is not the law – where criminal defense rights are implicated, the SEC must prove that the frozen assets sought for payment of attorney's fees are traceable to fraud, a showing that neither the SEC nor the Receiver have made.

Third, the amount of funds available for disgorgement is not a factor where, as here, there is a parallel criminal proceeding for which defense funds are sought. Even if it were, both the SEC and the Receiver grossly understate the assets available to compensate investors if any wrongdoing is ever proven, in an apparent joint effort to obscure the fact that the amount sought here is a miniscule fraction of the frozen property.

In essence, the opposition of both the SEC and the Receiver is based on the flawed premises that Callahan has already been found liable for violations of the federal securities laws and that the Receiver has been granted the authority to do whatever the Receiver deems best for "investors." Callahan requires the relief requested by the Motion in order to defend himself against very serious charges in the SEC Action and the Related Criminal Action. The purpose of the opposition papers filed by the SEC and the Receiver is to prevent Callahan from contesting the many overwrought, inaccurate allegations made by the SEC and the Receiver. The Court should grant the Motion so that Callahan has a meaningful opportunity to defend himself in these actions.

## ARGUMENT

### I.

### CALLAHAN IS ENTITLED TO INDEMNIFICATION FROM DIVERSITY GLOBAL AND HORIZON MILLENNIUM

The SEC spends much of its opposition arguing that Callahan has not proven ownership of the funds in question. This argument is both factually incorrect and beside the point – Callahan is seeking the release of the funds not on the basis of a direct ownership interest, but on the basis that both Horizon Millennium and Diversity Global owe him a duty of indemnification. This claim has a solid legal basis. Under the Sixth Amendment case law, a criminal defendant has an interest in funds that a third party is willing or obligated to furnish for his defense, which a court cannot lightly set aside. *See, e.g.*, *S.E.C. v. FTC Capital Markets, Inc.*, No. 09-civ-4755, 2010 WL 2652405, at *10 (S.D.N.Y. Jun. 30, 2010) (defendant has Sixth Amendment claim to frozen funds belonging to her employer to the extent that she had a valid expectation that her criminal defense costs would be covered from those funds); *United States v Stein*, 435 F. Supp. 2d 330, 335 (S.D.N.Y. 2006) (holding that government violated defendants' Fifth and Sixth Amendment rights by improperly interfering with their contractual right to indemnification from a third party).

Callahan's right to indemnification from both Horizon Millennium and Diversified Global is set forth in the documents already before this Court. Horizon Millennium agreed to indemnify its general partner Diversified Global, and each of its "principal[s], member[s], affiliate[s], or employee[s]," which indisputably includes Callahan, in connection with any legal action concerning Horizon Millennium. Affidavit of Robert Knuts, dated March 26, 2014 ("Knuts Aff."), Ex. E at 47. Similarly, Diversified Global agreed to indemnify Callahan for legal

fees and expenses incurred in connection with any legal action concerning Diversified Global and Horizon Millennium. Knuts Aff., Ex. F at § 15.

While the SEC argues that a right to indemnification has not been established because separate, independent indemnification agreements between the parties have not been produced, the right to indemnification is forth in the organizational documents and the SEC presents no argument that an additional contract indemnification is required. *Cf. Xu Hong Bin v Heckmann Corp.*, CIV.A. 4802-CC, 2010 WL 187018 (Del Ch. Jan. 8, 2010) (holding that articles of incorporation established enforceable indemnification right for corporate director).

The SEC also incorrectly argues that Callahan cannot receive indemnification because the Receiver, who has been granted *temporary* authority over Horizon Millennium and Diversified Global, will not allow these entities to fulfill their indemnification obligations. Similarly, the Receiver summarily states that he has unilaterally determined not to honor any indemnification obligation. These joint arguments are invalid because they overstate the authority of the Receiver. The Receiver was appointed by this Court to maintain the status quo and preserve the assets of the estate. *See, e.g., Eberhard v Marcu*, 530 F3d 122, 131 (2d Cir. 2008) (receivers are appointed "to help preserve the status quo . . . a primary purpose of appointing a receiver is to conserve the existing estate."). The Receiver does not have authority to decide unilaterally contract claims, especially those claims implicating Callahan's constitutional rights like those raised in the Motion. *See, e.g., Am. Brake Shoe & Foundry Co. v New York Rys. Co.*, 291 F. 112, 126 (S.D.N.Y. 1922) ("When any question of law arises, as in the case at bar (and this is an important point), it is not the receiver who decides the question, but the court"). Whether or not the funds sought here should be released for the payment of attorney's fees is for this Court, and not the Receiver, to decide.

## II.

## NO SHOWING HAS BEEN MADE THAT THE FUNDS SOUGHT ARE TRACEABLE TO FRAUD

The SEC improperly seeks to shift the burden of proof regarding whether the funds that would be used to honor the obligation to indemnify Callahan for legal fees and expenses are associated with fraud. It is not Callahan who must show that the funds are not tainted by fraud, but rather it is the SEC who must show that the funds are traceable to fraud. Where, as here, the defendant's constitutional rights are implicated due to a parallel criminal proceeding, the burden is on the SEC to show that funds sought for the payment of attorney's fees are traceable to fraud. *See, e.g., FTC Capital Markets,* 2010 WL 2652405, *7 (where frozen funds are necessary to pay attorney's fees in related criminal action, "the Commission is required to demonstrate that the frozen funds are traceable to fraud."); *S.E.C. v. Coates*, No. 94-Civ.-5361, 1994 WL 455558, at *3 (S.D.N.Y. August 23, 1994) (holding that where an asset freeze order "may hinder [defendant's] ability to obtain counsel of choice in the related criminal case" that the SEC must make "a showing that the frozen assets are traceable to fraud."). The SEC has not made its required showing.

Funds are not deemed traceable to fraud merely on the SEC's say-so. Nor are allegations that assets were associated with or controlled by an alleged fraudster sufficient to make the required showing. *See, e.g., FTC Capital Markets,* 2010 WL 2652405, *8 (rejecting SEC argument that funds were traceable to fraud solely because they were controlled by alleged fraudster). To the contrary, courts have lifted asset freezes to allow for the payment of attorney's fees even where there was an "inference" or "suspicion" of fraudulent conduct. *See S.E.C. v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 429 (S.D.N.Y. 2001) (lifting asset freeze to allow payment of attorney's fees despite the fact that "SEC ha[d] raised an inference of insider

trading" with respect to the funds); *S.E.C. v. Schiffer*, No. 97-civ-5853, 1998 WL 307375, at *7 (S.D.N.Y. Jun. 11, 1998) (releasing funds for payment of attorney's fees despite Court's assumption that "all of [defendant's] accounts and funds are of a suspect nature.").

The essence of the SEC's case against Callahan is that he improperly invested investor funds in a real estate venture in Long Island. However, Horizon Millennium's Offering Memorandum explicitly states that the fund will invest in a wide variety of assets, including, but not limited to, "common stocks, debt securities, asset-backed securities, currencies, futures and forwards contracts, options, convertible securities, warrants . . . distressed securities, convertible and non-convertible debt securities rated below investment grade, also known as junk bonds, or unrated securities which it has determined to be of comparable quality." Knuts Aff., Ex. E at 14. The memorandum goes on to state that "The Advisors retain the flexibility to invest in other types of securities, including, but not limited to, derivatives and private unregistered and unregulated investment holdings." *Id.* Accordingly, the mere fact that investments were made in a real estate project, as allowed under the Offering Memorandum, does not establish that investments in Horizon Millennium were the result of fraud. (To the extent that the authenticity of this offering memorandum is contested, we note that it was previously introduced as an exhibit and cited by the SEC itself, and that the SEC received it from the Financial Services Commission of the British Virgin Islands pursuant to request.) *See* Knuts Aff., Ex. E at ¶ 16.

As the SEC has presented no evidence, and relies solely on allegations that are contradicted by Horizon Millennium's operative documents, the SEC has failed to make its required showing that the assets sought are traceable to fraud.

## III.

## THE AMOUNT OF FUNDS AVAILABLE FOR DISGORGEMENT IS NOT A FACTOR AND HAS BEEN GROSSLY UNDERSTATED BY THE SEC

Finally, both the SEC and the Receiver argue that the funds should not be released because the assets under Receivership are inadequate to satisfy a potential disgorgement that may be later ordered. This is both false and irrelevant. In a purely civil case, the amount of money available to satisfy a disgorgement order is relevant to whether frozen funds should be released to pay for attorney's fees. However, when the funds are being sought to provide for a criminal defense, the funds may be released regardless of whether sufficient funds are available for disgorgement. *See FTC Capital Markets,* 2010 WL 2652405, at *7 (releasing funds to pay for criminal defense fees despite lack of funds to satisfy potential disgorgement order and noting difference between criminal and civil cases).

Furthermore, the SEC's and the Receiver's argument that there exists a huge shortfall is, at best, misleading. This contention is premised on the false assumption that there is a $58 million shortfall between the funds invested by alleged fraud victims and the assets available to compensate them. This calculation is wrong because it assumes that the only assets available for disgorgement are $6.4 million recovered by the Receiver from the investment funds. *See* SEC Brief Opp. at 2. The SEC willfully ignores the value of the real estate in Long Island at the center of this case, which the Department of Justice has recently represented in court is likely to be worth at least $60 million and that the vast majority of the proceeds from a sale of that real estate will be returned to investors in the BVI partnerships. When all of the relevant assets are considered, the amount that Callahan is seeking to be released represents significantly less than 1% of the total funds available to satisfy a hypothetical disgorgement order.

**CONCLUSION**

For the foregoing reasons, as well as those provided in the initial motion papers, Defendant Callahan respectfully requests that this Court issue an order (i) lifting in part the asset freeze on Horizon Millennium and directing the Receiver to release funds in the amount of $480,261.22; (ii) lifting the asset freeze on the $26,305.92 of Callahan's funds held in escrow at Park & Jensen, and allowing these funds to be applied towards Callahan's outstanding fees at that firm; (iii) allowing the unfrozen Horizon Millennium funds to be applied towards the remainder of the outstanding fees at Park & Jensen and Herskovits PLLC; (iv) ordering that the remainder of the unfrozen Horizon Millennium assets to be placed into the escrow accounts at Sher Tremonte LLP and Michael Cornacchia for use towards Callahan's future legal fees in this action and the related criminal proceeding; (v) such other relief as the Court deems appropriate.

In the alternative, if the motion to lift partially the asset freeze is denied, then Sher Tremonte LLP respectfully requests an order granting its request to withdraw as counsel for Callahan in this action, due to his inability to pay for further representation. No opposition has been filed to the contingent motion for withdrawal.

Dated: New York, New York
April 18, 2014

SHER TREMONTE LLP

By /s/ Robert Knuts
Robert Knuts
Mark Cuccaro

80 Broad St., Suite 1301
New York, New York 10004
Tel: 212.202.2600
Fax: 212.202.4156
E-mail: rknuts@shertremonte.com

*Attorneys for Defendant Brian R. Callahan*