**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,                  **MEMORANDUM OF**
                                                               **DECISION & ORDER**
                -against-                  12–CV–1065 (ADS)(AYS)

BRIAN RAYMOND CALLAHAN, ADAM
MANSON, DISTINCTIVE INVESTMENTS
LLC, AND DISTINCTIVE VENTURES LLC,

                    Defendants,

SHERI MANSON CALLAHAN,

                    Relief Defendant.
----------------------------------------------------------X
**APPEARANCES:**

**Gottesman, Wolgel, Secunda, Malamy & Flynn, P.C.**
*Attorneys for the Receiver*
11 Hanover Square, 4th Floor
New York, NY 10005
       By: Richard B. Demas, Esq.
            Stewart W. Lee, Esq.
            Steven Weinberg, Esq., Of Counsel


**United States Securities and Exchange Commission**
100 F Street, NE
Washington, DC 20549
       By: Dean M. Conway, Esq., Trial Counsel

**Sher Tremonte LLP**
*Attorneys for the Defendant Brian Callahan and Relief Defendant Sheri Callahan*
80 Broad Street
Suite 1301
New York, NY 10004
       By: Mark Elliot Cuccaro, Esq., Of Counsel

**Law Offices of Andrew J. Frisch**
*Attorneys for the Defendants Adam Manson, Distinctive Investments LLC, and Distinctive Ventures LLC*
40 Fulton Street - 23rd Floor
New York, NY 10038
	By: Andrew J. Frisch, Esq., Of Counsel

**Katherine Kern *Pro Se* Claimant**
2202 Cypress Hollow Court
Safety Harbor, FL 34695

**Lonnie Kocontes *Pro Se* Claimant**
Orange County Correctional Facility
501 City Drive So.
Orange, CA 92868

**Brian Spears LLC**
*Attorneys for the Interested Party Brian F. Callahan*
2425 Post Road, Suite 203
Southport, CT 06890
	By: Brian Edward Spears, Esq., Of Counsel

**United States Attorneys' Office**
*Attorneys for the Intervenor United States Attorney for the Eastern District of New York*
271 Cadman Plaza East
Brooklyn, NY 11201
	By: David Carey Woll, Esq., Assistant U.S. Attorney
	    Karin K. Orenstein, Esq., Assistant U.S. Attorney

**LeClair Ryan, P.C.**
*Attorneys for the Intervenor RBS Citizens, National Association*
830 Third Avenue, 5th Floor
New York, NY 10022
	By: Michael Terrance Conway, Esq., Of Counsel

**SPATT, District Judge**.

The Claimants Distinctive Investments LLC ("Distinctive Investments") and Distinctive Ventures LLC ("Distinctive Ventures" and collectively, the "Distinctive Entities") appeal from a July 21, 2014 notice of determination (the "Notice of Determination") by Steven Weinberger (the "Receiver") denying their claim for $390,496.93.

For the reasons set forth below, the Court affirms the Notice of Determination by the Receiver and dismisses the claims by Distinctive Entities.

## I.  BACKGROUND

This case involves three parallel actions: (i) U.S.A. v. Callahan and Manson, 13-cr-453, a criminal action against Adam Manson ("Manson") and Brian Callahan ("Callahan") (the "Criminal Action"); (ii) United States v. The Real Property Located at 272 Old Montauk Highway, 12-cv-1880, a civil forfeiture action initiated by the United States against certain properties associated with Manson and Callahan (the "Forfeiture Action"); and (iii) the present action initiated by the Securities and Exchange Commission ("SEC") alleged disgorgement of ill-gotten gains, and civil penalties against Manson, Callahan, and the funds that they operated.

As these parallel actions are relevant to the disposition of the present claim, the Court will now provide a brief overview of each action.

**A. The Criminal Action**

Manson owned and managed the Claimants Distinctive Investments and Distinctive Ventures, two real-estate corporations. (U.S.A. v. Callahan and Manson, 13-cr-453, July 31, 2013 Indictment [hereinafter "Indictment"] at ¶ 8.) Distinctive Investments held one hundred percent of the equity ownership in Distinctive Ventures. (Id. at ¶ 9.)

In January 2007, Manson and Callahan, Manson's brother-in-law, through Distinctive Ventures purchased all of the shares of the Panoramic View Oceanfront Resort (the "Panoramic View"), a cooperative development located at 272 Old Montauk Highway in Montauk, New York. (Id. at ¶¶ 10, 12.) To obtain financing for the transaction, Manson, on behalf of Distinctive Ventures, executed promissory notes to an unspecified lender. (Id. at ¶ 13.) Under the terms of the notes, Distinctive Ventures agreed to make monthly payments at a 10% rate of

interest and to apply all the proceeds of sales of the cooperative units at Panoramic View toward its outstanding debt. (Id. at ¶ 13.) The promissory notes had a maturity date in April 2009. (Id.)

On July 31, 2013, the United States filed a twenty-four count criminal indictment against Callahan and Manson in the Criminal Action for (i) securities fraud; (ii) conspiracy to commit securities fraud; (iii) wire fraud; (iv) conspiracy to commit wire fraud; (v) and aggravated identify theft. (See id. at ¶¶ 46–72.).

The indictment alleges that Manson and Callahan engaged in multiple fraudulent schemes to obtain money to pay their debt on the Panoramic View project, including: (i) diverting investor money from funds operated by Callahan to pay for fees associated with the loans; (ii) operating investor funds as a Ponzi Scheme whereby Callahan would use money from new investors to pay redemptions to existing investors; (iii) providing false documents and sham promissory notes to an independent auditor to inflate the value of the funds operated by Callahan; (iv) making false statements to investors to raise additional money to pay the loan expenses associated with Panoramic View; and (v) providing false documents and making false statements in order to modify the repayment schedule on the promissory notes issued by Distinctive Ventures to the lender on the Panoramic View transaction. (Id. at ¶¶ 14–56.)

As is described below, on April 17, 2012, the United States commenced an *in rem* action seeking forfeiture pursuant to 18 U.S.C. § 981 of certain properties owned by Callahan, Manson, and their corporations.

On April 28, 2014, Callahan withdrew his plea of not guilty and pled guilty to one count of securities fraud and one count of wire fraud. (Dkt. No. 61.) On April 29, 2014, the Court accepted Callahan's guilty plea. (Dkt. No. 62.)

On May 12, 2014, Manson withdrew his initial plea of not guilty and pled guilty to one count of conspiracy to commit securities fraud. (Dkt. No. 67.) On May 13, 2014, the Court accepted Manson's plea.

The sentencings of Callahan and Manson are presently scheduled for May 29, 2015. (Dkt. No. 88.)

**B. The Forfeiture Action**

As noted above, on April 17, 2012, the United States commenced a separate *in rem* action seeking forfeiture pursuant to 18 U.S.C. § 981 of (a) the real property located at the Panoramic View; (b) all shares of the cooperative corporation in the Panoramic View held in the name of the Distinctive Ventures; (c) all shares of the cooperative corporation and the proprietary lease of Salt Sea #4, a cooperative unit at the Panoramic View, then-held by Callahan and Sheri Callahan (collectively, the "Callahans"); and (d) the real property located in Old Westbury New York. (Verified Compl., 12-cv-1880.)

According to the verified complaint in the Forfeiture Action, on March 21, 2011, Callahan and Sheri Callahan acquired cooperative shares and the proprietary lease for Salt Sea #4 for a purchase price of $3,350,000. (Id. at ¶ 82.) Salt Sea #4 is a luxury apartment located in the Panoramic View. (See id.) In order to acquire Salt Sea #4, the Callahans obtained a mortgage from Gibraltar Private Bank ("Gibraltar") in the amount of $2.3 million. (Id. at ¶ 85.) Allegedly, the Callahans improperly used $450,000 from investors in the funds operated by Callahan to make the down payment to obtain the financing from Gibraltar to purchase Salt Sea #4. (Id. at ¶¶ 85–91.)

On July 30, 2014, the Callahans transferred their title to Salt Sea #4 to the Distinctive Entities. (Lee Decl., Ex. H, at 2.)

**C. The Instant Action**

On March 5, 2012, the SEC commenced this action against the Defendants Callahan and two investment funds that he managed, Horizon Global Advisory LTD. ("HGA") and Horizon Global Advisors LLC ("HGA LLC"). The SEC alleged that Callahan and his funds misappropriated investors' assets in violation of section 17 of the Securities Act, 15 U.S.C. § 77; section 10(b) of the Exchange Act, 15 U.S.C. § 78; and section 206 of the Advisers Act, 15 U.S.C. § 80. (Dkt. No. 1.)

On May 31, 2012, the SEC filed an amended complaint to include as Defendants: five offshore funds operated by Callahan, Manson, Manson's companies, Distinctive Ventures, LLC and Distinctive Investments, LLC, and Sheri Callahan, Callahan's spouse, as a relief Defendant. (Dkt. No. 28.)

**i. The Receivership Orders**

On March 27, 2012, the Court issued a preliminary injunction (the "Preliminary Injunction") freezing the assets of HGA, and HGA LLC (collectively, the "Receivership Funds") and appointing Weinberg as the Receiver for these assets. (Prelim. Inj., Dkt. No. 22, at ¶¶ 1–3.)

In that regard, the Preliminary Injunction "restrained and enjoined" "all persons and entities with control over any Receivership Assets . . . from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets." (Id. at ¶ 3.) It defines "Receivership Assets" as "all assets titled in the name of the Receivership Funds." (Id.) It further provides a list of duties for the Receiver, which include, among others, determining the "nature, locations, and value of . . . Receivership Property" and taking "custody, control and possession of all Receivership Property." (Id. at ¶ 7.) The order defines "Receivership Property" as "property interests of the Receivership Funds , . . .

which the Receivership Funds . . . have a beneficial interest in, or control directly or indirectly."
(Id.)

Pursuant to a stipulation, so-ordered by the Court on June 4, 2012, the assets of an additional five offshore funds operated by Callahan were placed into receivership. (Dkt. No. 33.) These five funds include: (i) Diversified Global Investment (BVI) L.P.; (ii) the Masters Global Fund, L.P.; (iii) Fiduciary Select Income Fund L.P.; (iv) Horizon Millennium Investments, L,P.; and (v) Pangea Offshore High Yield Portfolio, LLC (together with HGA and HGA LLC, the "Callahan Funds"). (See id.)

### ii. The Claims Process

On February 20, 2014, the Court issued an order (the "Claims Order") establishing the procedures for submitting and determining potential claims against the assets in the Receivership. In that regard, the Claims Order defines a "potential claim" as:

> (a) "a right to payments . . . against one or more of the Receivership Entities or the Receivership Estate";
> (b) "a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment";
> (c) "a right to a distribution from one or more of the Receivership Entities[.]"

(Claims Order, Dkt. No. 186, at ¶ 3.)

Potential claimants must submit a "Proof of Claim Form," which includes copies of all documents "evidencing the amount and basis of the [c]laim." (Id. at ¶ 6(d).) The Receiver has the right to reject any "Proof of Claim," which is, among other things, "submitted without sufficient supporting documentation." (Id. at ¶ 6(f).)

In evaluating potential claims, the Receiver is required to "take into account notice or knowledge of the alleged fraud attributable to each Potential Claimant that has been developed in the discovery process, as well as the actions taken or non-actions, if any, by such Potential

7

Claimant after acquiring such notice or knowledge." (Id. ¶ 6(k).) Moreover, the Receiver can "exercise discretion to recommend adjustment or non-payment of a Potential Claim on equitable or any other applicable grounds." (Id.)

The Claims Order also establishes a process for determining the claims and objecting to the Receivership's determination: (i) "[t]he Receiver shall provide a written Notice of Determination . . . to each [p]otential [c]laimant," which includes "a statement setting forth the reasons for denying . . . the [p]otential [c]laim"; and (ii) any potential claimants who object to the Notice of Determination, "shall first serve, but not file with the Court, a written objection . . . to the Receiver's determination." (Claims Order at ¶¶ 6(m), (n)).

If "the Receiver and the [p]otential [c]laimant are unable to resolve an [o]bjection served upon the Receiver within ninety . . . days of the Receiver's Notice of Determination," a potential claimant can file an objection to a Notice of Determination with the Court. (Id. at ¶ 6(p).)

### iii. The Present Claim

On April 21, 2014, the Distinctive Entities filed a Proof Claim for $390,495.93. (Lee Decl., Ex. B, at 6.) They described the grounds for their potential claim as follows: "Payments to Gibraltar Private Bank on mortgage held on Salt Sea #4 made to preserve the asset for [the] benefit of [the] receivership estate." (Id. at 7.) When asked on the claim form whether they were a "director, officer, partner, shareholder, lender to or capital contributor to any of the Receivership Entities or Brian R. Callahan," the Distinctive Entities answered, "Yes." (Id. at 8.)

As supporting documentation, they attached (i) a chart purporting to identify the date and sum or each loan payment made by the Distinctive Entities to Gibraltar; and (ii) redacted bank statements allegedly reflecting mortgage payments made by the Distinctive Entities to Gibraltar. (See id.)

8

On July 21, 2014, the Receiver issued a Notice of Determination denying the claim submitted by the Distinctive Entities. (Lee Decl., Ex. C.) The Receiver stated that it denied the claim because:

> (1) there is no evidence that any Receivership Entity has any liability to the Distinctive Entities and the Receiver has no knowledge that any Receivership Entity has any liability for the mortgage for Salt Sea #4;
> (2) the Distinctive Entities fail to provide the basis for the specific claim against the Receivership Entities; and
> (3) the Distinctive Entities fail to provide substantiating or supporting documentation evidencing the basis for its claim.

(Id. at 1–2.)

On August 20, 2014, the Distinctive Entities filed a timely written objection to the Notice of Determination. (Lee Decl., Ex. D.) In their objections, the Distinctive Entities asserted that pursuant to the Preliminary Injunction, they were required to make the mortgage payments to Gibraltar in order to preserve the Receivership interest in Salt Sea #4. (Id. at 1.) Since those payments allegedly benefited the Receivership, Distinctive Entities contended that they are entitled to recoup those payments from the Receivership Estate. (Id. at 3.) Moreover, they asserted an unjust enrichment claim against the Receiver arguing that the principles of "equity and good conscience" require restitution of the mortgage payments to the Distinctive Entities. (Id. at 3–4.)

On October 23, 2014, the Receiver issued a decision affirming the Notice of Determination. He based his determination on his findings that: (i) Salt Sea #4 is not a Receivership Property subject to the Preliminary Injunction; (ii) there is no evidence to suggest that the Callahans did not improperly use money from investors in the Callahan Funds to make the monthly mortgage payments that they seek to recoup from the Receivership Estate; (iii) the Distinctive Entities did not provide any basis to support their position that they had an obligation

9

to pay the mortgage on Salt Sea #4; and (iv) the Distinctive Entities did not provide adequate supporting documentation evidencing their claim. (Lee Decl., Ex. E, at 1–3.)

On November 18, 2014, the Distinctive Entities filed a motion in this Court appealing the Notice of Determination denying the claim.

## II. DISCUSSION

### A. As to the Notice of Determination

**1. Standard of Review**

As an initial matter, the Court must determine the appropriate standard of review to apply to the Notice of Determination by the Receiver. A standard of review is not specified in the Notice of Determination, nor has the Court found any cases on point with respect to the appropriate standard of review for a Receiver in actions such as this.

However, the Court finds that Receiver's role to be analogous to the role of a court-appointed master. Among other things, under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 53(a), a master can be appointed to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Pursuant to Fed. R. Civ. P. 53(f), a court reviews the factual findings and legal conclusions of a court-appointed master *de novo*. See, e.g., Paone v. Microsoft Corp., 771 F. Supp. 2d 224, 229 (E.D.N.Y. 2011) ("[T]he [c]ourt reviews the Special Master's recommendations *de novo*"); Doctor's Associates, Inc. v. QIP Holders LLC, No. 3:06CV01710 (VLB), 2009 WL 1668573, at *2 (D. Conn. June 15, 2009) ("Pursuant to Fed. R. Civ. P. 53(f)(3) and 53(f)(4), the [c]ourt now decides, *de novo*, all findings of fact of the master as well as conclusions of law pursuant to the objections filed by the parties."). *De Novo* means without deference. See Zervos v. Verizon New York, Inc., 252 F.3d 163, 168 (2d Cir. 2001) ("[O]ur

review is independent and plenary; as the Latin term suggests, we look at the matter anew, as though it had come to the courts for the first time."); see also Black's Law Dictionary 435 (6th ed. 1990) (defining "de novo" as "[a]new" and "afresh").

As the Court finds that the Court-appointed Receiver in this case to be analogous to a Court-appointed master, the Court will apply a *de novo* standard to its review of the Notice of Determination.

### 2. As to the Objections by the Distinctive Entities

As noted above, the Receiver denied the claim by the Distinctive Entities because it found: (i) Salt Sea #4 is not "Receivership Property" and thus it cannot form the basis of a claim against the Receivership Estate; (ii) there is "no evidence that any Receivership has any liability to the Distinctive Entities"; (iii) Manson and the Distinctive Entities were aware of and participated in the schemes to defraud investors of the Callahan Funds and creditors of the Distinctive Entities; and (iv) the Distinctive Entities did not provide adequate supporting documentation evidencing their claims. (Lee Decl., Ex. E, at 1–3.)

The Distinctive Entities object to the Notice of Determination because (i) they contend that Salt Sea #4 is "Receivership Property" and thus can form the basis of a claim against the Receivership Estate; (ii) the Preliminary Injunction requires them to make mortgage payments on Salt Sea #4 to preserve the asset, and therefore, they are entitled to reimbursement for those payments; and (iii) the mortgage payments ultimately benefited the Receivership Estate and therefore under the equitable principles of unjust enrichment they should get restitution for their payments. (Distinctive Entities Reply Mem. of Law at 1–3.) The Court will address each objection in turn.

.

With respect to the first objection, the Distinctive Entities assert that the Receiver erred in determining that Sea Salt #4 is not "Receivership Property." (Lee Decl. Ex. D, at 3.) They allege that Salt Sea #4 is "Receivership Property" because it is listed as one of the assets subject to the asset freeze in Exhibit A to the Preliminary Injunction. (Lee Decl. Ex. D, at 3.) Thus, they contend that they can make a claim for the payments that they made to Gibraltar under its mortgage on Salt Sea #4.

The Receiver responds that under the Preliminary Injunction, the property subject to the asset freeze is distinct from the property placed into Receivership. It notes that the Preliminary Injunction defines "Receivership Property" as "all property interests of the Receivership Defendants." (Preliminary Injunction Order, Dkt. No. 22, at 7.) The Receivership Defendants are HGA, HGA LLC, Diversified Global Investment (BVI) L.P.; the Masters Global Fund, L.P.; Fiduciary Select Income Fund L.P.; Horizon Millennium Investments, L,P.; and Pangea Offshore High Yield Portfolio, LLC. (Id.; see also June 4, 2012 Stipulation, Dkt. No. 33, at 3.) The Callahans originally held title to Salt Sea #4 but transferred their interest to the Distinctive Entities. (Lee Decl., Ex. H, at 2.) As the Callahan and the Distinctive Entities — not the seven funds listed above — have title to and are listed on the mortgage of Salt Sea #4, the Receiver contends that Salt Sea #4 is not "Receivership Property," and thus, cannot form the basis of a claim against the Receivership Estate. (Lee Decl., Ex. E, at 2.)

The Court need to resolve this question because it finds that even if Salt Sea #4 is "Receivership Property," the Distinctive Entities have not offered any basis to believe that they are entitled to reimbursement for the mortgage payments that they made to Gibraltar.

With respect to the second objection, the Distinctive Entities contend that under the Preliminary Injunction they are required to make mortgage payments on Salt Sea #4. (Lee Decl., Ex. D, at 1–2.) In that regard, they point to Section VII of the Preliminary Injunction, which provides, in relevant part, that the Receivership Defendants are "restrained and enjoined from directly or indirectly taking any action . . , which would . . . [d]issipate or otherwise diminish the value of any Receivership Property," including "attempting to . . . revoke or accelerate (the due date), of any lease, loan, [or] mortgage." (Preliminary Injunction at ¶ 29(C).) The Distinctive Entities claim they would have defaulted under the mortgage if they had failed to make their monthly mortgage payments to Gibraltar. (Lee Decl., Ex. A, at 2.) As such, they contend that Section VII of the Preliminary Injury required them to make the monthly mortgage payments in order to preserve the Receivership's interest in Salt Sea #4. (Id.)

While it may be that the Distinctive Entities were required under the Preliminary Injunction to make payments to Gibraltar Bank, there is no provision in the Preliminary Injunction or the Claims Order which states that they are entitled to reimbursement for making such payments. Indeed, quite the opposite appears to be true.

The Claims Order specifically requires the Receiver to "tak[e] into account the level of notice or knowledge of the alleged fraud attributable to each Potential Claimant that has been developed in the discovery process[.]" (Lee Decl., Ex. A, at ¶ 5(k).) Further, the Receiver can recommend "non-payment of a Potential Claim on equitable or any other applicable ground." (Id.) Thus, the Receiver has the authority under the Claims Order to deny a claim by an individual or entity that was involved in the scheme to defraud investors of the Callahan Funds and creditors of the Distinctive Entities.

13

Here, Distinctive Entities issued the promissory notes to the lender in order to obtain financing to purchase the Panoramic View. (Indictment at ¶ 12.) Callahan pled guilty to one count of securities fraud and one count of wire fraud in the Criminal Action based on allegations that he improperly diverted money from investors in the Callahan funds to the Distinctive Entities for the purpose of paying their debt on the Panoramic View. (Id. at ¶ 17.) Manson pled guilty to one count of conspiracy to commit securities fraud for his role in helping Callahan cover up his Ponzi Scheme by, among other things, providing false documents to an independent auditor and the lender to whom the Distinctive Entities issued promissory notes. (Id. at ¶ 26.) Based on this evidence, it is clear that Manson and his companies, the Distinctive Entities, played a central role in defrauding the investors of the Callahan Funds. Thus, the Court finds that the Receiver had the authority to and did properly deny the claim by Distinctive Entities.

With respect to the third objection, the Distinctive Entities assert that they should receive reimbursement for the mortgage payments it made to Gibraltar based on the principles of unjust enrichment. Under New York law, the elements of unjust enrichment are: "'(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" Legurnic v. Ciccone, No. 09-CV-1436 ADS AKT, 2014 WL 6674593, at *7 (E.D.N.Y. Nov. 25, 2014) (Spatt, J) (quoting Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004)). The Court finds the unjust enrichment claim by the Distinctive Entities without merit for three reasons.

First, it is not clear that the Receivership Estate received a benefit from the mortgage payments made by Distinctive Entities on Salt Sea #4. The Distinctive Entities are the owners of Salt Sea #4, and they, not the Receivership Estate, are the debtors on the mortgage held by Gibraltar Bank. Thus, as the Receiver correctly points out, it is the Distinctive Entities, not the

Receivership Estate, that directly benefitted from the monthly payments that they made to Gibraltar because those payments decreased the principal and interest owed by Distinctive Entities under the mortgage. See Legurnic, 2014 WL 6674593 ("[I]f the [p]laintiff fails to show that the [d]efendant received a benefit, there can be no liability for unjust enrichment.") (citing 30 Williston on Contracts § 77:121 (4th ed.)).

Second, even if the mortgage payments did indirectly benefit the Receivership Estate, "equity and good conscience" would not "militate against" the Receiver retaining the benefit because the Callahans obtained the $455,600 down payment on Salt Sea #4 by improperly using investors' money from the Callahan Funds. (Lentz Decl. at ¶ 21.) Thus, if anything, "equity and good conscience" dictates that the Receivership Estate, which is for the benefit of the defrauded creditors and investors of the Callahan Funds, retain the $390,496.93 in mortgage payments made by the Distinctive Entities.

Third, "New York courts have long applied the maxim that one 'who comes to equity must come with clean hands.'" PenneCom B.V. v. Merrill Lynch & Co., 372 F.3d 488, 493 (2d Cir. 2004) (quoting Amarant v. D'Antonio, 197 A.D.2d 432, 434, 602 N.Y.S.2d 837, 838 (N.Y. App. Div. 1993)). Under this doctrine, a party is estopped from making an equitable claim of restitution where that party "has committed some unconscionable act that is 'directly related to the subject matter in litigation' and has injured the party attempting to invoke the doctrine." Id. (quoting Weiss v. Mayflower Doughnut Corp., 135 N.E.2d 208, 210, 1 N.Y.2d 310, 316, 152 N.Y.S.2d 471, 474 (1956)). Here, as described above, Manson and the Distinctive Entities helped Callahan defraud his investors for whom the Receivership Estate is intended to benefit. Under such circumstances, the doctrine of unclean hands precludes the Distinctive Entities from raising any unjust enrichment arguments against the Receivership Estate. See Aris-Isotoner

15

Gloves, Inc. v. Berkshire Fashions, Inc., 792 F. Supp. 969, 972 (S.D.N.Y. 1992) ("'No court of equity ought to be required to listen to a man whose very presence suggests danger to the administration of justice and whose past conduct affecting the matter in litigation would cast doubt upon the ability of the court to ascertain from him the truth with respect thereto.'") (quoting Mas v. Coca–Cola Co., 163 F.2d 505, 511 (4th Cir. 1947)).

**B. As to the Requests by the Receiver**

In his memorandum in response to the appeal by the Distinctive Entities, the Receiver requests that in addition to affirming the Notice of Determination, the Court also (i) order an accounting of the Montauk Property from February 28, 2014 to the present; and (ii) find that the Distinctive Entities have caused unnecessary delay and needlessly increased the costs of litigation at the expense of the Receivership Estate and defrauded investors. (Receivership Reply Mem. of Law at 3–4.)

The Receiver does not provide any basis in law, nor or in the Claims Order, that the Distinctive Entities appeal has entitled him to such relief. Moreover, although the Court finds the claim filed by the Distinctive Entities to be without merit, it does not find it to be frivolous given that it was at least arguably supported by the language of the Preliminary Injunction. As such, the Court denies both of the Receiver's requests.

### III. CONCLUSION

For the foregoing reasons, the Notice of Determination is affirmed and the claims by the Distinctive Entities are denied.

**SO ORDERED.**
Dated: Central Islip, New York
May 2, 2015

                                                    */s/ Arthur D. Spatt*
                                                 ARTHUR D. SPATT
                                           United States District Judge