**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,                **MEMORANDUM OF
                                                    DECISION & ORDER**
             -against-                  12–CV–1065 (ADS)(AYS)

BRIAN RAYMOND CALLAHAN, ADAM
MANSON, DISTINCTIVE INVESTMENTS
LLC, and DISTINCTIVE VENTURES LLC,

                Defendants,

SHERI MANSON CALLAHAN,

                Relief Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Gottesman, Wolgel, Secunda, Malamy & Flynn, P.C.**
*Attorneys for the Receiver Steven Weinberg*
11 Hanover Square, 4th Floor
New York, NY 10005
    By: Richard B. Demas, Esq.
        Stewart W. Lee, Esq.
        Kelsey Bilodeau, Esq.
        Steven Weinberg, Esq., Of Counsel


**United States Securities and Exchange Commission**
*Attorneys for the Plaintiff*
100 F Street, NE
Washington, DC 20549
    By: Dean M. Conway, Esq., Assistant Chief Litigation Counsel

**Sher Tremonte LLP**
*Attorney for the Relief Defendant Sheri Callahan*
41 Madison Avenue, 41st Floor
11 Elm Place
New York, NY 10010
    By: Michael Tremonte, Esq., Of Counsel

Brian Callahan, Pro Se
3 Windsor Drive
Old Westbury, New York 11568

**Law Offices of Andrew J. Frisch**
*Attorneys for the Defendants Adam Manson, Distinctive Investments LLC, and Distinctive Ventures LLC*
40 Fulton Street - 23rd Floor
New York, NY 10038
    By: Andrew J. Frisch, Esq., Of Counsel


**Johnson & Bell, Ltd.**
*Attorneys for the Objector Dr. Luis Pernia*
33 W Monroe St, Ste 2700
Chicago, IL 60603
    By: Joseph Renato Marconi, Esq., Of Counsel

**SPATT, District Judge**.

Presently before the Court are objections to a March 10, 2015 Notice of Determination (the "Notice of Determination") by the Receiver Steven Weinberg (the "Receiver") partially denying a claim submitted by Dr. Luis Pernia ("Pernia") on behalf of himself, the Pernia Family Trust (the "Trust"), and Pernia Family LLC ("Pernia Family" and collectively, the "Claimants").

For the reasons set forth below, the Claimants' objections are denied in their entirety, and the Notice of Determination is affirmed.

## I. BACKGROUND

The Court refers to its June 9, 2016 memorandum of decision and order for an exhaustive account of the relevant procedural history and provisions of the March 27, 2012 Preliminary Injunction Order establishing a Receivership (the "Receivership Order"); and the February 20, 2014 Order establishing the deadline and procedures for the filing of claims against "Receivership Entities" (the "Claims Order"). (See the June 9, 2016 Order, Dkt. No. 383 [the "June 9, 2016 Order"], at 1–16.)

The Court will now provide a brief overview of the Claimants' objections.

On April 19, 2014, Pernia filed a claim on behalf of the Claimants against the Receivership Estate for a total of $2,876,101.19. (See Jan. 26, 2016 Weinberg Decl., Dkt. No. 377 [the "Weinberg Decl."], Ex. B.)

On June 6, 2014 and November 3, 2014, respectively, the Receiver sent Pernia requests for additional information regarding his potential claim. (See id., Exs. C, D.)

On March 10, 2015, the Receiver issued a Notice of Determination in which it partially approved Pernia's $2,876,101.19 claim in the amount of $1,219,417.69 and partially denied his claim in the amount of $1,656,683.50 because it found that "this portion of the claim consists of funds which were not invested in a Receivership Entity." (Id., Ex. E, at 1.)

On April 9, 2015, the Claimants served on the Receiver objections to the Notice of Determination in which they asserted that the Receiver failed to give them credit for $1,284,623.83 of their investment in supposedly Callahan-controlled funds. (See July 13, 2015 Marconi Decl., Dkt. No. 354 [the "Marconi Decl."], Ex. C, at 2.)

In a May 26, 2015 letter to the Claimants' counsel, the Receiver affirmed its Notice of Determination because, among other things, the Claimants' alleged loss of $1,284,623.83 was based on investments in entities not covered by the Receivership Order or the Claims Order. (See Weinberg Decl., Ex. F.)

In a June 26, 2015 letter to the Receiver, the Claimants' counsel responded by stating, in relevant part, "Ultimately, we understand the Receiver's explanation for why it will not recognize claims based on Westminster fund investments; we do not understand the rationale for that failure to recognize them." (See id., Ex. G.)

3

In a July 7, 2015 letter to the Claimants' counsel, the Receiver adhered to the reasoning in its Notice of Determination and rejected the Claimants' objections. (See id., Ex. H.)

On July 10, 2015, the Court received in hard copy the Claimants' objections to the Notice of Determination. (See July 13, 2015 Notice, Dkt. No. 354.) However, the Claimants did not file their objections on ECF and apparently did not give notice to the Receiver that it had filed objections with the Court.

On December 23, 2015, the Court filed the Claimants' objections on ECF. (See id.) At this point, the Receiver finally received notice that the Claimants sought review of the Notice of Determination in this Court. (See Rec.'s Dec. 23, 2015 Letter, Dkt. No. 360.)

On January 26, 2015, the Receiver filed a response to the Claimants' Objections. (See Rec.'s Jan. 26, 2015 Mem. of Law, Dkt. No. 378 ["Rec.'s Mem. of Law"].)

## II. DISCUSSION

As the Court noted in the June 9, 2016 Order, the Court reviews objections to the Receiver's Notices of Determination under a *de novo* standard of review. (See June 9, 2016 Order at 15–16.)

In their objections to the Notice of Determination, the Claimants assert that the Receiver failed to recognize their losses totaling $1,284,623.84 based on their investments in "ROGOF," which they do not define; the "Westminster Funds," which they define as "Westminster Flagship-Global, Westminster Global Investments, Westminster High Yield Portfolio, and Westminster Cash"; and "FHQ4OQCGQ Fixed 8" ("Fixed 8"). (See July 13, 2015 Pernia Decl., Dkt. No. 354 ["Pernia Decl."], at ¶¶ 5–7.)

The Claimants do not dispute the Receivership's determination that these funds are not Receivership Entities. (See id. at ¶ 10.) However, they contend that the Receiver should still

4

have recognized their lost investments in non-Receivership entities in the amount of $1,284,623.84 because they assert that Callahan controlled their investment portfolios, and it is "highly probable" that he used their money to benefit the Ponzi scheme at issue in the amended complaint.  (See id. at ¶ 14.)

In response, the Receiver states that the Court should dismiss the Claimants' objections because (i) the objections are untimely; and (ii) the $1,284,623.84 in losses that the Claimants allegedly suffered as a result of their investments in non-Receivership Entities do not constitute Potential Claims under the Claims Order and therefore, are not entitled to compensation from the Receivership Estate.  (See Rec.'s Mem. of Law at 6–20.)  The Court agrees.

As to timeliness, Section 6(p) of the Claims Order states, "The Objection shall be filed with the Court no earlier than ninety (90) days from the date of the Receiver's Notice of Determination and no later than one hundred and twenty (120) days from the date of the Receiver's Notice of Determination . . . . *Objections not timely filed with the Court shall be deemed and overruled without the need for further order of this Court or action by the Receiver.*"  (Claims Order, Dkt. No. 186 ["Claims Order"], at p. 15–16, ¶ (6) (emphasis added)).

Here, the Notice of Determination is dated March 10, 2015, which means the Claimants' time to file objections with the Court ran from June 8, 2015 to July 8, 2015.  However, the Court did not receive the Claimants' objections until July 10, 2015, two days after the deadline. Further, they sent the objections to the Court without filing them on the public docket or giving the Receiver any notice that they had done so.

The Claimants provided no good cause as to why they belatedly filed their objections with the Court, or explained why they failed to file their objections on ECF or give notice to the Receiver.  Even if they had, the Claims Order limits the Court's discretion to extend the period

within which the Claimants can file objections with the Court — "Objections not timely filed with the Court *shall* be deemed and overruled without the need for further order of this Court or action by the Receiver." (See id.) (emphasis added). Accordingly, the Claimants' objections are time-barred and are denied on that basis.

The Court also finds that the Claimants' objections lack merit.

The Claims Order defines a "Potential Claim" as:

> (a) a right to payment . . . . against one or more of the Receivership Entities or the Receivership Estate; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment . . . . against one or more of the Receivership Entities; (c) a right to a distribution from one or more of the Receivership Entities, including but not limited to a right based on an investment in or through one or more Receivership Entities.

(Id. at p. 2, at ¶ 3.)

The "Receivership Entities," are in turn, defined as:

> Horizon Global Advisors Ltd. ('HGA LTD'); Horizon Global Advisors LLC ('HGA LLC'); Diversified Global Investments (BVI), L.P. ('Diversified Global') f/k/a Horizon Global Investments, L.P. ('Horizon Global'); the Masters Global Fund, L.P. ('Masters Global'); Fiduciary Select Income Fund, L.P. ('Fiduciary Select') f/k/a Pangea Bridge Investment, L.P. ('Pangea Bridge'); Horizon Millennium Investments, L.P. ('Horizon Millennium'); and Pangea Offshore High Yield Portfolio, LLC ('Pangea Offshore').

(Claims Order at p. 1.)

Although the term, "Receivership Estate," is not defined explicitly in the Claims Order, the Receivership Order defines the "Receivership Estate" as:

> property interests of the Receivership Defendants, including, but not limited to, monies, funds, securities, credits, effects, goods chattels, land, premises, leases, rights and other assets, together with all rents, profits dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly.

(Receivership Order, Dkt. No. 22 ["Receivership Order"], at p. 5, ¶ 7(a).)

The Receivership Order, in turn, defines the "Receivership Defendants" as HGA LTD and HGA LLC. (Id. at p. 5, ¶ 1.)

Construing these provisions together, the Court finds that to have a claim against the Receivership Estate, a Potential Claimant must show that it has: (i) a right to payment against one or more of the Receivership Entities or the assets which HGA LTD or HGA LLC "own, possess, have a beneficial interest in, or control directly or indirectly"; (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment against one or more of the Receivership Entities; or (iii) a right to a distribution from one or more of the Receivership Entities, including but not limited to a right based on an investment in or through one or more Receivership Entities.

Even assuming that the Claimants did invest in "ROGOF", which appears to refer to Rochdale Offshore Global Opportunities Fund, L.P. ("Rochdale Offshore"), the Westminster Funds, and Fixed 8, these funds are not Receivership Entities or Receivership Defendants. Further, the Claimants have made no showing that these funds have assets which HGA LTD or HGA LLC "own, possess, have a beneficial interest in, or control directly or indirectly." Thus, under the clear language of the Receivership Order and the Claims Order, the Claimants have no claim against the Receivership Entities and the Receivership Estate based on these investments.

The Claimants attempt to avoid this limitation by contending that Callahan controlled their investment portfolio, and therefore, they have a right to payment from the Receivership Estate for the entire amount of their losses attributable to Callahan's investment decisions, even those investments that do not relate to the Receivership Entities. (See Pernia Decl. at ¶¶ 9–14.)

However, Callahan is not a Receivership Defendant. Rather, only HGA LTD and HGA LLC are Receivership Defendants, and the Receivership Estate consists only of assets tied to

HGA LTD and HGA LLC. Accordingly, the fact that Callahan controlled the Claimants' investments does not, without more, give them a right to a distribution from the Receivership Estate for all of their investments, even those in non-Receivership Entities, such as Rochdale Offshore, the Westminster Funds, and Fixed 8.

The Claimants also contend that the money that they invested in Rochdale Offshore, the Westminster Funds, and Fixed 8 was diverted by Callahan into a real estate project known as the Panoramic View, which Callahan and Adam Manson ("Manson"), his co-conspirator, purchased with ill-gotten funds derived from the Receivership Entities and is at heart of the Ponzi scheme at issue in the amended complaint. (See id. at ¶¶12–14.)

However, the Claimants provide no support for this contention. Rather, they allege that because Callahan misappropriated their investments in non-Receivership Entities at the same time he allegedly diverted money from the Receivership Entities, it is "highly probable" that he also diverted the Claimants' investments in non-Receivership Entities into the Panoramic View for the same purpose. (See id. at ¶ 14.)

The Court finds that this kind of unsupported allegation is clearly insufficient to establish that the Claimants have a right to a payment from the Receivership Estate. Ultimately, under the Claims Order, it is the Claimants' burden to provide supporting documentation for their claims, *see* Claims Order at p. 6, ¶ 3(d), and the Receiver has discretion to deny a Potential Claim for the lack of such documentation, *see id.* at p. 8, ¶ 3(f).

Also, the Claimants' contention that Callahan used their investments from non-Receivership entities to pay expenses related to the Panoramic View is based on pure speculation. There are no documents evidencing such a transfer, nor are there documents

8

evidencing that the Claimants' money was in any way co-mingled with the funds the Callahan withdrew to pay expenses related to the Panoramic View.

Had there been such evidence, it is likely that the SEC or the Receiver, the two entities charged with maximizing the value of the Receivership Estate for the benefit of defrauded investors, would have placed the assets of Rochdale Offshore, the Westminster Funds, or Fixed 8 into the Receivership, as they did with the Receivership Entities. The fact that they did not do so strongly suggests that there was no such evidence.

Therefore, the Court finds that there is nothing on the record before it which remotely suggests that the Claimants' alleged investments in Rochdale Offshore, the Westminster Funds, and Fixed 8, give rise to a claim against the Receivership Estate or the Receivership Entities.

For these reasons, under a *de novo* review, the Court affirms the determination by the Receiver and finds that the Claimants' objections are both untimely and lack merit.

### III. CONCLUSION

For the foregoing reasons, the Claimants' objections are denied and dismissed, and the March 10, 2015 Notice of Determination is affirmed in its entirety.

The Clerk of the Court is directed to terminate docket entry 354.

**SO ORDERED.**
Dated: Central Islip, New York
June 11, 2016

                                              */s/ Arthur D. Spatt*
                                              ARTHUR D. SPATT
                                           United States District Judge