UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,

                                               Case No. 12-CV-1065 (JMA/AYS)

           Plaintiff,

    v.

BRIAN RAYMOND CALLAHAN, ADAM
MANSON, DISTINCTIVE INVESTMENTS
LLC, and DISTINCTIVE VENTURES LLC;

           Defendants,                      Assigned to:
                                             Hon. Joan M. Azrack (DJ)

SHERI MANSON CALLAHAN,               Hon. A. Anne Y. Shields (MJ)

           Relief Defendant.

-----------------------------------------------------------------x

**RECEIVER'S REPORT FOR THE 2022 FIRST QUARTER
<u>COVERING THE PERIOD OF JANUARY 1, 2022 THROUGH MARCH 31, 2022</u>**

GOTTESMAN, WOLGEL, FLYNN,
& WEINBERG, P.C.
A PROFESSIONAL CORPORATION INCORPORATED IN THE STATE OF NEW YORK
ATTORNEYS FOR

***RECEIVER***

11 HANOVER SQUARE
NEW YORK, N.Y. 100005
TEL. NO. (212) 495-0100
FAX NO. (212) 480-9797

<u>**TABLE OF CONTENTS**</u>

**RECEIVER'S REPORT:**

| | | |
|---|---|---|
| I. | Background and Legal Proceedings | 2 |
| | A.  The Receivership Proceeding and Appointment of Receiver | 2 |
| | B.  The Civil Forfeiture Action | 4 |
| | C.  Intervention by U.S. Government and Non-Receivership Stay | 6 |
| | D.  Indictment of Brian R. Callahan and Adam J. Manson | 6 |
| | E.  Sale of the Distinctive Coop Shares and the Westbury Property | 12 |
| | F.  Cromwell/Ten Hillside | 12 |
| | G.  Defendant Callahan's Motions to Modify Asset Freeze and New Counsel | 12 |
| | H.  Defendant Manson's New Counsel | 12 |
| | I.  Manson/Distinctive's Motion & Objection | 13 |
| | J.  Johnson/Bocagrande's Motions & Objection | 13 |
| | K.  Pernia Objection | 13 |
| | L.  Motion of AAA International Trust | 13 |
| II. | Operations and Investigation | 14 |
| | A.  Establishing the Receivership Estate | 14 |
| | B.  The Receivership Financial Report and Condition | 14 |
| | C.  Evaluating and Preserving Receivership Assets | 21 |
| | D.  Understanding, Evaluating and Advising Upon Private Investments | 21 |
| | E.  The Real Property and Business Operations Therein | 21 |
| | (i)  The Panoramic View Coop/Montauk Property | 21 |
| | (ii)  The Callahan Coop Unit | 22 |
| | (iii)  The Callahan Residence | 22 |
| | (iv)  The Cromwell Storage Units | 22 |
| | (v)  Creditors | 22 |
| | F.  Investigating and Organizing Claims Against Third Parties | 22 |
| III. | The Status of the Proposed Plan for the Receivership Estate | 23 |
| | A.  The Real Property | 23 |
| | (i)  The Panoramic View | 23 |
| | (ii)  The Callahan Coop Unit and Callahan Residence | 23 |
| | (iii)  Cromwell Property | 24 |
| | B.  Non-Real Property | 24 |
| | (i)  The Callahan Funds | 24 |
| | (ii)  Redemptions | 24 |
| | C.  Summary | 24 |

IV.    Claims Process                                                    25

V.     Assets, Liquidation and Distribution of Proceeds               26

VI.    Conclusion                                                        27

EXHIBIT A     Standardized Fund Accounting Reports
EXHIBIT B     Claims Determinations Approved by the Final Claim
              Determination Order

**RECEIVER'S REPORT FOR THE 2022 FIRST QUARTER**
**<u>COVERING THE PERIOD OF JANUARY 1, 2022 THROUGH MARCH 31, 2022</u>**

Steven Weinberg, as the court appointed receiver (the "Receiver") for Horizon Global Advisors Ltd. ("HGA LTD"), Horizon Global Advisors LLC ("HGA LLC"), Diversified Global Investments (BVI), L.P. ("Diversified Global") f/k/a Horizon Global Investments, L.P. ("Horizon Global"), The Masters Global Fund, L.P. ("Masters Global"), Fiduciary Select Income Fund, L.P. ("Fiduciary Select") f/k/a Pangea Bridge Investment, L.P. ("Pangea Bridge"), Horizon Millennium Investments, L.P. ("Horizon Millennium") and Pangea Offshore High Yield Portfolio, LLC ("Pangea Offshore") respectfully submits this as his quarterly report (the "Report") for the period of January 1, 2022 through March 31, 2022 (the "Quarterly Period"). The Report states the Receivership activities, the Receivership Assets and Receivership Property (as those terms are defined in the Receivership Orders) during the Quarterly Period, and the following as required by Paragraph 55 of the Receivership Order:

A. A summary of the operations of the Receiver;

B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C. A schedule of all the Receiver's receipts and disbursements (attached as EXHIBIT A to the Quarterly Status Report), with one column for the quarterly period covered and another column for the entire duration of the receivership;

D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources;

approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and (ii) collecting such judgments);

F.      A list of all known creditors with their addresses and the amounts of their claims;

G.      The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H.      The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

## I.      BACKGROUND AND LEGAL PROCEEDINGS.

The following is a summary of the receivership proceeding, its related proceedings, the Civil Forfeiture Action and the Criminal Action/Criminal Forfeiture Action, and background information relating to those proceedings.

**A. The Receivership Proceeding & Appointment of the Receiver**:

This receivership proceeding was commenced on March 5, 2012 by the United States Securities and Exchange Commission ("SEC") against Defendants Brian Raymond Callahan ("Callahan"), HGA LTD and HGA LLC (the "SEC/Receivership Action"). The SEC expanded the action to include as defendants, five offshore funds, Diversified Global, Masters Global, Fiduciary Select, Horizon Millennium and Pangea Offshore (collectively, the "Callahan Funds"), along with Defendant Callahan's brother-in-law, Adam Manson, his companies, Distinctive Investments, LLC ("Distinctive Investments") and Distinctive Ventures, LLC ("Distinctive Ventures"), and as a Relief Defendant, Defendant Callahan's spouse, Sheri Manson Callahan.

On March 27, 2012, on the motion made by the SEC (*ECF Doc. 2*), this Court signed the Receivership Order (*ECF Doc. 22*) placing the HGA Fund Managers (HGA LTD and HGA

LLC) into Receivership, and appointed Steven Weinberg as their Receiver. Pursuant to a Stipulation (*ECF Doc. 29*) entered into by the SEC and Defendant Callahan, and "So Ordered" (*ECF Doc. 33*) on June 4, 2012 (the "Fund Receivership Order"), the Receivership Court also placed the Callahan Funds into receivership with Steven Weinberg, being the Receiver for both HGA Fund Managers and the Callahan Funds (collectively, the "Receivership Entities"). The Receivership Order and the Fund Receivership Order are collectively referred hereinafter as the "Receivership Orders".

This Court charged the Receiver with the duty: (a) to use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Defendants, of whatever kind, (b) to take custody, control and possession of all Receivership Property and records relevant thereto, and (c) subject to leave from this Court, to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto, including pursuing all suits, actions, claims and demands which may be brought by the Receivership Estate, and bringing legal actions based on law and equity as the Receiver deems necessary or appropriate in discharging his duties as Receiver, and (d) to take such action as necessary and appropriate for the preservation of Receivership Property or to prevent dissipation or concealment of Receivership Property. Since his appointment, the Receiver has been active in:

- Establishing and Operating the Receivership Estate;

- Investigating the Receivership Entities and Defendants;

- Evaluating and Preserving Receivership Assets and Receivership Property;

- Investigating and Evaluating Receivership Fund Investments;

- Investigating and Analyzing Third Party Claims.

For a more complete description of the foregoing, please see the Receiver's Report for the 2017

Fourth Quarter covering the period of October 1, 2017 through December 31, 2017 *(see ECF*

*Doc. 471)* and previous Receiver's Reports.  On June 29, 2020, this action was reassigned to the

Honorable Joan M. Azrack.

**B.  The Civil Forfeiture Action.**

Separately, and in addition to the subject SEC/Receivership Action, the United States

Attorney's Office for the Eastern District of New York ("USAO") commenced a civil forfeiture

action on April 17, 2012 in the United States District Court for the Eastern District of New York

– Civil Case No. 12 CV 1880 (the "Civil Forfeiture Action").  On December 22, 2017, the

USAO filed a letter request with attached Final Order of Forfeiture as to defendant Adam J.

Manson in the Criminal Action.  ***Criminal Action – ECF Doc. 185.***  The letter request stated "As

described in the government's letter filed on February 8, 2017, the government intends to seek

authorization from the Department of Justice, Money Laundering and Asset Recovery Section

(MLARS) to distribute forfeited funds via the MLARS "petition-and-remission" process.

(Docket No. 139).  At this time, the SEC Receiver has commenced distributing funds from the

receivership estate to victims in the parallel SEC enforcement action captioned *SEC v. Callahan,*

*et al.*, 12-CV-1065 (ADS).  The SEC Receiver has also provided the government with a schedule

of the amounts he is disbursing to each victim. The government has thereafter been able to

conduct its own analysis to calculate the proposed distribution of over $40 million in forfeited

funds to victims.  Having completed this analysis, the government is preparing to submit

remission requests to MLARS. The government requests that the enclosed proposed Final Order

of Forfeiture be issued by the Court, so that the $2,500,000 forfeited by Manson can be included

in the government's remission prior to Manson's sentencing, which is presently scheduled  for

March 2, 2018." ***Criminal Action – ECF Doc. 185.*** On December 28, 2017, a Final Order of

Forfeiture was entered in the Criminal Action stating:

> WHEREAS, on April 18, 2016, this Court entered a Preliminary Order of
> Forfeiture pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure (the
> "Preliminary Order"), directing the forfeiture to the United States of all right, title
> and interest in the following (a) a forfeiture money judgment in the amount of two
> million, five-hundred thousand dollars and no cents ($2,500,000.00) (the
> "Forfeiture Money Judgment"); (b) approximately four hundred seven thousand,
> three hundred sixty-six dollars and fifty-seven cents ($407,366.57) seized on or
> about August 1, 2013 from J.P. Morgan Chase Bank account number
> XXXXXX2092 held in the name of Barry Manson Attorney at Law Savings for
> Adam Manson, and all proceeds traceable thereto; and (c) approximately one
> million, thirty-eight thousand, two hundred sixty-six dollars and no cents
> ($1,038,266.00) seized on or about August 1, 2013 from First National Bank of
> Long Island account number XX-XXX1526 held in the name of Law Offices of
> Barry Manson PC ESC FBO Adam J. Manson, and all proceeds traceable thereto
> (items (b) and (c), together, referred to as the "Criminally Forfeited Assets"),
> pursuant to 18 U.S.C. § 98l(a)(l)(C) and 28 U.S.C. § 246l(c) as property·, real or
> personal, that constitutes, or is derived from, proceeds traceable to the defendant's
> violation of 18 U.S.C. § 371 and/or as substitute assets pursuant to 21 U.S.C. §
> 853(p)….
>
> pursuant to 18 U.S.C. § 98l(a)(l)(C), 21 U.S.C. § 853(p) and 28 U.S.C.§ 246l(c)
> and the Preliminary Order, all payments made towards the Forfeiture Money
> Judgment and all right, title, and interest in the Criminally Forfeited Assets are
> hereby condemned, forfeited, and vested in the United States of America.

***Criminal Action – ECF Doc. 186.*** On February 28, 2018 the Receiver received a portion of the

forfeited funds, and on March 20, 2018 made distribution of those forfeited funds to certain

approved claimants which are listed in the Order of Restitution as "I.   Victim-investors who

filed claims which were approved by the SEC Receiver", as directed by the DOJ.  For a more

complete description of the foregoing please see the Receiver's Report for the 2017 Fourth

Quarter covering the period of October 1, 2017 through December 31, 2017 (*see ECF Doc. 471*)

and previous Receiver's Reports.

**C.  Intervention by U.S. Government and Non-Receivership Stay.**

Please refer to the previous Receiver's Reports for a complete history of the Intervention

by U.S. Government and Non-Receivership Stay, as set forth most recently in the Receiver's

Report for the 2017 Fourth Quarter covering the period of October 1, 2017 through December

31, 2017 (*see ECF Doc. 471*) and previous Receiver's Reports.

**D.  Indictment of Brian R. Callahan and Adam J. Manson**

On December 28, 2017, a Final Order of Forfeiture was entered in the Criminal Action

stating:

> WHEREAS, on April 18, 2016, this Court entered a Preliminary Order of
> Forfeiture pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure (the
> "Preliminary Order"), directing the forfeiture to the United States of all right, title
> and interest in the following (a) a forfeiture money judgment in the amount of two
> million, five·hundred thousand dollars and no cents ($2,500,000.00) (the
> "Forfeiture Money Judgment"); (b) approximately four hundred seven thousand,
> three hundred sixty-six dollars and fifty-seven cents ($407,366.57) seized on or
> about August 1, 2013 from J.P. Morgan Chase Bank account number
> XXXXXX2092 held in the name of Barry Manson Attorney at Law Savings for
> Adam Manson, and all proceeds traceable thereto; and (c) approximately one
> million, thirty-eight thousand, two hundred sixty-six dollars and no cents
> ($1,038,266.00) seized on or about August 1, 2013 from First National Bank of
> Long Island account number XX-XXX1526 held in the name of Law Offices of
> Barry Manson PC ESC FBO Adam J. Manson, and all proceeds traceable thereto
> (items (b) and (c), together, referred to as the "Criminally Forfeited Assets"),
> pursuant to 18 U.S.C. § 98l(a)(l)(C) and 28 U.S.C. § 246l(c) as property·, real or
> personal, that constitutes, or is derived from, proceeds traceable to the defendant's
> violation of 18 U.S.C. § 371 and/or as substitute assets pursuant to 21 U.S.C. §
> 853(p)….
>
> pursuant to 18 U.S.C. § 98l(a)(l)(C), 21 U.S.C. § 853(p) and 28 U.S.C.§ 246l(c)
> and the Preliminary Order, all payments made towards the Forfeiture Money
> Judgment and all right, title, and interest in the Criminally Forfeited Assets are
> hereby condemned, forfeited, and vested in the United States of America.

*Criminal Action – ECF Doc. 186.*

On September 28, 2018, Defendant Callahan filed a petition pursuant to 28 U.S.C. § 2255

to vacate, set aside, or correct sentence by a person in federal custody, with a petition "for a

declaratory judgment, pursuant to 28 U.S.C. §§ 2201-02, that Petitioner's time to file his Petition is one year from the date on which his conviction becomes final, which is one year from the date he could have sought *certiorari* from an order of the United States Court of Appeals dismissing his appeal, and for such other relief as the Court may determine is appropriate." *See Criminal Action – ECF Docs. 196 & 197.* On June 19, 2019, Defendant Manson filed a motion seeking: (1) an order disqualifying the United States Attorney's Office from prosecuting either of these cases going forward in favor of another office to be appointed by the United States Department of Justice; (2) recusal of Judge Spatt and reassignment of this case for reasons explained in *United States v. Wilson,* 920 F.3d 155 (2d Cir. 2019), and in Mr. Callahan's pending Petition; (3) an order requiring the government to honor its plea agreement with Mr. Manson; (4) permission to supplement Mr. Callahan's pending petition based principally on the government's disclosure in in February 2019 of a detailed financial spreadsheet underlying its calculation of fraud loss, together with subsequent analysis of this spreadsheet completed a few weeks ago by the accounting firm Mazars USA and disclosed to the government; (5) Mr. Callahan's immediate release on bond because he has already served his legal Guideline sentence; and such other relief as is appropriate. *See Criminal Action – ECF Docs. 205 & 206.* On August 19, 2019, the United States Attorney's Office for the Eastern District of New York submitted a letter in opposition to the motion. *See Criminal Action – ECF Doc. 219.* On September 27, 2019 the United States Attorney's Office for the Eastern District of New York filed a letter in opposition to Defendant Callahan's habeas petition dated September 28, 2018. *See Criminal Action – ECF Doc. 222.* On October 28, 2019 counsel for Mr. Callahan filed a reply memorandum, supplemental declaration and exhibit in further support of Defendant Callahan's petition pursuant to 28 U.S.C. §2255. *See Criminal Action – ECF Doc. 225.* On January 9, 2020, the

Court issued a Memorandum of Decision & Order in the Criminal Action resolving "several motions by the Defendants pertaining to their sentencing, namely: (1) a motion by Callahan to vacate his sentence pursuant to 28 U.S.C. §2255; (2) a motion by Manson to compel specific performance by the Government of his plea agreement; (3) a motion by Manson to disqualify the United States Attorney's Office for the Eastern District of New York, in favor of prosecution by another United States Attorney's office; and (4) a motion by Manson to preclude Jerry Ostry ("Ostry"), a victim, from testifying at his sentencing hearing." *See Criminal Action – ECF Doc. 226 & 227, pg. 2.* The Memorandum of Decision & Order further states "the Court denies the Defendants' motions in their entirety, except it will permit the cross-examination of Ostry by defense counsel at Manson's sentencing hearing." *See Criminal Action – ECF Doc. 226 & 227, pg. 2.* On January 16, 2020, Defendant Callahan filed a Notice of Appeal, appealing "to the United States Court of Appeals for the Second Circuit from the entirety of a Memorandum of Decision & Order, dated and entered on January 9, 2020, denying Callahan's motion pursuant to 28 U.S.C. §2255 and other requested relief. *See Criminal Action – ECF Doc. 229.* On September 15, 2020, the United States Court of Appeals for the Second Circuit issued a Mandate, denying Defendant Callahan's motion for a certificate of appealability, and the appeal "is [dismissed] because Appellant has not "made a substantial showing of the denial of a constitutional right." *See Criminal Action—ECF Doc. 243.*

On July 23, 2019, Defendant Callahan filed a motion seeking that Defendant Callahan be released on bail pending disposition of a habeas petition. *See Criminal Action – ECF Doc. 211.* On July 24, 2019, the United States Attorney's Office for the Eastern District of New York filed opposition to Defendant Callahan's application to be released on bail pending disposition of Defendant Callahan's habeas petition. *See Criminal Action – ECF Docs. 212.* On July 29,

2019, Defendant Callahan filed a reply seeking that Defendant Callahan be released on bail pending disposition of Defendant Callahan's habeas petition. *See Criminal Action – ECF Doc. 215.* On July 31, 2019, the Honorable Arthur D. Spatt issued a Memorandum of Decision and Order denying Defendant Callahan's motion for recusal of Judge Spatt and for Defendant Callahan's release on bond pending the adjudication of Defendant Callahan's habeas petition. *See Criminal Action – ECF Doc. 216.* Defendant Callahan appealed Judge Spatt's July 31, 2019 Decision and Order denying Bond. *See Criminal Action – ECF Doc. 217.* On October 9, 2019, the United States Court of Appeals for the Second Circuit issued a Summary Order affirming Judge Spatt's Decision and Order denying Defendant Callahan's request for bail pending resolution of Defendant Callahan's habeas petition. *See Criminal Action – ECF Doc. 223.* On April 22, 2020, Defendant Callahan requested that the Court endorse a letter recommending that the Bureau of Prisons "that it keep Mr. Callahan at the MDC or otherwise close to home to maintain essential family ties." *See Criminal Action – ECF Doc. 230.* On May 18, 2020 the government filed a letter response stating "[t]he government takes no position with respect to that request." *See Criminal Action – ECF Doc. 232.* On May 20, 2020, Judge Spatt Ordered "[t]he Court recommends to the BOP to keep Brian Callahan at the MDC or other facility close to his home." *See Criminal Action – ECF Doc. 233.*

On June 23, 2020, Defendant Callahan submitted a "letter as an emergency application for the immediate compassionate release of Brian Callahan…to home confinement and a period of supervised release, pursuant to 18 U.S.C. §3582(c)(1)(A)(i)." *See Criminal Action – ECF Doc. 234.* On June 24, 2020, the Criminal Action was reassigned to the Honorable Gary R. Brown. *See Criminal Action Docket.* On June 26, 2020, by docket text Order, Judge Gary R. Brown Ordered the government to file a response to Defendant Callahan's motion within 2 weeks. *See*

***Criminal Action Docket.***  On July 10, 2020, the Government filed opposition to Defendant

Callahan's request for compassionate release.  ***See Criminal Action—ECF Doc. 235.***  On

August 17, 2020, Defendant Callahan filed a reply brief in further support of his motion for

compassionate release. ***See Criminal Action—ECF Doc. 241.***  On August 18, 2020,

Defenendant Callahan filed an unopposed motion to seal information.  ***See Criminal Action—***

***ECF Doc. 242.***  On September 23, 2020, the Honorable Gary R. Brown, issued a Memorandum

and Order denying Defendant Callahan's application for a compassionate release, because it

"fails to meet the standards for such release, and is therefore denied."  ***See Criminal Action—***

***ECF Doc. 244.***  On October 1, 2020, Defendant Callahan filed a Notice of Appeal appealing

from the entirety of Judge Brown's September 23, 2020 Memorandum and Order.  ***See Criminal***

***Action—ECF Doc. 245.***  On April 6, 2021 the United States Court of Appeals for the Second

Circuit issued an Order stating "[t]he Government moves to remand this appeal of the district

court's order denying a sentence reduction under 18 U.S.C. §3582(c)(1)(A) for further

proceedings consistent with our opinion in *United States v. Brooker,* 976 F.3d 228 (2d Cir.

2020).  Appellant opposes the motion.  Upon due consideration, it is hereby ORDERED that the

motion to remand is GRANTED and the district court's order is VACATED.  Upon remand, the

district court should apply our decision in *Brooker* and determine whether it will exercise its

discretion to grant a sentence reduction under this new standard. *See id.* at 238." ***See Criminal***

***Action—ECF Doc. 248.***  On April 30, 2021, Defendant Callahan submitted a letter to

supplement his previously submitted motion pursuant to 18 U.S.C. §3582(c)(1)(A) under the

new standard of *United States v. Brooker,* 976 F.3d 228 (2d Cir. 2020). ***See Criminal Action –***

***ECF Doc. 252.***  On May 21, 2021, the Government filed opposition to Defendant Callahan's

motion for relase from custody. ***See Criminal Action—ECF Doc. 259.***  On May 24, 2021,

Defendant Callahan submitted a letter reply in further support of his motion.  *See Criminal Action—ECF Doc. 260.*  On June 29, 2021, the Court issued an Order denying Defendant Callahan's motion for release from custody.  *See Criminal Action – ECF Doc. 261.*

On January 9, 2020, the United States Attorney's Office for the Eastern District of New York filed a letter stating "the government and defendant ask the Court to adjourn the defendant's [Manson] sentencing to April 17 [2020]." *See Criminal Action – ECF Doc. 228.* On June 25, 2020, by docket text Order, the motion to continue sentencing was granted and the parties were directed to submit to the Court proposed dates for the sentence hearing.  *See Criminal Action Docket.*  On December 7, 2020, Defendant Manson sought to continue sentencing.  *See Criminal Action – ECF Doc. 246.*  By docket text Order on December 11, 2020, Defendant Manson's sentencing was scheduled for January 25, 2021 at 2:00 p.m. before Judge Gary R. Brown.  *See Criminal Action Docket.*  On March 22, 2021, Defendant Manson sought to continue his sentencing.  *See Criminal Action Docket – ECF Doc. 247.*  On May 18, 2021, Defendant Manson sought to continue his sentencing, which adjournment request was granted on May 20, 2021, adjourning Defendant Manson's sentencing to July 22, 2021 at 11:00 a.m. in-person.  *See Criminal Action Docket – ECF Docs. 257 & 258.*  On July 22, 2021, Defendant Manson sought to continue his sentencing, which adjournment request was granted on July 23, 2021, adjourning Defendant Manson's sentencing to September 13, 2021.  *See Criminal Docket—ECF Doc. 262.*  On Septemebr 13, 2021, the Court issued a docket text Order rescheduling the sentencing of Defendant Manson to October 29, 2021 at 2:30 p.m. at the request of the parties.  *See Criminal Docket.*  On October 28, 2021, Defendant Manson sought to continue his sentencing.  *See Criminal Docket—ECF Doc. 263.*  On November 3, 2021, by Docket Text, the Criminal Action was reassigned to Magistrate Judge Steven I. Locke. For a

more complete description of the indictment of Defendant Brian Callahan and Defendant Adam Manson please see the Receiver's Report for the 2017 Fourth Quarter covering the period of October 1, 2017 through December 31, 2017 (*See ECF Doc. 471*) and previous Receiver's Reports.

**E.  Sale of the Distinctive Coop Shares and the Westbury Property**

Please refer to the previous Receiver's Reports for a complete history of the sale of the Distinctive Coop Shares and the Westbury Property as set forth most recently in the Receiver's Report for the 2015 Fourth Quarter covering the period of October 1, 2015 through December 31, 2015 (*See ECF Doc. 381*) in section I subsections E through H.

**F.  Cromwell/Ten Hillside.**

The Receiver, Citizens Bank and Cromwell reached an agreement on the terms for a consensual sale of the real property and for the Receivership Entities to recover monies that were traced through bank accounts to Investor Funds and paid to Cromwell for the real estate mortgage and/or taxes.  On November 13, 2014, the closing occurred for the sale of the Cromwell Property and Cromwell Storage Business, pursuant to the Stipulation and Order for the Consensual Sale of the Cromwell Property and the Related Storage Business.  *See ECF Doc. 259.*  A complete history of the sale of Cromwell Property and Cromwell Storage Business is set forth in the Receiver's prior reports, including as set forth most recently in the Receiver's Report for the 2015 Second Quarter.  *See ECF Doc. 306.*

**G.  Defendant Callahan's Motions to Modify Assets Freeze and New Counsel**

Please refer to the previous Receiver's Reports for a complete history of Defendant Callahan's Motions to Modify Assets Freeze as set forth most recently in the Receiver's Report

for the 2015 Fourth Quarter covering the period of October 1, 2015 through December 31, 2015 (*See ECF Doc. 381*) in section I subsection K.

**H.  Defendant Manson's New Counsel**

Please refer to the previous Receiver's Reports for additional information regarding Defendant Manson's new counsel as set forth most recently in the Receiver's Report for the 2015 Fourth Quarter covering the period of October 1, 2015 through December 31, 2015 (*See ECF Doc. 381*) in section I subsection L.

**I.  Manson/Distinctive's Motion & Objection**

Please refer to the previous Receiver's Reports for additional information regarding Manson/Distinctive's Motion & Objection as set forth most recently in the Receiver's Report for the 2017 Second Quarter covering the period of April 1, 2017 through June 30, 2017 (*See ECF Doc. 454)* in section I subsection I.

**J.  Johnson/Bocagrande's Motions & Objection**

Please refer to the previous Receiver's Reports for additional information regarding Johnson/Bocagrande's Motions & Objection as set forth most recently in the Receiver's Report for the 2017 Second Quarter covering the period of April 1, 2017 through June 30, 2017 (*See ECF Doc. 454)* in section I subsection J(i),(ii) and (iii).

**K.  Pernia Objection**

Please refer to the previous Receiver's Reports for additional information regarding Manson/Distinctive's Motion & Objection as set forth most recently in the Receiver's Report for the 2017 Second Quarter covering the period of April 1, 2017 through June 30, 2017 (*See ECF Doc. 454)* in section I subsection K.

**L.  Motion of AAA International Trust**

Please refer to the previous Receiver's Reports for additional information regarding Mr. Ostry's motion on behalf of himself and as agent for AAA International Trust, submitted on June 29, 2016, as set forth most recently in the Receiver's Report for the 2017 Second Quarter covering the period of April 1, 2017 through June 30, 2017 (*See ECF Doc. 454*) in section I subsection L.

## II.  OPERATIONS AND INVESTIGATIONS

During the subject Quarterly Period:

- The Receiver continued to monitor the criminal action and review the filings in the Criminal Action related to the sentencing of Defendant Manson, Order of Restitution, Final Order of Forfeiture and motions filed by Defendant Callahan.

- The Receiver continued to pursue recoveries of Investor Funds from investors who received money from one or more Receivership Entities purporting to be net profits of investments.

- The Receiver continued to investigate, evaluate and pursue claims against third-parties who received investor funds, or contributed to the diversion of investor funds.

- The Receiver continued to assert and protect the Receivership's interest and control over Receivership Assets and Property.

- The Receiver continued to communicate with the approved claimants and keep the approved claimants informed of the Receiver's effort to pursue recoveries of Receivership Assets, and to answer inquiries by the claimants regarding distribution of the Receivership Estate, the forfeited funds, and the Receiver's efforts to complete the administration of the Receivership Estate.

14

A. **Establishing The Receivership Estate:**

Please refer to the previous Receiver's Reports for a complete history of the establishing

of the Receivership Estate as set forth most recently in the Receiver's Report for the 2017 Fourth

Quarter covering the period of October 1, 2017 through December 31, 2017 (*see ECF Doc. 471*).

B. **The Receivership Financial Report And Condition:**

The Receiver previously recovered funds from the following financial institutions who

were in possession of a balance of the Investor Funds:

**MASTERS GLOBAL:**

- Hedge Forum –
  Morgan Stanley Smith Barney                     $597,268.70
- Hedge Forum –
  Citibank                                        $109,166.82
- Hedge Forum SCF –
  Citibank                                          $4,961.40
- Hedge Forum Goldentree –
  Citibank                                          $2,062.38
- Hedge Forum Altima –
  Citibank                                          $1,033.89
- Hedge Forum Goldentree –
  Citibank                                          $6,637.52
- Hedge Forum SCF –
  Citibank                                            $307.18
- Hedge Forum Goldentree –
  Citibank                                          $1,176.54
- Hedge Forum SCF –
  Citibank                                            $123.52
- Hedge Forum Goldentree –
  Citibank                                          $2,597.98
- Hedge Forum Goldentree –
  Citibank                                              $6.85
- Hedge Forum SCF –
  Citibank                                             $45.16
- Hedge Forum Goldentree –
  Citibank                                             $45.00
- Hedge Forum Goldentree –
  Citibank                                            $326.14
- Hedge Forum Goldentree –
  Citibank                                              $0.97

15

| | |
|---|---|
| • Hedge Forum Goldentree – Citibank | $331.91 |
| • HedgeForum Goldentree-Citibank | $1,221.51 |
| • HedgeForum Goldentree-Citibank | $2,030.85 |
| • HedgeForum Goldentree-Citibank | $4.18 |
| • HedgeForum Goldentree-Citibank | $40.85 |
| **TOTAL:** | **$729,389.35** |

Morgan Stanley Smith Barney/Citibank's Hedge Forum has informed the Receiver that the valuation as of December 31, 2021 for the remaining "side pocket" investments, which according to Citibank are non-liquid investment in the amount of $40.85, and liquid investment in the amount of $2.31. The Receiver has requested and received additional information for the purpose of confirming the nature of the "side pocket" investments, confirming the non-liquid status of the investments, and has a standing request to receive redemptions of the Hedge Forum Goldentree account. Morgan Stanley Smith Barney/Citibank's Hedge Forum informed the Receiver the non-liquid investment could be paid out if elected by the Receiver. The Receiver elected that the "side pocket" investment be paid out, and $40.85 was paid from the "side pocket" investments, leaving a *de minimis* value in the "side pocket" investment account.

**DIVERSIFIED GLOBAL:**

| | |
|---|---|
| • Horizon Kinetics LLC /Kinetics Institutional Partners, L.P.: | $697,131.21 |
| **TOTAL:** | **$697,131.21** |

**HORIZON MILLENNIUM:**

| | |
|---|---|
| • Millennium USA, L.P.: | $4,723,783.00 |
| • Hold-back turnover | $474,363.00 |
| • Hold-back turnover | $29,403.00 |
| • Hold-back turnover | $50,142.00 |
| • Hold-back turnover | $21,971.00 |

16

|  | | TOTAL: | **$5,299,662.00** |
|---|---|---|---|

The Receiver has made full recovery of the balance of funds from Millennium USA.

### PANGEA OFFSHORE:

| • Bank of America: | $882.58 |
|---|---|
| | $11.96 |
| TOTAL: | **$894.54** |

### WATERSTREET ACCOUNT:

| • HSBC Bermuda: | $43,773.40 |
|---|---|
| TOTAL: | **$43,773.40** |

In addition, the Receiver also made recoveries from the following people and entities who: (i) were in possession of a balance of the Investor Funds; or (ii) to set-off Receivership Estate expenses:

### MONTAUK FIRE DEPARTMENT

| • Recovery of Investor Funds in Excess of Principal | $46,690.21 |
|---|---|
| • Recovery of Investor Funds in Excess of Principal | $9,970.27 |
| • Interest on Recovery of Investor Funds | $25,000.00 |
| TOTAL: | **$81,660.48** |

### ANTHONY DICKEL ATTORNEY FEE REIMBURSEMENT

| • Anthony Dickel Attorney Fee Reimbursement | $3,167.30 |
|---|---|
| TOTAL: | **$3,167.30** |

### PARK, JENSEN & BENNETT LLP

| • Escrow Funds traced to Investors Funds | $26,305.92 |
|---|---|
| TOTAL: | **$26,305.92** |

**ROBERTA HUCEK**

- Recovery of Investor Funds in Excess of Principal                    $186,078.75

|  |  |
|---|---|
| TOTAL: | **$186,078.75** |

**CROMWELL**

- Recovery of Investor Funds                                          $228,000.00
- Recovery of Defendant Callahan's Interest                           $198,976.75
- Recovery of Defendant Callahan's Interest from Escrow & Cromwell Bank Accounts    $97,995.50
- Recovery of Defendant Callahan's Interest from Escrow & Cromwell Bank Accounts    $3,586.97

|  |  |
|---|---|
| TOTAL: | **$528,559.22** |

**GIBRALTAR PRIVATE BANK
AND TRUST COMPANY**

- Recovery of Funds traced to Investor Funds                          $16,254.66

|  |  |
|---|---|
| TOTAL: | **$16,254.66** |

**SEBASTIAN TRUST**

- Partial Recovery of Investor Funds in Excess of Principal (First Quarter 2017)      $90.00
- Partial Recovery of Investor Funds in Excess of Principal (Second Quarter 2017)     $90.00
- Partial Recovery of Investor Funds in Excess of Principal (Third Quarter 2017)      $60.00
- Partial Recovery of Investor Funds in Excess of Principal (Fourth Quarter 2017)     $90.00
- Partial Recovery of Investor Funds in Excess of Principal (First Quarter 2018)     $120.00
- Partial Recovery of Investor Funds in Excess of Principal (Second Quarter 2018)     $90.00
- Partial Recovery of Investor Funds in Excess of Principal (Third Quarter 2018)      $90.00
- Partial Recovery of Investor Funds in Excess of Principal (Fourth Quarter 2018)     $90.00
- Partial Recovery of Investor Funds in      $90.00

| | |
|---|---:|
| Excess of Principal (First Quarter 2019) | |
| • Partial Recovery of Investor Funds in Excess of Principal (Second Quarter 2019) | $60.00 |
| • Partial Recovery of Investor Funds in Excess of Principal (Third Quarter 2019) | $120.00 |
| • Partial Recovery of Investor Funds in Excess of Principal (Fourth Quarter 2019) | $90.00 |
| • Partial Recovery of Investor Funds in Excess of Principal (First Quarter 2020) | $60.00 |
| • Partial Recovery of Investor Funds in Excess of Principal (Second Quarter 2020) | $60.00 |
| • Partial Recovery of Investor Funds in Excess of Principal (Third Quarter 2020) | $150.00 |
| • Partial Recovery of Investor Funds in Excess of Principal (Fourth Quarter 2020) | $60.00 |
| • Partial Recovery of Investor Funds in Excess of Principal (First Quarter 2021) | $90.00 |
| • Partial Recovery of Investor Funds in Excess of Principal (Second Quarter 2021) | $90.00 |
| • Partial Recovery of Investor Funds in Excess of Principal (Third Quarter 2021) | $120.00 |
| • Partial Recovery of Investor Funds in Excess of Principal (Fourth Quarter 2021) | $90.00 |
| • Partial Recovery of Investor Funds in Excess of Principal (FirstQuarter 2022) | $90.00 |
| **TOTAL:** | **$1,890.00** |

The Montauk Fire Department turned over $56,660.48 pursuant to the Receiver's demand for the return of Investor Funds, plus an additional sum of $25,000.00 for the interested earned on said sum. Anthony Dickel reimbursed the Receivership Estate $3,167.30 for attorney fees incurred by the Receiver in providing a release of mortgage. Park, Jensen & Bennett turned over $26,305.92 which was held in their escrow account pursuant to the Receiver's demand for the return of Investors Funds. Investor Roberta Hucek turned over $186,078.75 pursuant to the Receiver's demand for the return of the Investor Funds. No interest was earned on the portions of Investor Funds while they were in the possession of Park, Jensen & Bennet and Investor Hucek's possession. Cromwell turned over $528,559.22 pursuant to a stipulated and so ordered

agreement with the Receiver.  Pursuant to the Receiver's demand Gibraltar Private Bank and Trust Company turned over $16,254.66 of funds traced to investor funds.  Sebastian Trust turned over $1,890.00 in partial payment of the admitted liability of $3,770.58 pursuant to the Receiver's demand for the return of Investor Funds.  A total of $843,916.33 has been recovered from the above third-parties.

At this juncture, any further recovery of assets and property in the United States will likely require legal proceedings for diversion, conversion, fraud, fraudulent transfer, constructive trust and other legal claims.  The Receiver is continuing to pursue and evaluate financial information to trace the flow of Investor Funds and to determine the ultimate recipient from whom to demand the return of Investor Funds.  This analysis has included tracing funds through subpoenaed and other available bank records and reviewing substantial wire transfers, account transfers, checks and withdrawals.  The Receiver is also continuing his review of all other documents which the Receiver obtains by means other than a subpoena, or which have been furnished to the Receiver to determine other possible Receivership Assets and claims.

The available liquid assets of the Callahan Funds are extremely limited.  A substantial portion of the Callahan Funds was transferred from Pangea Offshore, Fiduciary Select or Diversified Global to and for the use of the Montauk Property and Defendants Adam Manson, Distinctive Ventures and Distinctive Investments.  The funds that were transferred represent a "non liquid investment" that was part of the fraud perpetrated by the Defendants.  The monies represent an unsecured investment in real property, which kept the Montauk Property afloat for the Defendants, with no return benefit for the Investors.

The dissolution and liquidation of the Receivership Entities is not practical and or cost effective.  Based on the Receiver's investigation and inquiries to the U.S. Internal Revenue

Service, the HGA Fund Managers, Pangea Offshore, Fiduciary Select f/k/a Pangea Bridge and Horizon Millennium did not file U.S. income tax returns for any relevant tax period. The Receiver continues to investigate whether the remaining Callahan Funds filed their own U.S. income tax returns. However, for certain years, income and losses derived or attributable to HGA Fund Managers and the Callahan Funds were reported on schedules on Callahan's individual returns. Defendant Callahan has refused to furnish copies of his tax returns to the Receiver. The Receiver has met with accountants who specialize in filings for offshore entities to evaluate the steps necessary for dissolution and/or liquidation. Pursuant to this Court's Order Authorizing Receiver to Retain and Employ Accountants (*ECF Doc. 183*), the Receiver retained and employed accounting firm Weiser Mazars to assist the Receiver.

**C. Evaluating And Preserving Receivership Assets:**

As previously reported, upon being appointed, the Receiver verified that domestic financial institutions who held accounts of the Receivership Entities had placed a hold on the funds in those accounts and were complying with the Temporary Restraining Order (*ECF Doc. 4*) and the Initial Receivership Order (*ECF Doc. 22*) issued by this Court. The Receiver has since directed $6,770,850.50 of those funds to be transferred to Receivership Estate accounts in accordance with the Receivership Order. In addition to the funds in those accounts, the Receiver has recovered money and funds from other sources in the amount of $843,916.33, as reported in Section II B of this Report. The Receiver's receipts and disbursements for this Quarterly Period are set forth in the schedule annexed to this Report as EXHIBIT A. For further information please see the Receiver's Report for the 2017 Fourth Quarter Covering the Period of October 1, 2017 through December 31, 2017 (*See ECF Doc. 471)* and the previous Receiver's Reports.

**D. Understanding, Evaluating and Advising Upon The Private Investments:**

21

Please refer to the previous Receiver's Reports for a complete history of understanding, evaluating and advising upon the private investments as set forth most recently in the Receiver's Report for the 2017 Fourth Quarter Covering the Period of October 1, 2017 through December 31, 2017 (*See ECF Doc. 471*) and the previous Receiver's Reports.

E. **The Real Property And Business Operations Therein:**

  **(i)**  **The Panoramic View Coop/Montauk Property:** The Panoramic View Coop and Montauk Property are the subject of the Civil Forfeiture Action and the USAO's Consensual Sale and Sealed Bidding Process. Please refer to the Receiver's Report for the 2015 First Quarter Covering the Period of January 1, 2015 through March 31, 2015 (*See ECF Doc. 292*) and the previous Receiver's Reports.

  **(ii)**  **The Callahan Coop Unit:** The Callahan Coop Unit are the subject of the Civil Forfeiture Action. Please refer to the Receiver's Report for the 2017 Fourth Quarter Covering the Period of October 1, 2017 through December 31, 2017 (*See ECF Doc. 471*) and the previous Receiver's Reports.

  **(iii)**  **The Callahan Residence:** The Callahan residence is the subject of the Civil Forfeiture Action. Please refer to the Receiver's Report for the 2017 Fourth Quarter Covering the Period of October 1, 2017 through December 31, 2017 (*See ECF Doc. 471*) and the previous Receiver's Reports.

  **(iv)**  **The Cromwell Storage Units:** On November 13, 2014, the closing occurred for the sale of the Cromwell Property and Cromwell Storage Business pursuant to the Stipulation and Order for the Consensual Sale of the Cromwell Property and the Related Storage Business (*ECF Doc. 259*). Please refer to the Receiver's Report for the 2015 Second Quarter covering the

period of April 1, 2015 through June 30, 2015 (*See ECF Doc. 306*) and the previous Receiver's Reports.

      **(v)**    **Creditors:**  For information about creditors, please refer to the Receiver's Report for the 2017 Fourth Quarter Covering the Period of October 1, 2017 through December 31, 2017 (*See ECF Doc. 471*) and the previous Receiver's Reports.

    **F.**  **Investigating and Organizing Claims Against Third Parties:**

      For information relating to the Receiver's investigation and organization of claims against third parties, please refer to the Receiver's Report for the 2017 Fourth Quarter Covering the Period of October 1, 2017 through December 31, 2017 (*See ECF Doc. 471*) and the previous Receiver's Report.

### III.  THE STATUS OF THE PROPOSED PLAN<br>FOR THE RECEIVERSHIP ESTATE

      The Receiver has recovered approximately $7,614,721.80 from a combination of the $6.4 million frozen by the Receivership Order's injunctive provisions, an offshore account, clawback of Investor Funds paid in excess of the principal investment, recovery of traced Investor Funds, and recovery of attorney fees.  The Receiver continues to seek and pursue possible recoveries for the Receivership Estate.

    **A.**  **The Real Property**

      **(i)**    **The Panoramic View**:  A significant portion of the Investors Funds were diverted to the Panoramic View.  It is considered to be the most significant source for recovery of Investors Funds and is the subject of the Civil Forfeiture Action and the Criminal Action (collectively, the "Forfeiture Actions").  The Final Order of Forfeiture was ordered on September 29, 2017, and filed on October 2, 2017.  ***See Criminal Action-ECF Doc. 172-2**.*  For further information please refer to the Receiver's Report for the 2017 Fourth Quarter Covering the

Period of October 1, 2017 through December 31, 2017 (*See ECF Doc. 471)* and previous Receiver's Reports.

(ii)   **The Callahan Coop Unit and Callahan Residence**:  Both the Callahan Coop Unit and the Callahan's former residence, the Old Westbury Property, are the subject of the Forfeiture Actions.  For further information please refer to the Receiver's Report for the 2017 Fourth Quarter Covering the Period of October 1, 2017 through December 31, 2017 (*See ECF Doc. 471)* and previous Receiver's Reports.

(iii)   **Cromwell Property**:  The Receiver traced $228,000.00 of Investor Funds which went to or were used for the benefit of Cromwell.  Through that agreement, in the form of a stipulation, which this Court so ordered on October 7, 2014, the Receivership recovered a total of $528,559.22 to date from the sale of the Cromwell Property and Storage Business (ECF Doc. 259).  For further information please refer to the Receiver's Report for the 2017 Fourth Quarter Covering the Period of October 1, 2017 through December 31, 2017 (*See ECF Doc. 471)* and previous Receiver's Reports.

**B. Non-Real Property**

(i)   **The Callahan Funds**:  The Receiver is continuing to seek the books and records of the Callahan Funds to determine the financial condition of the Receivership Entities which have not been turned over to the Receiver despite this Court's Order.  In pursuit of alternative sources of such information, the Receiver has served requests and investigatory subpoenas upon banks, financial institutions, administrators and accountants located in the British Virgin Islands, Bermuda, the Cayman Islands and/or Nevis.  As these entities are outside the United States, compelling disclosure of information through judicial process is difficult, and if these entities are situated in a country that is not party to the Hague Convention, will be exceptionally difficult and

costly.  It should be noted that the Receiver has notified the off-shore banks, financial institutions and accountants, as wells as administrators which the Receiver discovered, of the Receivership Orders and has invited each of them to voluntary comply with the Receivership Order.

(ii)    **Redemptions:**  The Receiver is continuing its investigation of the use of Investor Funds for redemptions.

### C. Summary

The Receiver's Initial Plan (*ECF Doc. 42*) outlined what assets it seeks to investigate and possibly pursue, which the Receiver believes is cost-effective and which presents a likelihood of recovery for investors.  The Receiver is continuing to evaluate and consider pursuing claims against those third parties who have received, are in possession of, or facilitated, monetary transfer and diversion of Investors Funds.  Such considerations include the legal merits of third party claims and evaluation of the potential benefits to the Receivership Estate versus the costs of pursuing such claims.

### IV.    CLAIMS PROCESS.

The Receiver, by a motion (*ECF Docs. 177 – 180*), proposed a claims determination procedure to the Receivership Court at the end of the 2013 calendar year.  The Claims Order (*ECF Doc. 186*) established the claims determination procedure, and the Claims Bar Deadline was established as June 21, 2014, 5:00 p.m. EST.  As of June 30, 2014 the Receiver had received 67 potential claims submitted pursuant to the Claims Order totaling $100,017,063.78, which with certain adjustments was most recently reported in the Receiver's Report for the 2017 Second Quarter covering the period of April 1, 2017 through June 30, 2017 (*See ECF Doc. 454*) at Exhibit B.

On June 15, 2017 the Receivership Court filed an Order Approving and Confirming the Receiver's Final Claim Determination Report (the "Final Claim Determination Order") (*ECF Doc. 453*).  The claims determinations summarized in Exhibit F to the Final Claim Determination Report and approved by the Final Claim Determination Order in the total amount of $61,573,227.90 are attached as EXHIBIT B.  The time to appeal the Final Claim Determinaton Order expired during the third quarterly period of 2017.  Please refer to the previous Receiver's Reports for additional information regarding the claims process and procedures as set forth most recently in the Receiver's Report for the 2017 Second Quarter covering the period of April 1, 2017 through June 30, 2017 (*See ECF Doc. 454)* in section IV.

## V.   ASSETS, LIQUIDATION AND DISTRIBUTION OF PROCEEDS

The Final Claim Determination Report and motion proposed and recommended the manner and method for distribution of the Receivership Assets, along with the priority and order that any approved claims be paid, including any interim distribution and payment. *See ECF Doc. 434 & 435.*  Please refer to the previous Receiver's Reports for additional information regarding the assets, liquidation and distribution of proceeds as set forth most recently in the Receiver's Report for the 2018 Third Quarter covering the period of July 1, 2018 through September 30, 2018. *See ECF Doc. 479.*

On December 5, 2017, the Receiver made the first distribution of funds in the Receivership Estate to the approved claimants totaling $5,947,830.05 (the "First Distribution"), with a hold back for outstanding administrative fees and expenses and funds reserved for completion of certain clawback claims and wind-up and termination of the Receivership.   On January 5, 2018, the Receivership Court filed an Order Approving the Receiver's Distribution Report. *See ECF Doc. 470.*

At the request of the United States Attorney's Office, the Receiver filed a Petition for Remission with the U.S. Department of Justice for the funds forfeited in the ancillary civil forfeiture and criminal actions. The Petition for Remission was approved by the United States, and directed that certain funds, as calculated by the government be distributed, with a few exceptions, to the approved claimants on list 1 of Victim-investors who filed claims which were approved by the SEC Receiver. Each approved claimant, to which Money Laundering and Asset Recovery Section ("MLARS") directs distribution when combined with the Receiver's previous distribution will have received a total of approximately 75.554% of the approved claim amount.

On February 28, 2018, the Receiver received $35,012,503.25 in funds from the Department of Justice ("DOJ") for the second distribution to certain approved claimants which are listed in the Order of Restitution as "I. Victim-investors who filed claims which were approved by the SEC Receiver" (the "Second Distribution"). *See Criminal Action – ECF Doc. 172-1.* Funds were distributed by the Receiver on March 20, 2018, to all but one of the approved claimants which are listed in the Order of Restitution as "I. Victim-investors who filed claims which were approved by the SEC Receiver", in the amounts directed by MLARS. *See Criminal Action – ECF Doc. 172-1.*

In May, the final approved claimant completed probate and appointment of an estate representative for that approved claimant, enabling the Receiver to make distribution to said claimant. Also in May, MLARS transferred $80 to the Receiver to replace part of the DOJ-MLARS and USMS fees deducted from the funds transferred to the Receiver. For the remaining approved claimant to receive the distribution amount directed by MLARS and reach 75.554% of its approved claim on par with the other approved claimants, the Receiver included in the DOJ distribution $230.68 of funds from the Receivership Estate. On June 1, 2018, the Receiver

completed the final distribution to the approved claimants estate, completing distribution of the funds from MLARS.  For further information please refer to the Receiver's Report for the 2018 Second Quarter covering the period of April 1, 2017 through June 30, 2017 (*See ECF Doc. 479)*.

## VI.    CONCLUSION

During this Quarterly Period, the Receiver continued to follow the proposed plan set forth in the Receiver's Initial Plan (*ECF Doc. 42*) to marshal and liquidate the Receivership Assets and Receivership Property.  Pursuant to the Receivership Court Orders, the Receiver will continue to report to this Court quarterly to update and supplement the Plan; report on the Receiver's continuing investigation; report on the activities of the Receiver taken since the last reporting period; continue to marshal and liquidate the Receivership Assets and Receivership Property; pursue the claims of the Receivership Estate; report on the administration of the Receivership Estate; and provide an accounting of the activities and disbursements of the Receiver including income received and disbursements made.  Please see the attached SFAR for the accounting for the reporting period of January 1, 2022 through March 31, 2022.


Dated:  New York, New York
        April 29, 2022

                                RESPECTFULLY SUBMITTED,

                                STEVEN WEINBERG
                                as RECEIVER for
                                Horizon Global Advisors, Ltd.,
                                Horizon Global Advisors, LLC,
                                Diversified Global Investments (BVI), L.P.,
                                The Masters Global Fund, L.P.,
                                Fiduciary Select Income Fund, L.P.,
                                Horizon Millennium Investments, L.P.
                                and Pangea Offshore High Yield Portfolio, LLC